MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

ROBERT A. WALSH
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS SECTION
2005 N. CENTRAL AVE.
PHOENIX, ARIZONA 85004–1508
TELEPHONE: (602) 542-4686
CADOCKET@AZAG.GOV
(STATE BAR NUMBER 016071)
ATTORNEYS FOR RESPONDENTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Nora Y. Sandoval,<br><br>          Petitioner,<br><br>          -vs-<br><br>Charles L. Ryan, et al.,<br><br>          Respondents. | CV 18-08250-PCT-JJT-BSB<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

Respondents, pursuant to Rule 5 of the Rules Governing § 2254 Cases, and this Court's order of October 15, 2018 (Docket No. 3), hereby answer the pending Petition for Writ of Habeas Corpus. For the reasons set forth in the following Memorandum of Points and Authorities, Respondents respectfully request that the petition be denied and dismissed with prejudice.

RESPECTFULLY SUBMITTED this 26th day of November 2018.

Mark Brnovich
Attorney General

Joseph T. Maziarz
Chief Counsel

s/ Robert A. Walsh
Assistant Attorney General
Attorneys for Respondents

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SYNOPSIS.**

Petitioner, a state prisoner currently serving prison terms having the aggregate length of 31.5 years for six drug-related offenses, has filed a Section 2254 petition raising four claims: (1) the searches and seizures of Petitioner and her home violated the Fourth Amendment (Ground 1); (2) the trial court's denial of her eve-of-trial continuance motion deprived her of the right to retain counsel of choice (Ground 2); (3) insufficient evidence supported Petitioner's conviction on Count 5 (Ground 3); and (4) trial counsel rendered ineffective assistance by failing to pursue four different courses of action detailed below as Grounds 4A through 4D. Respondents herein maintain that habeas relief is unavailable for all of these claims because: (1) Ground 1—a Fourth Amendment claim that the state courts adjudicated and rejected on the merits—is not cognizable on federal habeas review; and (2) the Arizona judiciary neither contravened nor unreasonably applied clearly established federal law, as defined by the Supreme Court, while denying the remaining claims on their merits.

**II.    STATEMENT REGARDING SUBMISSION OF THE STATE-COURT RECORD.**

Respondents have reproduced and submitted as exhibits the following portions of the state-court record: (1) all relevant, available, and non-duplicative charging documents, pretrial pleadings, minute entries, verdict forms, court orders, post-conviction-relief ["PCR"] pleadings, and orders filed in Mohave County Superior Court cause number CR 2011-01237 (Exhibits A-I, K, M, O, Q, S, U, V, X-AA, CC, and DD); (2) all relevant available transcripts, including those memorializing her suppression hearing, pretrial management conferences, trial, sentencing (Exhibits J, L, N, P, R, T, and BB); (3) duplicates of all pertinent documentary and photographic exhibits admitted at Petitioner's trial (Exhibit W); and (4) all pleadings and decisions filed in connection with Petitioner's direct appeal and petition for review from the denial of PCR relief (Exhibits EE-PP).

**III.   FACTUAL AND PROCEDURAL BACKGROUND.**

    **A.  *Significant pretrial events.***

       On November 3, 2011, the Mohave County Grand Jury charged Petitioner Nora Y. Sandoval (hereinafter "Petitioner") with committing the following seven drug-related offenses in Bullhead City, Arizona: (1) possession of dangerous drugs exceeding the statutory threshold amount for sale (methamphetamine), class 2 felonies, in violation of A.R.S. § 13-3407(A)(2) (Counts 1, 2, and 6); (2) possession of drug paraphernalia, class 6 felonies, in violation of A.R.S. § 13-3415 (Counts 3, 4, and 7); and (3) possession of dangerous drugs (clonazepam), a class 4 felony, in violation of A.R.S. § 13-3407(A)(1) (Count 5). (Exhibit B: Indictment [R.O.A., Item 2].) The indictment further alleged that Petitioner committed: (1) Counts 1 and 2 on or about October 25, 2011, in the vicinity of 1255 Marina Boulevard; (2) Counts 3 through 5 on the same date, but in the vicinity of 366 Riverfront Drive; and (3) Counts 6 and 7 on or about October 28, 2011, in the vicinity of the 1700 block of Forest Drive. (*Id.*)

       The State subsequently amended the indictment by alleging the following sentencing enhancements: (1) Petitioner committed the offenses underlying Counts 1 through 5 on a different occasion than Counts 6 and 7; (2) Petitioner had four historical felony convictions—two for possession of drug paraphernalia, one for use of dangerous drugs, and one for conspiracy to sell dangerous drugs; and (3) Petitioner's crimes were aggravated by her commission of the instant offenses for pecuniary gain and within 10 years of her conviction of the aforementioned four felonies. (Exhibit C: State's Sentence-Enhancement Allegations [R.O.A., Items 25-30].)

       Before trial, the trial court denied three defense motions concerning issues subsequently raised on direct appeal—the first two of which also appear in the instant habeas petition as Grounds 1 and 2: (1) Petitioner's motion to suppress all

1 evidence seized from her residence and person on the dates of both charged

2 offenses (Exhibit F: Motion to Suppress; Exhibit G: State's Response to Motion to

3 Suppress; Exhibit K: Minute Entry Ruling on Motion to Suppress; Exhibit J: R.T.

4 8/15/12, at 7-12); (2) Petitioner's *pro per* eve-of-trial motion for a continuance so

5 that she could retain new counsel (Exhibit O: Minute Entry, filed 9/24/12; Exhibit

6 N: R.T. 9/24/13, at 3-11); and (3) Petitioner's motion to redact from the videotape

7 of her post-arrest interview certain statements made by Detective Viles regarding

8 the quantity of drugs he believed she sold and exploring the possibility of

9 cooperating with law enforcement to "help each other out" (Exhibit P: R.T.

10 9/25/13, at 12-21, 133-40).

11       **B. *Trial evidence.***

12       Members of the Mohave Area General Narcotics Enforcement Team

13 ("MAGNET") planned to serve a drug-related search warrant upon Petitioner and

14 her Bullhead City residence, located at 366 Riverfront Drive, during the early

15 morning hours of October 25, 2011. (Exhibit P: R.T. 9/25/12, at 187-88, 235-36;

16 Exhibit R: R.T. 9/26/12, at 64-65, 76-77, 82-83, 96-97.) Before the search team

17 arrived, Petitioner received a text message from a customer who expressed interest

18 in purchasing drugs from her that morning at Terrible Herbst's convenience store

19 on Highway 95. (Exhibit P: R.T. 9/25/12, at 192-94.) Stationed outside Petitioner's

20 residence in an undercover vehicle, Detective Jeffrey Viles observed Petitioner and

21 Jorge Lizarraga (her boyfriend) leave the residence through the garage door, enter

22 the vehicle parked in the driveway, and travel eastbound on Ramar Road with

23 Jorge driving and Petitioner in the front passenger seat.[1] (*Id.* at 186-90, 236.)

24

25

26     [1] During her post-arrest interview, Petitioner told Detective Viles that: (1) she was the sole occupant of the Riverfront residence; (2) Jorge was her boyfriend;

27 and (3) she did not have a valid driver's license. (Exhibit P: R.T. 9/25/12, at 191; Exhibit R: R.T. 9/26/12, at 88.)

28

1    At Corporal Brad Holdway's command, Detective Viles stopped this vehicle

2    near the intersection of Ramar and Lakeside Drive. (*Id.* at 177-78, 189-90, 237.)

3    Viles informed Petitioner that his fellow officers were about to execute a search

4    warrant at her residence and requested her house keys to obviate the need for a

5    forced entry, but Petitioner declined to provide them. (*Id.* at 191.)

6    Detective Viles summoned Officer Robin Holstrom, a woman, to the scene

7    to pat down Petitioner's clothing for contraband, but this initial search proved

8    fruitless because of Petitioner's short skirt, heavily padded bra, and denial that she

9    had concealed any drugs on her person. (*Id.* at 179.) Petitioner did not report the

10   contraband she had secreted inside her vagina until after Holstrom had transported

11   her to the police station and announced her intention to perform a strip search. (*Id.*

12   at 179-80, 198.) The plastic sandwich bag that Holstrom found protruding from

13   Petitioner's genitalia (and extracted with Petitioner's consent) contained four

14   smaller plastic baggies laden with varying quantities of a white crystalline

15   substance that DPS Criminalist Smith identified as methamphetamine and had an

16   aggregate weight of 28.7 grams.[2] (*Id.* at 177-78, 197-98, 239-41; Exhibit R: R.T.

17   9/26/12, at 123-26.)

18   Petitioner repeatedly told Officer Holstrom and Detective Viles that the

19   methamphetamine she had secreted inside her vagina was merely for her own

20   "personal use." (Exhibit P: R.T. 9/25/12, at 180, 200-01.) The following evidence,

21   however, overwhelmingly demonstrated that Petitioner instead intended to sell this

22   ounce of methamphetamine to the customer awaiting her arrival at Terrible

23   Herbst's store:

24

25

26   _____

27   [2] This methamphetamine constituted the basis for the jury's guilty verdict on
     Count 1. (Exhibit B: Indictment; Exhibit X: Verdict Forms [R.O.A., Item 50].)

28

- Corporal Holdway testified that the 28.7 ounces of methamphetamine contained inside these four plastic bags could be sold for as much as $2,800. (*Id*. at 228.)

- The three most recent text messages on Petitioner's cellular telephone indicated that she had arranged a transaction with her client at Terrible Herbst's that very morning. (*Id.* at 192-94.)

- On the driver's seat of Jorge's vehicle, Detective Viles discovered a set of earplugs plugged into a police scanner—a counter-surveillance tool that drug dealers commonly use to eavesdrop on law enforcement's radio transmissions. (*Id.* at 194-96; Exhibit W: Trial Exhibit E17.)

- Petitioner admitted near the end of her interview that she lacked steady employment for months and sold drugs to support her habit. (Exhibit P: R.T. 9/25/12, at 200-02.)

- Petitioner asserted that she smoked methamphetamine daily, but the police found no pipes—let alone syringes or any other paraphernalia for ingesting drugs—inside her purse or residence. (*Id.* at 200; Exhibit W: Trial Exhibits E17, E18.)

- Petitioner's residence contained several indicia of drug-trafficking activities, including: (1) eight surveillance cameras that were all connected to a flat-screen TV in the master bedroom, and which covered every potential avenue of approach; (2) extra surveillance cameras, which were stored inside another bedroom; (3) a digital gram scale with apparent methamphetamine residue, which was discovered inside Petitioner's bathroom;[3] (4) a WD-40 metal can with a false bottom, which is commonly used by dealers to hide drugs; (5) hundreds of small, clear plastic bags, which are commonly used to store illegal drugs;[4] and (6) approximately $1,200 in cash, which

---

[3] This scale constituted the drug paraphernalia underlying Petitioner's conviction on Count 3. (Exhibit B: Indictment; Exhibit X: Verdict Forms [R.O.A., Item 52].)

[4] These plastic baggies constituted the basis for Petitioner's conviction on

(continued ...)

police found concealed in three different hiding places. (Exhibit P: R.T. 9/25/12, at 245-46, 252-53, 255; Exhibit R: R.T. 9/26/12, at 37, 65-68, 74, 77-80, 83-86, 88, 96-98; Exhibit W: Trial Exhibit E19.)

Besides the aforementioned drug-related items, MAGNET's agents seized the following evidence from Petitioner's residence while executing the search warrant: (1) several bills addressed to Petitioner at 366 Riverfront Drive, which were seized from the kitchen and dining room; (2) two plastic bags containing an aggregate weight of 11.25 grams of methamphetamine, which were concealed inside a pocket of a jacket hanging in a bedroom closet;[5] and (3) "two yellow pills inside of a clear baggie," which Corporal Holdway found on top of the kitchen microwave, and which he identified as Clonazepam by consulting the drug.com website on the Internet and a Walgreen's pharmacist.[6]  (Exhibit P: R.T. 9/25/12, at 245-51, 255-64; Exhibit R: R.T. 9/26/12, at 69-70, 127-29; Exhibit W: Trial Exhibit E18.)

On October 28, 2011, MAGNET executed a search warrant at the residence of Ricky M., who was found in possession of 6 grams of methamphetamine and drug paraphernalia. (Exhibit R: R.T. 9/26/12, at 5-7.) To avoid prosecution, Ricky agreed to participate in a "buy/bust operation" in which he would contact his supplier, order a quantity of drugs, and arrange to meet at a location where the

_____
( ... continued)

Count 4's drug-paraphernalia charge. (Exhibit B: Indictment; Exhibit X: Verdict Forms [R.O.A., Item 53].)

[5] This quantity of methamphetamine constituted the basis for the jury finding Petitioner guilty of Count 2's lesser-included offense of possession of dangerous drugs. (Exhibit B: Indictment; Exhibit X: Verdict Forms [R.O.A., Item 51].)

[6] These two Clonazepam tablets constitute the basis for Petitioner's conviction on Count 5 for possession of dangerous drugs. (Exhibit B: Indictment; Exhibit X: Verdict Forms [R.O.A., Item 54].) This conviction is also challenged in Ground 3 of the instant habeas petition.

7

1   police would await his dealer's arrival. (*Id.* at 6-7, 70-72.) With Corporal Holdway
2   and Detective Martin Harris listening over the speaker of his cellular telephone,
3   Ricky called Petitioner to order one-half ounce of methamphetamine—a
4   transaction that they formalized during the course of six monitored telephone
5   conversations culminating with their agreement to meet at their usual rendezvous
6   site, a vacant house located on Forest Drive. (*Id.* at 9-11, 70-72, 99, 111.)

7      Conducting covert surveillance in the same undercover vehicle, Sergeant
8   Steve Nave and Detective John Salvino watched for the tan pickup truck that
9   Petitioner had told Ricky that would be her means of transportation to their agreed-
10  upon meeting place. (*Id.* at 12-14, 99, 111-12.) Five minutes after Petitioner and
11  Ricky's telephone conversation, both agents observed this vehicle, driven by Teri
12  Micali, travel past them on Hancock Street with Petitioner in the front passenger
13  seat. (*Id.* at 31, 72, 99, 110-11.) With Nave following close behind, this truck
14  turned left onto Forest Drive, entered the aforementioned vacant residence's
15  driveway, and parked near Ricky and his car. (*Id.* at 14-16, 72-73, 99-100, 111.)
16  Wearing badges around their necks and clothing adorned with police insignia,
17  Nave and Salvino converged upon the truck, identified themselves as law
18  enforcement, and ordered Micali and Petitioner to come outside with their hands
19  up. (*Id.* at 16-17, 100-01, 113.)

20     Whereas Micali immediately complied with these commands, Petitioner
21  elected to remain inside the truck, leaned forward, placed her hands underneath her
22  seat, and starting "ripping" apart two small brown plastic bags containing a white
23  crystalline powder that subsequent forensic tests conclusively identified as
24  methamphetamine. (*Id.* at 17-19, 101-02, 113-14, 129-30.) Despite Detective
25  Salvino's repeated commands to exit the truck and his threat to shock her with his
26  taser, Petitioner continued to manually tear these bags apart until the officers
27  forcibly removed her from the truck. (*Id.* at 17-18, 102-03, 114-15.) Repeatedly

28

1  shouting profanities at the officers, Petitioner unsuccessfully sought to resist arrest
2  and being handcuffed by kicking her legs, flailing her arms, and trying to lift
3  herself off the ground and run away in her high-heeled shoes. (*Id.* at 18-21, 103-04,
4  116.)

5        After Petitioner's arrest, Corporal Holdway noticed a large shard of
6  methamphetamine protruding from one of her shoes. (*Id.* at 20-21.) From the front
7  passenger side of the vacated truck's floorboard, the police retrieved two plastic
8  bags containing methamphetamine having an aggregate weight of 20.6 grams
9  (three-quarters of an ounce) and a resale value as high as $2,100; although
10  Holdway found most of this methamphetamine still inside an intact, but opened,
11  brown Walmart plastic bag, Crime Scene Technician Doyle Walters had to collect
12  the remainder from the floorboard's carpet with a hand-held vacuum cleaner.[7] (*Id.*
13  at 19, 22-28, 50, 104-05, 129-30; Exhibit W: Trial Exhibit E20.)

14        **C. *Verdicts and other significant post-trial events.***

15        The jurors returned guilty verdicts on Counts 1, 3, 4, 5, 6, and 7, but
16  implicitly acquitted her of Count 2's original charge of possession of dangerous
17  drugs for sale by convicting her of the lesser-included offense of possession of
18  dangerous drugs. (Exhibit U: Minute Entry for Trial Day 3; Exhibit X: Verdict
19  Forms [R.O.A., Items 50-56]; Exhibit T: R.T. 9/27/12, at 75-77.)

20        Sentencing was delayed in the instant case for more than a year because
21  Petitioner failed to appear on the last day of her trial, and the bench warrant that
22  Judge Conn issued following the return of the jury's guilty verdicts remained

23  _____

24     [7] Petitioner's conviction on Count 6's charge of possession of dangerous
25  drugs for sale was premised upon this aggregate sum of 20.6 grams of
   methamphetamine. (Exhibit B: Indictment; Exhibit X: Verdict Forms [R.O.A., Item
26  55].) The plastic bags that stored this methamphetamine underlay the guilty verdict
27  on Count 7's charge of possession of drug paraphernalia. (Exhibit B: Indictment;
   Exhibit X: Verdict Forms [R.O.A., Item 56].)
28

1  unsatisfied until Petitioner's arrest on December 18, 2013, which was also the date
2  of Petitioner's initial appearance on unrelated first-degree murder and conspiracy
3  charges in CR-2013-01174. (Exhibit S: Minute Entry for Trial Day 2 [R.O.A., Item
4  47]; Exhibit Y: Bench Warrant [R.O.A., Item 57]; Exhibit T: R.T. 9/27/12, at 75-
5  77; R.T. 12/18/13, at 3-9; Exhibit FF: Answering Brief, 1 CA-CR 14-0242, at 5.)

6      On March 28, 2014, the trial court determined that Petitioner's two most
7  recent convictions were for offenses qualifying as historical felony convictions.
8  (Exhibit W: Trial Exhibits E21, E22, E23 [R.O.A., Item 87]; Exhibit Z: Minute
9  Entry re: Hearing on Prior Convictions [R.O.A., Item 74]; Exhibit BB: R.T.
10 3/28/14, at 20-27.) The court ordered Petitioner to serve presumptive sentences on
11 all seven counts, the longest of which were the 15.75-year prison terms imposed on
12 her two convictions for possession of dangerous drugs for sale (Counts 1 and 6).
13 By ordering the concurrent prison terms for Counts 6 and 7 to run consecutive to
14 the five concurrent prison terms imposed for Counts 1 through 5, Judge Conn
15 effectively imposed an aggregate sentence of 31.5 years. (Exhibit BB: R.T.
16 3/28/14, at 36-50; Exhibit CC: Judgment and Sentencing Minute Entry [R.O.A.,
17 Item 77].)

18     **D. *Direct appeal.***

19     On April 2, 2014, Petitioner filed a timely notice of appeal from these
20 judgments and sentences. (Exhibit BB: Notice of Appeal [R.O.A., Item 79].)

21     On October 6, 2014, Deputy Legal Advocate Jill Evans filed on Petitioner's
22 behalf an opening brief that presented the following claims to the Arizona Court of
23 Appeals:

24         I. The court abused its discretion by denying the motion to
25     suppress the evidence.

26         II. The court abused its discretion by failing to grant [Petitioner]
27     a continuance to allow her to retain counsel of choice; the error is
28     structural requiring reversal.

III. There was insufficient evidence to support the conviction of possession of Clonazepam as a dangerous drug.

IV. The court abused its discretion by failing to redact the statement in the recorded interrogation by the officer that police had information from confidential informants or others of drug dealing.

(Exhibit EE: Opening Brief, 1 CA-CR 14-0242, at 3, 15, 25, 30, 32.)

The State filed an answering brief, wherein it argued all four claims lacked merit or otherwise did not mandate reversal of any of Petitioner's convictions. (Exhibit FF: Opening Brief, 1 CA-CR 14-0242.) On February 17, 2015, Petitioner filed her reply. (Exhibit GG: Reply Brief, 1 CA-CR 14-0242.)

On March 10, 2015, the Arizona Court of Appeals unanimously affirmed Petitioner's convictions and sentences in an unpublished decision. (Exhibit HH: Memorandum Decision, 1 CA-CR 14-0242.) Because Petitioner never petitioned the Arizona Supreme Court to review this adverse decision before the 30-day deadline, the Arizona Court of Appeals issued its order and mandate on May 29, 2015. (Exhibit II: Order and Mandate, 1 CA-CR 14-0242.)

**E. *PCR proceedings*.**

On April 9, 2015, Petitioner mailed from prison a *pro per* notice of post-conviction relief, which the Clerk for Mohave County Superior Court filed on April 15, 2015. (Exhibit KK: Notice of Post-Conviction Relief.) On June 13, 2016, Benjamin Brewer filed on Petitioner's behalf a petition for post-conviction relief that presented the superior court with the following claims:

1. Trial counsel failed to move to sever counts 6 & 7 from the indictment as the ends of justice would have been served by severing those counts, causing prejudice.

2. Trial counsel failed to object to highly prejudicial other-act testimony and further failed to request an "other acts" [limiting] instruction under [Rule] 404(b), causing prejudice.

3. Trial counsel failed to move to waive Petitioner's appearance at trial and further failed to request a jury instruction stating the same, causing prejudice.

4. Trial counsel failed to challenge the [denial of her] motion for new counsel via special-action review, causing prejudice.

(Exhibit LL: Petition for Post-Conviction Relief, at 1.)

The State did not respond to this PCR petition. (Exhibit JJ: Mohave County Superior Court Docket for CR 2011-01237; Exhibit MM: Minute Entry Ruling, filed on 9/6/16, at 1.) Nonetheless, the trial judge denied post-conviction relief after finding all four ineffective-assistance-of-trial-counsel claims to be patently meritless. (Exhibit MM: Minute Entry Ruling, filed on 9/6/16, at 1-8.)

On November 7, 2016, Petitioner petitioned the Arizona Court of Appeals to review the denial of PCR relief. (Exhibit NN: Petition for Review, 1 CA-CR16-0763 PRPC.) On October 19, 2017, the Arizona Court of Appeals granted review, but denied relief. (Exhibit OO: Memorandum Decision, 1 CA-CR 16-0763 PRPC, at 1-2.) Because Petitioner did not seek review by the Arizona Supreme Court within the 30-day deadline, the clerk for the Arizona Court of Appeals filed the order and mandate on December 4, 2017. (Exhibit PP: Order and Mandate, 1 CA-CR 16-0763 PRPC.)

**E. *Federal habeas proceeding*.**

On September 28, 2018, Petitioner timely filed the pending petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, raising the following grounds for relief:

**Ground 1:** "Court abused its discretion by denying the motion to suppress evidence," allegedly because the search warrant was not supported by adequate probable cause and did not justify searching her person "wherever she was found." (Docket No.13-1, at 7.)

**Ground 2:** "Court's abuse of discretion by failing to grant [Petitioner] a continuance to allow her to retain counsel of choice." (*Id.* at 8.)

**Ground 3:** "Insufficient evidence to support a verdict of [guilty as to the charge] of possession of Clonazepam as a dangerous drug." (*Id.* at 9.)

**Ground 4:** "Ineffective assistance of trial counsel—claims consolidated—as outlined in Post-Conviction Relief [petition]. (*Id.* at 10.) More specifically, Petitioner alleges that the following omissions constituted ineffective assistance of trial counsel (hereinafter "IATC"):

➢ **Ground 4A:** "Petitioner was prejudiced by trial counsel's failure to move to sever Counts 6 and 7." (*Id.*)

➢ **Ground 4B**: "Trial counsel failed to object to highly prejudicial [other-act] testimony and failed to request a [Rule] 404(b) [limiting] instruction." (*Id*.)

➢ **Ground 4C:** "Trial counsel failed to move to waive Petitioner's appearance at trial and further failed to request a jury instruction stating the same." (*Id.*)

➢ **Ground 4D:** "Trial counsel was ineffective in failing to challenge the denial of the motion for new counsel through a special action." (*Id.*)

On October 15, 2018, this Court ordered Respondents to answer this petition for habeas relief within 40 days. (Docket No. 3.) This pleading constitutes Respondents' answer.

## IV.   NON-COGNIZABLE CLAIM: GROUND 1.

The Supreme Court foreclosed granting Petitioner habeas relief on any alleged violations of the Fourth Amendment by promulgating the following rule: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or

1  seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).

2  The Supreme Court also "made it clear that *Stone's* limitation on federal habeas

3  relief was not jurisdictional in nature, but rested on prudential concerns counseling

4  against the application of the Fourth Amendment exclusionary rule on collateral

5  review," namely "that the costs of applying the exclusionary rule on collateral

6  review outweighed any potential advantage to be gained by applying it there."

7  *Withrow v. Williams*, 507 U.S. 680, 686 (1993) (collecting cases). The Supreme

8  Court subsequently provided the following encapsulation of the rationale

9  underlying this holding:

10

11       We recognized that the exclusionary rule, held applicable to the
States in *Mapp v. Ohio*, 367 U.S. 643 [ ] (1961), "is not a personal

12  constitutional right"; it fails to redress "the injury to the privacy of the

13  victim of the search or seizure" at issue, "for any '[r]eparation comes
too late.'" *Stone*, *supra*, 428 U.S., at 486 [ ] (quoting *Linkletter v.*

14  *Walker*, 381 U.S. 618, 637 [ ] (1965)). The rule serves instead to deter

15  future Fourth Amendment violations, and we reasoned that its
application on collateral review would only marginally advance this

16  interest in deterrence. *Stone*, 428 U.S., at 493 [ ]. On the other side of
the ledger, the costs of applying the exclusionary rule on habeas were

17  comparatively great. We reasoned that doing so would not only
exclude reliable evidence and divert attention from the central

18  question of guilt, but would also intrude upon the public interest in

19  "'(i) the most effective utilization of limited judicial resources, (ii) the
necessity of finality in criminal trials, (iii) the minimization of friction

20  between our federal and state systems of justice, and (iv) the

21  maintenance of the constitutional balance upon which the doctrine of
federalism is founded.'" *Id.*, at 491, n.31 [ ] (quoting *Schneckloth v.*

22  *Bustamonte*, 412 U.S. 218, 259 [ ] (1973) (Powell, J., concurring)).

23

24  *Id.* at 686-87.

25       Despite its vintage, *Stone* remains good law in the post-AEDPA era. *See*

26  *Monroe v. Davis*, 712 F.3d 1106, 1112-16 (7th Cir. 2013); *Rashad v. Lafler*, 675

27  F.3d 564, 570 (6th Cir. 2012); *Mason v. Allen*, 605 F.3d 1114, 1120 (11th Cir. 2010)

28  *Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009); *Watson v. Hulick*, 481

F.3d 537, 541-42 (7th Cir. 2007); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2007); *Cabrera v. Hinsley*, 324 F.3d 527, 530-33 (7th Cir. 2003); *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7–8 (1st Cir. 2001); *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999). Furthermore, the Ninth Circuit Court of Appeals, like many other federal courts, has recognized that *Stone* bars habeas relief based upon claims challenging the constitutionality of the state prisoner's arrest and seizure. *See Peoples v. Campbell*, 377 F.3d 1208, 1224-25 (11th Cir. 2004) (applying *Stone* to warrantless arrest); *Cabrera*, 324 F.3d at 529-31 (same); *Terrovona v. Kincheloe*, 912 F.2d 1176, 1178 & n.2 (9th Cir. 1990) (collecting cases from the First, Second, Sixth, Seventh, Eighth, and Eleventh circuits applying *Stone* to challenges against warrantless arrests); *Myers v. Rhay*, 577 F.2d 504, 507-09 (9th Cir. 1978) (applying *Stone* to arrests pursuant to a warrant).

"The relevant inquiry [under *Stone*] is whether petitioner had the *opportunity* to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); and *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983)) (emphasis added). *Accord Moorman v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005); *Miranda v. Leibach*, 394 F.3d 984, 1001 (7th Cir. 2004); *Janecka*, 301 F.3d at 320-21; *Villafuerte v. Stewart*, 111 F.3d 616, 627 (9th Cir. 1997); *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994); *Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992). Stated differently, "[i]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*." *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012).

15

"Consequently, once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). *Accord Good v. Berghuis*, 729 F.3d 636, 638-41 (6th Cir. 2013) (holding that *Stone's* prohibition against federal habeas review of exclusionary rule claims applied even to a state prisoner whose suppression motion was denied by the trial judge without an evidentiary hearing, and who challenged this adverse ruling unsuccessfully on appeal); *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002) ("If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."); *Poole v. Wood*, 45 F.3d 246, 249 (8th Cir. 1995) (noting that "a Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.").

Petitioner cannot plausibly deny that the Arizona judiciary afforded her ample opportunity to litigate Fourth Amendment search-and-seizure claims because: (1) by and through counsel, Petitioner filed a motion to suppress the fruits of the search warrant executed at her residence and at the scene of her arrest—a pleading that actually raised the claim now presented as Ground 1 in the instant Section 2254 petition (Exhibit F: Motion to Suppress [R.O.A., Item 33]); (2) the trial court conducted an evidentiary hearing and considered the arguments presented by Petitioner and the State before denying the Fourth Amendment challenge on the merits (Exhibit G: State's Response to Suppression Motion

[R.O.A., Item 34]; Exhibit J: R.T. 8/15/12 [Hearing on Motion to Suppress]; Exhibit K: Minute Entry Ruling on Motion to Suppress [R.O.A., Item 38]); and (3) Petitioner presented her Fourth Amendment arguments to the Arizona Court of Appeals on direct review, and that tribunal unanimously rejected these contentions on the merits (Exhibit EE: Opening Brief, 1 CA-CR 14-0242, at 15-25; Exhibit FF: Answering Brief, 1 CA-CR 14-0242, at 6-32; Exhibit GG: Reply Brief, 1 CA-CR 14-0242, at 6-20; Exhibit HH: Memorandum Decision, 1 CA-CR 14-0242, at 3-4, ¶¶ 6-12).

For the foregoing reasons, Petitioner is not entitled to federal habeas review, let alone relief, on Ground 1.

## V.    NONE OF PETITIONER'S PROPERLY EXHAUSTED CLAIMS WARRANT RELIEF.

The Arizona judiciary neither contravened nor unreasonably applied clearly established federal law, as defined by the holdings of the Supreme Court, by denying relief on the following claims that were adjudicated on the merits, to wit: Grounds 2, 3, 4A, 4B, 4C, and 4D.

### A. *Pertinent legal principles*.

"Recognizing the duty and the ability of [state courts] to adjudicate claims of constitutional wrong, AEDPA imposes a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). "When a state prisoner seeks federal habeas relief on the ground that a state court, in adjudicating a claim on the merits, misapplied federal law, a federal court may grant relief only if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Lopez v. Smith*, 135 S.Ct. 1, 2 (2014) (quoting 28 U.S.C. § 2254(d)(1)).

"This standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is 'difficult to meet,' because the purpose of

1    AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme
2    malfunctions in the state criminal justice systems,' and not as a means of error
3    correction." *Greene v. Fisher*, 565 U.S. 34, 43 (2011) (quoting *Harrington v.*
4    *Richter*, 562 U.S. 86, 102-03 (2011)).

5        Under AEDPA's "highly deferential standard for evaluating state-court
6    rulings, which demands that state-court decisions be given the benefit of the
7    doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), "federal judges are
8    required to afford state courts due respect by overturning their decisions only when
9    there could [be] no reasonable dispute that they were wrong," *Woods v. Donald*,
10   135 S.Ct. 1372, 1376 (2015), and "a state prisoner must show that the challenged
11   state-court ruling rested on 'an error well understood and comprehended in existing
12   law beyond any possibility for fair-minded disagreement.'" *Metrish v. Lancaster*,
13   569 U.S. 351, 358 (2013) (quoting *Richter*, 562 U.S. at 103). Thus, AEDPA
14   recognizes "there is no intrinsic reason why the fact that a man is a federal judge
15   should make him more competent, or conscientious, or learned … than his
16   neighbor in the state courthouse." *Titlow*, 571 U.S. at 19.

17       Section 2254(d)(1)'s "contrary to" clause, which expressly identifies
18   Supreme Court precedent as the exclusive benchmark for "clearly established
19   Federal law," prohibits granting habeas relief on the ground that the state court's
20   decision conflicts with federal circuit precedent. *See Glebe v. Frost*, 135 S.Ct. 429,
21   431 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567
22   U.S. 37, 48-49 (2102); *Moses v. Payne*, 555 F.3d 742, 760-62 (9th Cir. 2009).
23   "Only United States Supreme Court holdings, but not *dicta*, constitute 'clearly
24   established federal law' for purposes of the AEDPA deference standard." *Huu*
25   *Thanh Nguyen v. Garcia*, 477 F.3d 716, 722 (9th Cir. 2007) (collecting cases).
26   *Accord White v. Woodall*, 572 U.S. 415, 420 (2014).

27       Furthermore, Section 2254(d)(1) defines "clearly established Federal law" as
28

the holdings of Supreme Court precedent existing on the last reasoned state-court decision's date—a restriction that precludes granting relief based on Supreme Court decisions rendered while that last-reasoned state-court ruling pended review. *See Greene*, 565 U.S. at 38-40; *Thompson v. Runnels*, 705 F.3d 1089, 1091 (9th Cir. 2013). When more than one state court has adjudicated a claim, this Court reviews "the last reasoned state court decision to determine if it violated clearly established Supreme Court law." *Mejia v. Garcia*, 534 F.3d 1036, 1042 (9th Cir. 2008).

Section 2254(d)(1)'s "contrary to" clause forbids habeas relief unless the state court either: (1) applied a rule of law that contradicted the governing law set forth in Supreme Court cases; or (2) encountered a set of facts that were "materially indistinguishable" from a decision of the Supreme Court, but nonetheless reached a different result than the Supreme Court. *See Tyler v. Cain*, 533 U.S. 656, 664 (2001); *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000). State-court decisions need not even cite the governing Supreme Court precedent to satisfy the "contrary to" test. *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003); *Early v. Packer*, 537 U.S. 3, 8 (2002). Moreover, even "where no decision from the state court articulates its underlying reasoning, 'the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'" *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Richter*, 562 U.S. at 98). *Accord Johnson v. Williams*, 568 U.S. 289, 298 (2013).

The Supreme Court has repeatedly "cautioned the lower courts—and the Ninth Circuit in particular—against 'framing [its] precedents at such a high level of generality'" while determining whether a state-court decision contravened clearly established federal law. *Lopez*, 135 U.S. at 4 (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013)), because "if one examines Supreme Court decisions at a broad level of generality, the universe of state decisions that may be contrary to

1  those decisions will expand." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir.
2  2004). *Accord Woods*, 135 S.Ct. at 1377.

3  "The 'unreasonable application' clause of § 2254(d)(1) applies when the
4  'state court identifies the correct governing legal principle from [the Supreme]
5  Court's decisions but unreasonably applies that principle to the facts of the
6  prisoner's case,'" *Holland v. Jackson*, 542 U.S. 649, 652 (2004), or "if the state
7  court either unreasonably extends a legal principle from [its] precedent to a new
8  context where it should not apply," *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

9  Significantly, "a federal habeas court may not issue a writ under the
10  unreasonable application clause 'simply because that court concludes in its
11  independent judgment that the relevant state-court decision applied clearly
12  established federal law erroneously or incorrectly.'" *Bell v. Cone*, 535 U.S. 685,
13  694 (2002) (quoting *Williams*, 529 U.S. at 411). "Rather, it is the habeas applicant's
14  burden to show that the state court applied [clearly established Federal law] to the
15  facts in an objectively unreasonable manner," *Woodford v. Visciotti*, 537 U.S. 19,
16  27 (2002), "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465,
17  473 (2007). "It bears repeating that even a strong case for relief does not mean the
18  state court's contrary conclusion was unreasonable," *Richter*, 562 U.S. at 102, and
19  "even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. at 419 (quoting
20  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

21  "It is not an unreasonable application of clearly established Federal law for a
22  state court to decline to apply a specific legal rule that has not been squarely
23  established by [the Supreme] Court," *Richter*, 562 U.S. at 101, and "circuit
24  precedent may [not] be used to refine or sharpen a general principle of Supreme
25  Court jurisprudence into a specific legal rule that [the Supreme] Court has not
26  announced," *Lopez*, 135 S.Ct. at 4. *Accord Marshall v. Rodgers*, 569 U.S. at 64
27  (denouncing the "mistaken belief that circuit precedent may be used to refine or

28

sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced"); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (collecting cases); *Crosby v. Schwartz*, 678 F.3d 784, 790 (9th Cir. 2012) (denying habeas relief in jury-waiver context for lack of "any Supreme Court case that deals squarely with this issue"). Thus, "if habeas relief depends upon the resolution of 'an open question in [Supreme Court] jurisprudence,' § 2254(d)(1) precludes relief." *Crater v. Galaza*, 491 F.3d 1119, 1123 (9th Cir. 2007) (quoting *Carey v. Musladin*, 549 U.S. 70, 76 (2006)). Likewise, "where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods*, 135 S.Ct. at 1377.

Furthermore, a state-court decision constitutes a "reasonable application" of Supreme Court precedent when other lower courts have reached similar results in analogous cases. *See Price v. Vincent*, 538 U.S. 634, 643 & n.2 (2003) (holding that state court's rejection of prisoner's double-jeopardy claim was not an unreasonable application of clearly established federal law where "numerous other courts have refused to find double jeopardy violations under similar circumstances"); *John-Charles v. California*, 646 F.3d 1243, 1250-51 (9th Cir. 2011) (denying habeas relief where five circuits, including the Ninth Circuit Court of Appeals, rejected the claim that defendants have an absolute, constitutional right to reappointment of counsel after a *Faretta* waiver).[8]

"Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that 'the more general the rule' at issue—and

---

[8] A split of opinion among lower courts on a federal constitutional question precludes any finding that "the state court unreasonably applied clearly established Federal law." *Meras v. Sisto*, 676 F.3d 1184, 1190 (9th Cir. 2012). *Accord Kane v. Garcia-Espitia*, 546 U.S. 9, 10-11 (2006); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 676-79 (9th Cir. 2009).

1 thus the greater the potential for reasoned disagreement among fair-minded
2 judges—"the more leeway [state] courts have in reaching outcomes in case-by-
3 case determinations." *Renico v. Lett*, 559 U.S. 766, 776 (2010). *Accord Sessoms v.*
4 *Runnels*, 650 F.3d 1276, 1285 (9th Cir. 2011) (applying this principle to grant
5 substantial leeway to the state-court's determination that the defendant never
6 invoked his right to counsel during a post-arrest interview); *Stanley v. Schriro*, 598
7 F.3d 612, 619 (9th Cir. 2010) ("In the context of determining whether a state court
8 has reasonably applied clearly established federal law to reach its determination,
9 'the range of reasonable judgment can depend in part on the nature of the relevant
10 rule.'") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

11      In assessing the reasonableness of the state court's application of federal law
12 under § 2254(d)(1), "the federal courts are to review the *result* that the state court
13 reached, not 'whether its decision was well reasoned,'" *Robinson v. Polk*,
14 438 F.3d 350, 358 (4th Cir. 2006) (emphasis in original), because they "are
15 determining the reasonableness of the state courts' 'decision' [under AEDPA], not
16 grading their papers." *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001). *See also*
17 *Johnson*, 568 U.S. at 300 ("The caseloads shouldered by many state appellate
18 courts are very heavy, and the opinions issued by these courts must be read with
19 that factor in mind."); *Wright v. Secretary for Dept. of Corr.*, 278 F.3d 1245, 1255
20 (11th Cir. 2002) ("Telling state courts when and how to write opinions to
21 accompany their decisions is no way to promote comity [and] smacks of a 'grading
22 papers' approach that is outmoded in the post-AEDPA era."). *Hernandez v. Small*,
23 282 F.3d 1132, 1140 (9th Cir. 2002) (collecting cases recognizing that "the
24 intricacies of the state court's analysis need not concern us; what matters is
25 whether the decision the court reached was contrary to controlling federal law").
26 As the Supreme Court explicated:
27
28

By its terms § 2254(d) bars re-litigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. [Citations omitted.] … Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

*Richter*, 562 U.S. at 98. *Accord Johnson*, 568 U.S. at 298 (reaffirming that Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'") (quoting *Richter*, 562 U.S. at 100); *Murray*, 746 F.3d at 441 ("In determining whether a petitioner has met this burden, we 'must determine what arguments or theories supported or ... could have supported [ ] the state court's decision;' and then assess 'whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'") (quoting *Richter*, 562 U.S. at 102).

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This presumption of correctness extends to a state *appellate* court's factual determinations, *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004), and unarticulated findings necessary for the state court's legal

conclusions, *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007). Under this highly deferential fact-finding statutory scheme, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Ortiz*, 149 F.3d at 936 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). *See also Sophanthavong v. Palmateer*, 378 F.3d 859, 867 (9th Cir. 2004) (collecting cases); *Dyer v. Calderon*, 122 F.3d 720, 728 (9th Cir. 1997) (collecting cases).

**B. *Ground Two does not warrant relief.*.**

The Arizona Court of Appeals neither contravened nor unreasonably applied clearly established federal law, as defined by the holdings of the Supreme Court, when it rejected Petitioner's contention that Judge Conn's denial of her eve-of-trial request for a continuance did not violate her right to counsel of choice because: (1) Petitioner had not even retained an attorney to replace her court-appointed counsel—let alone a new lawyer who was ready to proceed to trial as scheduled; (2) Petitioner had received seven prior continuances; (3) her court-appointed attorney was prepared for trial; (4) besides inconveniencing the court, the prosecutor, and the subpoenaed witnesses, Petitioner's requested continuance would have caused lengthy delay, given her in-court assertions that she believed that "there could have been a lot more done in [her] case," and that she wanted another lawyer to "fight for [her] more" (Exhibit N: R.T.9/24/12, at 6-7); and (5) Petitioner's refusal to communicate with court-appointed counsel did not warrant substituting counsel.

**1. Pertinent law.**

"An essential element of the Sixth Amendment's protection of right to counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing." *United States v. Gallop*, 838 F.2d 105, 107 (4th Cir. 1988). "It is also axiomatic that a motion for a continuance is directed to the

discretion of the trial court, and that court's ruling will not be disturbed absent a clear abuse of discretion." *State v. Hein*, 138 Ariz. 360, 368, 674 P.2d 1358, 1366 (1983). "The trial court is accorded this discretion because it is the only unbiased party in a position to observe the proceeding." *Id.* The Supreme Court explained why substantial deference should be accorded to trial judges trying to balance their calendars against a defendant's eleventh-hour assertions of constitutional rights:

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). *Accord State v. Lamar*, 205 Ariz. 431, 436, ¶ 26, 72 P.3d 831, 836 (2003) ("Trial courts must be accorded wide discretion in deciding whether to grant continuances, notwithstanding that constitutional rights may be implicated.").

The judge's discretion to deny motions to substitute counsel is "at its zenith when the issue is raised close to the trial date." *United States v. Whitehead*, 487 F.3d 1068, 1071 (8th Cir. 2007); *United States v. Reevey*, 364 F.3d 151, 157 (4th Cir. 2004) (noting that "a continuance request for the substitution of counsel made on the first day of trial is clearly untimely under all but the most exigent circumstances"); *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991) ("We have consistently held that a district court has broad discretion to deny a motion for substitution made on the eve of trial if the substitution would require a continuance.") (citing *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986)).

Courts confronting a defendant's motion for a continuance of trial in order to retain new counsel typically consider factors such as "whether other continuances

1   were granted; whether the defendant had other competent counsel prepared to try

2   the case; the convenience or inconvenience to the litigants, counsel, witnesses, and

3   the court; the length of the requested delay; the complexity of the case; and

4   whether the requested delay was for legitimate reasons or was merely dilatory."

5   *Hein*, 138 Ariz. at 369, 674 P.2d at 1367. *Accord United States v. Eiland*, 738 F.3d

6   338, 355 (D.C. Cir. 2013); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1016

7   (10th Cir. 1992); *United States v. Kelm*, 827 F.2d 1319, 1322 n.2 (9th Cir. 1987).

8         Nonetheless, the Supreme Court has also held that the improper denial of a

9   non-indigent defendant's right to counsel of her choice constitutes structural error.

10   *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 146-52 (2006). Nonetheless,

11   the Court limited this holding by: (1) stating, "Nothing we have said today casts

12   any doubt or places any qualification upon our previous holdings that limit the

13   right to counsel of choice," *id.* at 151; and (2) reaffirming "a trial court's wide

14   latitude in balancing the right to counsel of choice against ... the demands of its

15   calendar." *Id.* at 152 (citing *Morris*, 461 U.S. at 11-12). Consequently, the law

16   remains: although "the right to counsel ordinarily encompasses a right to retain

17   counsel of one's choice, the latter right does not trump, and will not be permitted to

18   frustrate, the orderly administration of criminal justice." *Moore v. State*, 889 A.2d

19   325, 362 (Md. 2005) (collecting cases). *Accord United States v. Micke*, 859 F.2d

20   473, 480 (7th Cir. 1988) ("This right is not absolute, but qualified, and must be

21   balanced against the requirements of the fair and proper administration of justice.")

22   (collecting cases); *State v. Miller*, 111 Ariz. 321, 322-23, 529 P.2d 220, 221-22

23   (1975) ("The right to choose one's attorney is not unlimited and, if in the sound

24   discretion of the court, the attempted exercise of choice is deemed dilatory or

25   otherwise subversive of orderly criminal process, the judge may compel a

26   defendant to proceed with designated counsel.").

27

28

## 2. Pertinent procedural history.

Mr. Bradley Rideout, whom the court appointed to defend Petitioner against these charges, made his first appearance at her arraignment on November 10, 2011. (Exhibit QQ: Minute Entries Pertinent to Ground 2 [R.O.A., Item 5].) Judge Steven Conn subsequently granted Petitioner's oral motions to continue her trial date six times between December 27, 2011, and July 2, 2012. (*Id.* [R.O.A., Items 18-20, 22]; Exhibit D: Minute Entry Ruling Granting 5th Continuance [R.O.A. Item 31]; Exhibit E: Minute Entry Order Granting 6th Continuance [R.O.A. Item 32].)

On July 12, 2012, Petitioner filed her motion to suppress her post-arrest statements, as well as all physical evidence seized by the police, on Fourth Amendment grounds. (Exhibit F: Motion to Suppress [R.O.A., Item 33].) Because this motion was still pending on August 9, 2012, Petitioner moved that day for a 4-week continuance of the prescheduled August 28th trial date "because defense counsel would like to complete the Evidentiary Hearing prior to setting a firm Trial date." (Exhibit H: Defense's 7th Motion to Continue Trial [R.O.A., Item 36].) Granting this motion on August 14, 2012, the court extended the trial date to September 25, 2012. (Exhibit I: Minute Entry Order [R.O.A., Item 37].) On August 15, 2012, the court denied Petitioner's suppression motion and reaffirmed the extended trial date. (Exhibit J: R.T. 8/15/12, at 7-12, 23-24; Exhibit K: Minute Entry Ruling on Suppression Motion [R.O.A., Item 38].)

During the final pretrial conference held on September 10, 2012, Petitioner requested her eighth continuance, even though her attorney had finished interviewing all the State's witnesses in May—four months earlier. (Exhibit L: R.T. 9/10/12, at 3-7.) The State opposed this request because the case was "aging," "many [prosecution] witnesses … are going to be unavailable throughout October," and trial therefore would not start until "November at the earliest." (*Id.* at 4-5.) The

1    court denied Petitioner's requested continuance and reaffirmed the September 25th

2    trial date. (*Id.* at 7-8; Exhibit M: Minute Entry Order [R.O.A., Item 39].)

3         On either September 19, 2012, or the following day, Petitioner telephoned

4    the court's chambers and told Judge Conn's secretary "that she was going to try to

5    hire a new attorney." (Exhibit N: R.T. 9/24/12, at 3.) Judge Conn's secretary

6    informed Petitioner to file a written *pro per* motion "as soon as possible" if she

7    wanted to delay her trial for that purpose. (*Id.* at 3-4.) At 10:30 on the night of

8    Friday, September 21, 2012, Petitioner emailed Judge Conn a letter conveying her

9    dissatisfaction with Rideout and requesting "an opportunity to hire a new attorney

10   to represent [her]." (*Id.* at 4-5.) Consequently, Judge Conn contacted both counsel,

11   scheduled an impromptu hearing on the morning before trial, and provided them

12   with a copy of Petitioner's email, wherein she complained that Rideout had not

13   given her sufficient advance notice of the prior hearing, failed to schedule

14   appointments with her, gave another client a copy of a witness interview from her

15   case, and allegedly demanded payment for time he spent answering her questions.[9]

16   (*Id.* at 3-6; Exhibit O: Minute Entry re: Motions for New Counsel/Continuance

17   [R.O.A., Item 40].)

18        During the hearing, Petitioner complained, "I feel that there could have been

19   a lot more done in my case," stated that she wanted an attorney who would "fight a

20   little bit more," expressed the opinion that she was "going to lose" and "get a lot

---

22        [9] Because Petitioner did not make her email part of the appellate record,
23   Judge Conn's on-the-record summation of its contents constitutes the only
     evidence of what she wrote. Arizona courts presume that this missing email's text
24   supported the judge's denial of her continuance motion. "When the record is not
     complete, we must assume that any evidence not available on appeal supports the
25   trial court's actions," *State v. Lavers*, 168 Ariz. 376, 399, 814 P.2d 333, 356 (1991),
26   and "[a]n appellate court will not speculate about the contents of anything not in
     the appellate record." *State v. Rivera*, 168 Ariz. 102, 103, 811 P.2d 354, 355 (App.
27   1990).

1    more time" if Rideout remained her attorney, but was unable to identify anything

2    that she wanted Rideout "to do that he hasn't done." (Exhibit N: R.T. 9/24/12, at 6-

3    7.) Rideout informed the court that he conferred with Petitioner during the prior

4    week to discuss the State's plea offer and her trial testimony, but "was not able to

5    do that" because Petitioner did not trust him, appeared "very, very frustrated with

6    [him]," and "really [didn't] want to talk to [him] at this point in time." (*Id.* at 8-9.)

7    Because Petitioner seemed "unable to communicate with [him]," Rideout

8    requested a continuance to afford her additional time to retain a new lawyer. (*Id.* at

9    9.) The State, however, objected to this motion because the prosecutor had already

10   prepared for trial and had "multiple witnesses subpoenaed and prepared to come."

11   (*Id.*)

12        While denying Petitioner's continuance request, Judge Conn explained that:

13   (1) Petitioner was aware of her constitutional rights because she had appeared

14   before him "on probably at least three or four separate occasions," (2) Petitioner

15   seemed to be "just having a hard time accepting the fact that her trial is starting

16   tomorrow, and if she's found guilty she may be facing some serious

17   consequences," and (3) Petitioner's frustration and refusal to consult with Rideout

18   was not a valid "reason to delay the trial in this case." (*Id.* at 9-10.)

19        The pertinent passage from the last-reasoned state court decision regarding

20   Ground 2 reads, in its entirety, as follows:

21        ¶ 13 Sandoval argues the trial court violated her right to counsel
22        of choice by denying her motion to continue trial in order to retain
         private counsel. Denial of a motion to continue is reviewed for abuse
23        of discretion. *State v. Hein*, 138 Ariz. 360, 368, 674 P.2d 1358, 1366
         (1983). The trial court has substantial discretion because it "is the only
24        party in a position to judge the inconvenience of a continuance to the
         litigants, counsel, witnesses, and the court, and further is the only
25        party in a position to determine whether there are "extraordinary
26        circumstances" warranting a continuance and whether "delay is

27

28

indispensable to the interests of justice" as required by Arizona Rules of Criminal Procedure 8.5(b). *Id.*

¶ 14  The day before trial began, Sandoval requested a continuance to allow her to retain private counsel. Sandoval stated that her appointed counsel was not representing her well and that he was not communicating with or helping her. When asked what more she wanted her attorney to do, Sandoval stated, "I don't know, like fight a little bit more. I mean I feel that I'm going to lose, if I keep him. I feel that I might get a lot of time; and I would like an attorney that's going to fight for me more, you know." The State opposed the motion, stating it had multiple witnesses subpoenaed and ready to appear, and the prosecutor had cleared her schedule for trial.

¶ 15 The trial court noted that Sandoval had presented nothing specific as to why appointed counsel could not continue representing her. In addressing what it believed to be the true reason for the continuance request, the court stated it appeared Sandoval "thought that the day of reckoning would be farther off in the future, and that she's just having a hard time accepting the fact that her trial is starting tomorrow, and if she's found guilty she may be facing some serious consequences."

¶ 16 A criminal defendant has the right to counsel of her choosing under the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona Constitution. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006); *Robinson v. Hotham*, 211 Ariz. 165, 169, ¶ 16, 118 P.3d 1129, 1133 (App.2005). The right to counsel of choice, though, is "not absolute, but is subject to the requirements of sound judicial administration." *Hein*, 138 Ariz. at 369, 674 P.2d at 1367; *see also Wheat v. United States*, 486 U.S. 153, 159 (1988) (holding right is circumscribed and a defendant has no guarantee she will have top choice of attorney). A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez–Lopez*, 548 U.S. at 152. Notwithstanding this broad discretion, an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). The wrongful denial of the right to counsel of choice is structural error. *Gonzalez–Lopez*, 548 U.S. at 150.

¶ 17 "Whether an accused's constitutional rights are violated by the denial of a request for a continuance depends on the circumstances present in the particular case." *Hein*, 138 Ariz. at 369, 674 P.2d at 1367. We consider:

whether other continuances were granted; whether the defendant had other competent counsel prepared to try the case; the convenience or inconvenience to the litigants, counsel, witnesses, and the court; the length of the requested delay; the complexity of the case; and whether the requested delay was for legitimate reasons or was merely dilatory.

*Id*.

¶ 18 The trial court here had already granted Sandoval three prior trial continuances. Sandoval did not state when she would be able to hire new counsel or how long it would take for new counsel to prepare for trial. In contrast, not only was the State prepared for trial, but Sandoval's longtime appointed counsel was also ready to try the case as scheduled. And based on its questioning of Sandoval, the trial court could have reasonably concluded that her continuance request was not made for legitimate reasons, but for purposes of delay. We find no abuse of discretion in denying Sandoval's continuance request.

(Exhibit HH: Memorandum Decision, 1 CA-CR 14-0242, at 4-6, ¶¶13-18.)

**3. Argument.**

The Arizona Court of Appeals' rejection of Petitioner's argument—that Judge Conn's denial of her motion to terminate Rideout on the eve of trial constituted a violation of her Sixth Amendment right to retain counsel of choice—was neither contrary to, nor an unreasonable application of, clearly established federal law, as defined by the holdings of extant Supreme Court precedent.

For starters, the court of appeals manifested its identification of the correct legal standard by recognizing that: (1) "[a] criminal defendant has the right to counsel of her choosing under the Sixth Amendment to the United States Constitution" (Exhibit HH: Memorandum Decision, 1 CA-CR 14-0242, at 5, ¶ 16,

1   citing *Gonzalez-Lopez*, 548 U.S. at 144); and (2) "[t]he wrongful denial of the right
2   to counsel of choice is structural error" (*id.*, citing *Gonzalez–Lopez*, 548 U.S. at
3   150).

4          Furthermore, the Arizona Court of Appeals reasonably applied clearly
5   established federal law while rejecting Ground 2 because: (1) Petitioner had not
6   even retained an attorney, let alone one who was ready and willing to represent her
7   on the trial date, but instead had merely requested a continuance so that she might
8   hire a different lawyer; (2) the Supreme Court predicated its finding of structural
9   error in *Gonzalez-Lopez* upon a set of facts not present here—the newly retained
10  lawyer had appeared in the courtroom with the defendant and announced his
11  readiness to proceed to trial that very day, but the trial court erroneously denied the
12  defendant's motion to substitute counsel, due to its mistaken interpretation of the
13  forum's ethical rules, 548 U.S. at 142-44, 150; (3) numerous courts have found
14  *Gonzalez-Lopez* inapplicable when the defendant requested a continuance on or
15  shortly before the scheduled trial or hearing date without having actually retained
16  an attorney, but instead sought to delay the proceedings in order to locate and hire
17  a new lawyer;[10] and (4) courts may properly deny eleventh-hour continuance
18
19
20      [10] *See United States v. Robinson*, 753 F.3d 31, 39-41 (1st Cir. 2014) (court's
21  denial of defendant's day-of-trial continuance request did not violate *Gonzalez-Lopez* where no new lawyer had been retained and no motion to withdraw had
22  been filed by current counsel) (citing *United States v. Gaffney*, 469 F.3d 211, 213-
23  17 (1st Cir. 2006)); *United States v. Nguyen*, 526 F.3d 1129, 1133-34 (8th Cir.
24  2008) ("Considering the court's interest in efficiently administering its own docket,
    and Nguyen's ample opportunity to retain private counsel, the district court did not
25  abuse its discretion in denying Nguyen's request for a continuance on the morning
    of trial."); *Miller v. Blacketter*, 525 F.3d 890, 892-97 (9th Cir. 2008) (trial court did
26  not violate *Gonzalez-Lopez* by denying the motions to withdraw and postpone trial
    that defense counsel filed on the morning of trial, where defendant "sought a
27  thirty-day continuance during which he hoped to search for and to retain a new
    lawyer with the funds his father had belatedly offered to provide"); *United States v.*
28
                                                                    (continued ...)

1 requests predicated upon the defendant's desire to retain new counsel when the
2 motion is merely a delay tactic or when the defendant failed to exercise diligence
3 in procuring another lawyer.[11]

4      Because Petitioner failed to retain an attorney to succeed Rideout and
5 proceed to trial as scheduled on September 25, 2012, her constitutional claim was
6 not controlled by *Gonzalez-Lopez*, and "the only question facing this court is
7 whether [Judge Conn] 'wrongly denied' the continuance that would have permitted
8 [Petitioner to retain a different lawyer]." *United States v. Flanders*, 491 F.3d 1197,
9 1216 (10th Cir. 2007). As noted above, a judge's discretion to deny motions to
10 substitute counsel is "at its zenith when the issue is raised close to the trial date."
11 *Whitehead*, 487 F.3d at 1071. *Accord Garcia*, 924 F.2d at 926; *McClendon*, 782
12 F.2d at 789.

13      Numerous factors demonstrate that Judge Conn did not abuse his discretion
14 by denying Petitioner's eve-of-trial continuance request, despite her asserted
15 intention to retain a different lawyer during the delay. First, the trial court's denial
16 of the continuance motion is bolstered by the fact that it had granted Petitioner
17 continuances *seven times* between December 27, 2011, and August 14, 2012, the
18 consequence of which was that Petitioner's final trial date of September 25, 2012
19 began almost 11 months after she committed her most recent charged offenses
20 (October 28, 2011) and more than 10 months after the grand jury indicted her
21 (November 3, 2011). *See Hein*, 138 Ariz. at 369, 674 P.2d at 1367 (upholding
22

23 _____
     ( ... continued)
24 *Washington*, 457 F.Supp.2d 684, 686-88 (E.D. Va. 2006) (denying new trial where
granting day-of-trial motion to continue to secure new counsel would have
25 interfered with calendaring concerns).

26     [11] *See State v. Crawley*, 50 A.3d 349, 356-59 (Conn. App. 2012); *Tyner v.*
27 *State*; 722 S.E.2d 177, 182 (Ga. App. 2012); *State v. Holm*, 304 P.3d 365, 370-71,
¶¶ 26-37 (Mont. 2013).
28

1  denial where just two continuances previously granted); *State v. West*, 168 Ariz.

2  292, 297, 812 P.2d 1110, 1115 (App. 1991) ("Here there had already been several

3  continuances. Defendant had been in jail for eight months.").

4          Second, Judge Conn's denial of Petitioner's eve-of-trial continuance was

5  justified by the fact that she sought the delay to find a new lawyer and thus lacked

6  "other competent counsel prepared to try her case." *Hein*, 138 Ariz. at 369, 674

7  P.2d at 1367. "It is well established that a trial court will not be found to have

8  abused its discretion in denying a motion for substitution of counsel in the absence

9  of ready and willing substitute counsel." *State v. Kirkpatrick*, 184 P.3d 247, 261

10 (Kan. 2008) (quoting *People v. Segoviano*, 725 N.E.2d 1275, 1283 (Ill. 2000)).[12] In

11 contrast, Petitioner's court-appointed counsel had interviewed all of the State's

12

13 _____

14     [12] *Accord Miller*, 525 F.3d at 896 (denying habeas relief where defendant

15 "had not yet retained another attorney to take [his present lawyer's] place"); *United*

16 *States v. Cabrera*, 259 F.3d 818, 825 (7th Cir. 2001) ("The untimely nature of

17 Luis's motion coupled with its close proximity to trial as well as the fact that Luis

18 was unable to name his new counsel made it reasonable for the district court to

19 question whether Luis's motion was an attempt to delay the trial."); *United States v.*

20 *Oliver*, 571 F.2d 664, 664-65 (D.C. Cir. 1978) ("The district judge did not abuse

21 his discretion in denying the continuance, sought for the first time at the very hour

22 of trial. Although the record discloses that Oliver had talked of retaining counsel

23 and had spoken to a lawyer about retaining him, this lawyer had not entered an

24 appearance, was not in the courtroom on the morning of trial, and apparently had

25 not been formally retained."); *People v. Keshishian*, 75 Cal. Rptr.3d 539, 542 (App.

26 2008) ("An indefinite continuance would have been necessary, as Petitioner had

27 neither identified nor retained new counsel."); *People v. Martin*, 838 N.Y.S.2d 166,

28 167 (2007) (upholding denial of motions to substitute counsel and delay trial where

"the defendant's application to substitute counsel was made on the eve of trial, with

a jury already waiting, and included a request for a three-to-four week

adjournment"); *State v. Bido*, 941 A.2d 822, 831 (R.I. 2008) ("Mr. Bido had no

private counsel prepared to proceed on his behalf when he made the motion for a

continuance.").

1  witnesses several months earlier and never claimed during the hearing on
2  Petitioner's motion that he was unprepared for trial.

3      The third factor—the inconvenience the requested continuance would
4  impose upon the court, counsel, witnesses, and the jury—also supports the
5  challenged ruling because the prosecutor had cleared her calendar and prepared to
6  try Petitioner's case the following day, the State's witnesses had all been
7  subpoenaed, the court had summoned a jury pool, and a new trial date would
8  conflict with the upcoming Thanksgiving and Christmas holidays. *See United*
9  *States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004) (observing that "the
10 administrative hurdles and costs involved in ensuring the attendance of the
11 Government's witnesses for the trial [and] the public's interest in the prompt and
12 efficient administration of justice weighed in favor of denying [defendant's]
13 motion to continue"); *Oliver*, 571 F.2d at 665 (upholding denial of motion to
14 continue where the parties and witnesses were ready to proceed); *Hein*, 138 Ariz.
15 at 369, 674 P.2d at 1367 (same result where the other attorneys were ready to
16 proceed, many witnesses were from out of state, and the jury was ready to be
17 sworn); *Martin*, 838 N.Y.S.2d at 167 ("Moreover, the defendant's application to
18 substitute counsel was made on the eve of trial, with a jury already waiting, and
19 included a request for a three-to-four week adjournment.").

20     As for the length of the requested delay, nothing in the record supports
21 Petitioner's assertion that she requested only a brief continuance. Indeed, Petitioner
22 betrayed her desire for a lengthier delay in her trial date by complaining that "there
23 could have been a lot more done in [her] case," and announcing that she wanted a
24 lawyer who would "fight for [her] more." (Exhibit N: R.T. 9/24/12, at 6-7.) *See*
25 *United States v. Mooneyham*, 473 F.3d 280, 291-93 (6th Cir. 2007) (upholding
26 denial of motions for continuance and substitution of counsel where the new
27 attorney whom defendant retained 4 days before trial did not "feel comfortable

28

1   going to trial" on the scheduled date and still needed to review evidence and

2   interview a witness); *United States v. Franklin*, 321 F.3d 1231, 1238 (9th Cir.

3   2003) (denying defendant's request for substitute counsel, made 10 days before

4   trial, because any newly retained lawyer would have "needed a substantial

5   continuance to comply with [defendant's] desired actions"); *West*, 168 Ariz. at

6   297, 812 P.2d at 1115 (upholding denial of motion for continuance to substitute

7   counsel where retained counsel "was not prepared to try the case on the firm trial

8   date").

9       While the instant case did not involve wiretap or DNA evidence or

10  conspiracy charges involving multiple defendants, her charges nonetheless

11  required the testimony of nine witnesses about three different crime scenes. Even

12  so, the relatively non-complex nature of this case does not render the challenged

13  ruling an abuse of discretion. *See Hein*, 138 Ariz. at 369, 674 P.2d at 1367

14  (upholding denial of continuance, despite the observation, "This case was not

15  complex. The facts were straightforward, and the evidence of guilt was

16  overwhelming.").

17      Finally, Judge Conn's conclusion that Petitioner's request for a new lawyer

18  was merely a tactic to delay her trial was reasonable because: (1) Petitioner had

19  four historical felony convictions, some of which were adjudicated before Judge

20  Conn; (2) the overwhelming evidence of guilt on the charged offenses virtually

21  guaranteed that Petitioner would be convicted and suffer lengthy imprisonment; (3)

22  Judge Conn's denial of Petitioner's suppression motion on August 15, 2012 dashed

23  any hope of avoiding imprisonment that Petitioner might have entertained; (4)

24  Judge Conn indicated that the September 25th trial date was Petitioner's day of

25  reckoning by denying her eighth continuance request during the September 10th

26  final pretrial conferences; (5) only after these events did Petitioner ever express

27  any interest in replacing court-appointed counsel, who had represented her since

28

her arraignment on November 10, 2011; and (6) despite having two opportunities to specify the requested actions that Rideout had not undertaken on her behalf, Petitioner failed to name any unfulfilled requests or unexplored leads, but instead expressed fear that she would be convicted if Rideout continued representing her. (Exhibit N: R.T. 9/24/12, at 6-7, 9-10.) These facts place this case within the purview of precedent recognizing that "[a] request for change in counsel cannot be considered justifiable if it proceeds from a transparent plot to bring about delay." *Gallop*, 838 F.2d at 108 (upholding denial of request for continuance to obtain new counsel, made 5 days before trial, "when there was little or no assurance that substitute counsel would be adequately prepared in time, and the defendant had been represented throughout by the [same court-appointed attorney]") (citing *Morris*, 461 U.S. at 13, and *United States v. Mastroinanni*, 749 F.2d 900, 913-14 (1st Cir. 1984)).[13]

The objective reasonableness of Judge Conn's ruling is further bolstered by precedent holding that the trial court did not violate the defendant's right to retain counsel of choice by denying continuance motions made shortly before the trial date. *See United States v. Miller*, 405 F.3d 551, 557 (7th Cir. 2005) (the Friday before trial); *Trujillo*, 376 F.3d at 606-07 (3 days before trial); *Franklin*, 321 F.3d

_____

[13] *Accord Stevenson v. State*, 709 A.2d 619, 631 (Del. 1998) ("The denial of a continuance for change of counsel on the eve of trial is not an abuse of discretion when: (1) there had been no previous complaint about counsel; (2) defendant had a prior opportunity to obtain substitute counsel; and (3) obtaining substitute counsel was uncertain and appeared to be a dilatory tactic."); *Bido*, 941 A.2d at 832 ("Mr. Bido had been represented by the public defender for at least eight months, but he waited until the very last minute before trial to make the motion. ... Mr. Bido had ample time after the public defender was appointed to secure other counsel and make the court aware of his dissatisfaction. … Further, his requested delay appeared to be a stratagem to avoid the day of reckoning rather than for legitimate reasons.").

1    at1238-39 (defendant's request for new counsel made 10 days before trial and

2    attorney's motion to withdraw made 6 days before trial were both untimely);

3    *Jordan v. State*, 544 S.E.2d 731, 734-35 (Ga. App. 2001) (upholding motion for

4    continuance to obtain new counsel, lodged 5 days before trial, based on

5    defendant's lack of confidence in current counsel and his failure to "articulate any

6    basis for his dissatisfaction"); *Miller*, 111 Ariz. at 322-23, 529 P.2d at 221-22 (the

7    day before trial and 3 months after arrest).

8          Nor was Petitioner entitled to new counsel based upon her unilateral refusal

9    to communicate with her court-appointed lawyer during their pretrial discussions

10   about the State's plea offer, whether she should testify, and trial strategy. "A

11   defendant cannot simply manufacture a breakdown in communication and thereby

12   give rise to a constitutional violation." *Romero v. Furlong*, 215 F.3d 1107, 1114

13   (10th Cir. 2000).[14] "That appellant had inexplicably 'lost confidence' in [her]

14   _____

15       [14] *Accord Morris*, 461 U.S. at 9 (upholding convictions of defendant who

16   "refused to cooperate with or even speak with [his attorney]"); *Larson v.*

17   *Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) ("However, no Supreme Court

18   case has held that 'the Sixth Amendment is violated when a defendant is

     represented by a lawyer free of conflicts of interest, but with whom the defendant

19   refuses to cooperate because of dislike or distrust."); *United States v. Reyes*, 352

20   F.3d 511, 516 (1st Cir. 2003) ("Furthermore, a defendant cannot compel a change

     to counsel by the device of refusing to talk with his lawyer."); *United States v.*

21   *Exson*, 328 F.3d 456, 460-61 (8th Cir. 2003) (upholding denial of substitution

22   motion where the defendant himself "contributed to the difficulties about which he

     complained in that he refused to meet with his appointed attorney or respond to

23   communications from his counsel"); *United States Gibbs*, 190 F.3d 188, 207 n.10

24   (3d Cir. 1999) (noting that "a defendant's unilateral decision not to cooperate with

     court-appointed counsel does not constitute good cause" meriting substitution of

25   counsel); *United States v. Morsley*, 64 F.3d 907, 918 (4th Cir. 1995) ("The district

26   court is not compelled to substitute counsel when the defendant's own behavior

     creates a conflict."); *United States v. Roston*, 986 F.2d 1287, 1292-93 (9th Cir.

27   1993) (court properly refused to appoint new counsel where the breakdown in

     communication with counsel was entirely defendant's fault).

28

experienced and fully prepared counsel did not constitute good cause for granting the continuance requested, nor justify the disruption to the judicial process that would have ensued." *Keshishian*, 75 Cal.Rptr.3d at 742. *Accord State v. Paris-Sheldon*, 214 Ariz. 500, 505, ¶ 14, 154 P.3d 1046, 1051 (App. 2007) ("A defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient [to require the appointment of new counsel].") (quoting *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985)). Petitioner's subjective belief that another attorney might "do more" for her defense likewise did not constitute good cause mandating the substitution of counsel. *See United States v. Allen*, 789 F.2d 90, 93 (1st Cir. 1987) ("Good cause for substitution of counsel cannot be determined 'solely according to the subjective standard of what the defendant perceives,' [because] [t]he defendant must provide the court with a legitimate reason for his loss of confidence.") (quoting *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981)).

Finally, any disagreement over trial tactics did not warrant substitution of counsel. *See United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003) ("The court also identified the sources of conflict—which were invariably disputes regarding trial tactics—underlying each of McKenna's motions for substitution of counsel. McKenna wanted her attorneys to file motions which they felt were not supported by the evidence. It is well-settled, however, that this type of dispute is not a sufficient conflict to warrant substitution of counsel."); *Franklin*, 321 F.3d at 1239 (substitution of retained counsel unwarranted for disagreements on litigation tactics); *United States v. White*, 174 F.3d 290, 296-97 (2d Cir. 1999) ("White merely expressed disagreement with his attorney over whether to file certain motions, to pursue certain evidentiary leads, to object to the introduction of certain evidence at trial, and to call certain witnesses at trial and at a sentencing hearing. A defendant's decision to raise complaints of this nature before the trial court does

1  not give rise to a conflict of interest between the defendant and his attorney."); 
2  *State v. Cromwell*, 211 Ariz. 181, 186-87, ¶ 29, 119 P.3d 448, 453-54 (2005) 
3  (collecting Arizona cases holding that disagreements over defense strategy do not 
4  require appointment of new counsel).

5      Consequently, the Arizona Court of Appeals neither contravened nor 
6  unreasonably applied clearly established federal law, as defined by the holdings of 
7  the Supreme Court, by affirming Judge Conn's order denying Petitioner's eve-of-
8  trial request for a continuance to retain new counsel.

9      **C. *Ground 3 does not warrant relief.***

10      The Arizona Court of Appeals neither contravened nor unreasonably applied 
11  clearly established federal law, as defined by the holdings of the Supreme Court, 
12  when it found sufficient evidence to support Petitioner's conviction for Count 5 
13  (possession of dangerous drugs), because reasonable jurists could agree with its 
14  ultimate determination that a rational jury could find the State had presented 
15  evidence sufficient to prove, beyond a reasonable doubt, that the two yellow tablets 
16  discovered inside her residence on October 25, 2011, contained the dangerous drug 
17  Clonazepam.

18      On top of a microwave oven inside Petitioner's kitchen, Corporal Holdway 
19  discovered a plastic baggie containing two loose yellow pills near an empty 
20  medicine bottle bearing a label for a different prescription drug. (Exhibit P: R.T. 
21  9/25/13, at 244-47; Exhibit R: R.T. 9/26/13, at 43; Exhibit W: Trial Exhibits [E18, 
22  photographs 10, 41, 42].) Holdway determined that these yellow tablets were 
23  Clonazepam pills by consulting "a drug application" that he had downloaded onto 
24  his cellular telephone from an Internet website that had been "specifically … made 
25  as an aid for law enforcement" officers who need to "identify pills and get other 
26  information about drugs, drug use, and other things like that." (Exhibit P: R.T. 
27  9/25/13, at 247-48.) Holdway testified that he uses this application "all the time"

28

and has always found its identification of unknown pills to be correct. (*Id.* at 248.) Additionally, Holdway testified that he "contacted a pharmacist at Walgreen's that day, and [he] also confirmed [his] identification [of the tablets as Clonazepam] through that pharmacist," who performed a visual inspection of the pills and their "lettering." (*Id.* at 247, 249-50.)

Although Arizona Department of Public Safety Criminalist Shayna Smith did not perform any chemical tests on the two yellow tablets at issue, she demonstrated the validity of identifying prescription medication through visual inspection by testifying that: (1) pharmaceutical "manufacturers will put specific markings on the tablets, or pills, or capsules that are specific to the type of drug or chemical that is inside" the item to facilitate identification of the active ingredient; and (2) Smith likewise routinely consults reference guides to ascertain unknown prescription drugs by the tablet or capsule's shape, color, and embossed markings. (Exhibit R: R.T. 9/26/13, at 130-31.)

Significantly, Arizona law allows the prosecution to prove the identity of a controlled or contraband substance without chemical analysis or forensic expert testimony. *See State v. Saez*, 173 Ariz. 624, 629-30, 845 P.2d 1119, 1124-25 (App. 1993) (holding that a drug abuser may identify a contraband substance based upon prior usage and experience) (collecting cases); *State v. Jonas*, 162 Ariz. 32, 34, 780 P.2d 1080, 1082 (App. 1989) ("That a substance is an illicit drug can be proved by circumstantial evidence."); *State v. Nightwine*, 137 Ariz. 499, 503, 671 P.2d 1289, 1293 (App. 1983) (circumstantial evidence, including statements of co-conspirators and price paid, was sufficient to sustain conviction for cocaine offenses, despite absence of chemical analysis); *State v. Ampey*, 125 Ariz. 281, 282, 609 P.2d 96, 97 (App. 1980) (upholding conviction for possession of marijuana, based upon a police officer's observations and the defendant's admission).

"[Arizona] does not stand alone in this regard. To the contrary, courts around the nation have uniformly held that circumstantial evidence is enough to sustain a conviction for an offense involving a controlled substance." *Jones v. Commonwealth*, 331 S.W.3d 249, 253 (Ky. 2011) (collecting cases). *Accord United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976) ("Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction[.]"); *Wallace v. State*, 130 So.3d 212, 218-19 (Ala. Crim. App. 2011) ("Overwhelmingly, the vast majority of jurisdictions that have considered this issue agree that chemical tests are not necessary to obtain a drug-related conviction.") (collecting cases); *State v. Watson*, 437 N.W.2d 142, 146 (Neb. 1989) ("We are therefore in agreement with the vast majority of courts in this nation that hold proof of the identity of a substance by circumstantial evidence, including lay testimony by a person sufficiently familiar with the drug in question, may be sufficient in a drug prosecution.") (collecting cases).

Not surprisingly in light of the aforementioned law and trial testimony, the Arizona Court of Appeals had little difficulty rejecting Ground 3 and finding sufficient evidence to establish the identity of the two yellow clonazepam pills:

¶ 23 Sandoval contends insufficient evidence supports the conviction for possession of dangerous drugs (clonazepam). Specifically, she argues the State failed to prove beyond a reasonable doubt that the pills found in her apartment were clonazepam. We review claims of insufficient evidence *de novo*, viewing the evidence in the light most favorable to upholding the verdict. *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993).

¶ 24 "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). "If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *State v. Herrera*, 174 Ariz. 387, 393, 850 P.2d 100, 106 (1993). "We do not consider if we

would reach the same conclusion as the trier-of-fact, but only if there is a complete absence of probative facts to support its conclusion." *State v. Carlisle*, 198 Ariz. 203, 206, ¶ 11, 8 P.3d 391, 394 (App. 2000).

¶ 25 Sandoval argues the evidence was insufficient because identification of the pills was based solely on testimony of a police detective. However, the identity of a controlled or contraband substance may be proven without chemical analysis or forensic expert testimony. *State v. Saez*, 173 Ariz. 624, 630, 845 P.2d 1119, 1125 (App. 1992); *see also State v. Nightwine*, 137 Ariz. 499, 503, 671 P.2d 1289, 1293 (App. 1983) (upholding convictions for cocaine offenses despite absence of chemical analysis); *State v. Ampey*, 125 Ariz. 281, 282, 609 P.2d 96, 97 (App. 1980) (sufficient evidence of marijuana existed based on officer's observation and defendant's admission). Numerous courts have held that the chemical content of a tablet may be identified from its external features and the manufacturer's stamp ("trade dress"), reasoning that "the trade dress of a pill is akin to looking at a human face." *Jones v. Commonwealth*, 331 S.W.3d 249, 255 (Ky. 2011) (collecting cases); *see also State v. Murphy*, 28 So.3d 496, 498–99 (La. App. 2009) (upholding conviction for possession of clonazepam where no chemical testing was performed and State's witness identified drug through "Just Drug Identification" website); *State v. Carter*, 981 So.2d 734, 744 (La. App. 2008) (upholding identification of hydrocodone pills by chemist and narcotics detective "via visual inspection and comparison with pictures in a book"); *Commonwealth v. Loskovic*, 307 A.2d 357, 358 (Pa. Super. 1973) (upholding officer's identification of a drug "by comparing the appearance of the capsule, by color and the manufacturer's markings, with information on dangerous drugs contained in a manual furnished by the State Police").

¶ 26 Here, a detective who is a supervisor with the Mohave Area General Narcotics Enforcement Team drug task force identified the two pills as clonazepam through use of a website specifically designed to help law enforcement "identify pills and get other information about drugs." The detective testified he regularly used the website and always found it to be accurate in identifying pills. The detective also testified he confirmed the identity of the pills with a pharmacist at Walgreens. This evidence was more than a "mere scintilla," *see State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869

43

1   (1990), and, viewed in the light most favorable to sustaining the
2   verdict, was sufficient to permit the jury to find beyond a reasonable
3   doubt that the pills at issue were clonazepam.

4   (Exhibit HH: Memorandum Decision, 1 CA-CR 14-0242, at 7-9, ¶¶ 23-26.) This

5   decision was neither contrary to, nor an unreasonable application of, clearly

6   established federal law.

7        The Arizona Court of Appeals correctly identified the principles controlling

8   insufficiency-of-the-evidence claims. Indeed, the Ninth Circuit Court of Appeals

9   similarly stated, "In considering the sufficiency of the evidence, we ask, 'after

10  viewing the evidence in the light most favorable to the prosecution, any rational

11  trier of fact could have found the essential elements of the crime beyond a

12  reasonable doubt.'" *Hayes v. Woodford*, 301 F.3d 1054, 1084 (9th Cir. 2002)

13  (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The relevant inquiry is

14  not whether the evidence excludes every hypothesis of guilt, but whether the jury

15  could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458

16  (9th Cir. 1991). In reviewing the sufficiency of the evidence, the reviewing court

17  defers to the jury's assessments of witness credibility and assumes that the jury

18  resolved all contradictions in the testimony in favor of the prosecution. *See United*

19  *States v. Johnson*, 229 F.3d 891, 894 (9th Cir. 2000); *United States v. Roberts*, 185

20  F.3d 1125, 1140 (10th Cir. 1999); *United States v. Arena*, 180 F.3d 380, 391 (2d

21  Cir. 1999); *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998); *United*

22  *States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978); *United States v. Ramos*, 558

23  F.2d 545, 546 (9th Cir. 1977). As the Ninth Circuit also stated:

24        Of course, it is the fact-finder's province to determine witness
25        credibility, resolve evidentiary conflicts, and draw reasonable
        inferences from proven facts. Thus, if the record of historical facts
26        supports conflicting inferences, we assume "that the trier of fact
        resolved any such conflicts in favor of the prosecution," and we "must
27        defer to that resolution." *Jackson v. Va.*, 443 U.S. at 326.

28

                                           44

> "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."

*United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995). *See also Hayes*, 301 F.3d at 1084 (same); *DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998) (upholding first-degree murder conviction based entirely on circumstantial evidence of premeditation and intent to kill).

The Supreme Court has repeatedly observed, "Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that 'the more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Renico*, 559 U.S. at 776 (quoting *Yarborough*, 541 U.S. at 664). *Accord Richter*, 562 U.S. at 101 (same); *Mirzayance*, 556 U.S. at 123 (same). As one court recently recognized, federal habeas courts not only must apply this principle to insufficient-evidence claims, but must also conduct their review with two layers of deference—the first to the jury that assessed the trial witnesses and evidence, and the latter to the appellate court that found such evidence sufficient to support the jury's verdict:

> Two layers of deference apply to habeas claims challenging evidentiary sufficiency. *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009). "First ... we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 205 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 [ ] (1979)). "Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*. (citing 28 U.S.C. § 2254).

*McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010). *Accord McDaniel v. Brown*, 558 U.S. 120, 132 (2010) ("Furthermore, the Court of Appeals' discussion of the

non-DNA evidence departed from the deferential review that *Jackson* and § 2254(d)(1) demand."); *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown*, 567 F.3d at 205); *Foxworth v. St. Amand*, 570 F.3d 414, 429 (1st Cir. 2009) ("The generalized nature of the *Jackson* standard reinforces our conclusion that it was not unreasonable for the Appeals Court to hold that Hobson's testimony, together with the other evidence of record, was sufficient to undergird the conviction."); *Dorsey v. Banks*, 749 F.Supp.2d 715, 736–37 (S.D. Ohio 2010) (recognizing the double-layer of deference owed to the jury's verdict and the state appellate court's ruling).

On federal habeas review, a state-court finding that a conviction was reasonably supported by the evidence adduced at trial is entitled to the presumption of correctness set forth in 28 U.S.C. § 2254(e)(1). *See Wiggins v. Corcoran*, 288 F.3d 629, 638 (4th Cir. 2002); *May v. Iowa*, 251 F.3d 713, 716–17 (8th Cir. 2001); *Hurtado v. Tucker*, 245 F.3d 7, 10 (1st Cir. 2001). That presumption applies here because the Arizona Court of Appeals explicitly found Corporal Holdway's testimony sufficient to establish the identity of the two yellow pills as clonazepam. Moreover, "it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). *Accord United States v. Saulter*, 60 F.3d 270, 275 (7th Cir. 1995) ("We will not reevaluate the credibility of testimony even if it is 'totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug dealing, paid government informant.'") (quoting *United States v. Wilson*, 31 F.3d 510, 513 (7th Cir.1994)); *United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001) ("Even if the jury relied only on the testimony of the victim herself, there would be sufficient evidence to support the convictions."); *People of the Territory of Guam v. McGravey*, 14 F.3d 1344, 1346–47 (9th Cir.

1994) (upholding conviction for child molestation based entirely on the uncorroborated testimony of the victim).

The foregoing arguments amply demonstrate that Petitioner is not entitled to habeas relief on Ground 3.

### D. *None of Ground 4's IATC claims warrant relief.*

This subsection of Respondents' answer shall demonstrate that the Arizona judiciary neither contravened nor unreasonably applied clearly established federal law, as defined by the holdings of the Supreme Court, when it found that Petitioner had established neither deficient performance nor prejudice with respect to the following four properly exhausted claims alleging the ineffectiveness of her trial lawyer, Brad Rideout:

> ➢ **Ground 4A:** "Petitioner was prejudiced by trial counsel's failure to move to sever Counts 6 and 7." (Docket No.3-1: Habeas Petition, at 10.)

> ➢ **Ground 4B**: "Trial counsel failed to object to highly prejudicial [other-act] testimony and failed to request a [Rule] 404(b) [limiting] instruction." (*Id.*)

> ➢ **Ground 4C:** "Trial counsel failed to move to waive Petitioner's appearance at trial and further failed to request a jury instruction stating the same." (*Id.*)

> ➢ **Ground 4D:** "Trial counsel was ineffective in failing to challenge the denial of the motion for new counsel through a special action." (*Id.*)

### 1. *Pertinent law*.

The controlling Supreme Court precedent on claims of ineffective assistance of trial counsel ("IATC") is *Strickland v. Washington*, 466 U.S. 668 (1984). *See Visciotti*, 537 U.S. at 24; *Cone*, 535 U.S. at 698; *Williams*, 529 U.S. at 411; *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000); *Dows v. Wood*, 211 F.3d

1   480, 484 (9th Cir. 2000). To prevail upon an IAC claim, a convicted state prisoner

2   must satisfy two separate requirements: (1) he must show that counsel's

3   performance fell below objective standards of reasonableness and "outside the

4   wide range of professionally competent assistance"; and (2) he must establish that

5   counsel's performance prejudiced the prisoner by creating "a reasonable

6   probability that absent the errors the fact finder would have had a reasonable doubt

7   respecting guilt." *Strickland*, 466 U.S. at 687–94. *Accord Williams*, 529 U.S. at

8   390; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

9       As noted above, federal habeas courts must accord their state counterparts

10  substantial deference when the alleged constitutional violation concerns

11  application of a broad principle or a fact-specific standard. *See Richter*, 562 U.S. at

12  101 ("Evaluating whether a rule application was unreasonable requires considering

13  the rule's specificity. The more general the rule, the more leeway courts have in

14  reaching outcomes in case-by-case determinations.") (quoting *Yarborough*, 541

15  U.S. at 664). *Accord Renico v. Lett*, 559 U.S. 766, 776 (2010). The Supreme Court

16  has been particularly forceful in applying this principle to the context of

17  ineffectiveness claims. *See Premo*, 562 U.S. at 122-23; *Richter*, 562 U.S. at 105;

18  *Mirzayance*, 556 U.S. at 122-23; *Yarborough*, 541 U.S. at 664. "Surmounting

19  *Strickland's* high bar is never an easy task." *Richter*, 562 U.S. at 105 (quoting

20  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

21      Regarding the performance prong of the *Strickland* standard, the reviewing

22  court engages a strong presumption that counsel rendered adequate assistance and

23  exercised reasonable professional judgment in making decisions. *Strickland*, 466

24  U.S. at 690. And, "[a] fair assessment of attorney performance requires that every

25  effort be made to eliminate the distorting effects of hindsight, to reconstruct the

26  circumstances of counsel's challenged conduct, and to evaluate the conduct from

27  counsel's perspective at the time." *Bonin v. Calderon*, 59 F.3d 815, 833 (9th Cir.

28

1    1995) (quoting *Strickland*, 466 U.S. at 689). *Accord Cone*, 535 U.S. at 698;

2    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993). Thus, deficient performance is not

3    established by the failure of trial counsel's chosen strategy or the hindsight

4    determination that better alternative tactics were available. *See United States v.*

5    *Layton*, 855 F.2d 1388, 1420 (9th Cir. 1989).

6        Review of counsel's performance under *Strickland* is "extremely limited":

7            The test has nothing to do with what the best lawyers would
         have done. Nor is the test even what most good lawyers would have
8            done. We ask only whether some reasonable lawyer at the trial could
         have acted, in the circumstances, as defense counsel acted at trial.
9

10   *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *judgment rev'd on other*

11   *grounds*, 525 U.S. 141 (1998). *Accord Burger v. Kemp*, 483 U.S. 776, 794 (1987)

12   ("In considering claims of ineffective assistance of counsel, we address not what is

13   prudent or [even] appropriate, but only what is constitutionally compelled.");

14   *Morrison*, 477 U.S. at 382 (noting that only those habeas petitioners whose

15   attorney's "gross incompetence" has denied them a fair trial are entitled to relief);

16   *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998) ("In sum, the relevant

17   inquiry under *Strickland* is not what defense counsel could have pursued, but

18   whether the choices made by counsel were reasonable.").

19       If the prisoner is able to satisfy the performance prong, he must also

20   establish prejudice. *See Strickland*, 466 U.S. at 691–92; *United States v. Palomba*,

21   31 F.3d 1456, 1461 (9th Cir. 1994). To establish prejudice, a prisoner must

22   demonstrate a "reasonable probability that, but for counsel's unprofessional errors,

23   the result of the proceedings would have been different." *Strickland*, 466 U.S. at

24   694. A "reasonable probability" is "a probability sufficient to undermine

25   confidence in the outcome." *Id.* "When there is overwhelming evidence of guilt

26   presented, it may be impossible to demonstrate prejudice." *Christenson v. Ault*, 598

27   F.3d 990, 997 (8th Cir. 2010). "This is because a verdict or conclusion with ample

28   record support is less likely to have been affected by the errors of counsel than 'a

49

verdict or conclusion only weakly supported by the record.'" *Waiters v. Lee*, 857 F.3d 466, 480 (2d Cir, 2017) (quoting *Strickland,* 466 U.S. at 696). *Accord Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016); *Alberni v. McDaniel*, 458 F.3d 860, 877 (9th Cir. 2006); *Atwood v. Crosby*, 451 F.3d 799, 810-11 (11th Cir, 2006).

Reviewing courts must give "substantial weight" to the view of the trial judge rejecting an ineffectiveness claim. *See Dows*, 211 F.3d at 487. Indeed, the state court's rejection of an ineffectiveness claim is owed a *double-layer* of deference on habeas review:

> We have noted that when addressing a claim of ineffective assistance of counsel under the AEDPA's deferential standard of review, "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." ... This principle applies because "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation [and] § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard."

*Ouska v. Cahill-Masching*, 246 F.3d 1036, 1053 (7th Cir. 2001) (citations omitted). *See also Woods*, 135 S.Ct. at 1376 ("This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Pinholster*, 563 U.S. at 190). *Premo v. Moore*, 562 U.S. 115, 122 (2011) ("The standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is doubly so.") (quoting *Richter*, 131 S.Ct. at 788) (quoting *Mirzayance*, 556 U.S. at 123); *Yarborough*, 540 U.S. at 5–6 ("Judicial review of a defense attorney's summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas."); *Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) ("When a habeas petitioner asks a federal court to review a state court's application of the *Strickland* standard under § 2254(d)(1), we must give state courts 'even more latitude [than is typical under AEDPA] to reasonably determine that a defendant has not satisfied' the *Strickland* standard.") (quoting *Mirzayance*, 556

U.S. at 123); *Edwards v. LaMarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) ("Because this case involves a claim of ineffective assistance of counsel, there is an additional layer of deference to the choices of trial counsel.").

Even if this Court would reach a different conclusion than the Arizona judiciary on the question of whether trial counsel rendered ineffective assistance, such disagreement would be alone insufficient to justify granting habeas relief. *See Pinholster*, 563 U.S. at 202-03 ("Even if the Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the California Supreme Court to conclude that Pinholster did not establish prejudice."); *Visciotti*, 537 U.S. at 26–27 (same holding). As the Supreme Court recently declared in unmistakably clear terms:

> *AEDPA demands more.* Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; *and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.* The opinion of the Court of Appeals all but ignored "the only question that matters under § 2254(d)(1)." *Lockyer v. Andrade*, 538 U.S. 63, 71 [ ] (2003).

> The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review: Because the Court of Appeals had little doubt that Richter's *Strickland* claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it. This analysis overlooks arguments that would otherwise justify the state court's result and ignores further limitations of § 2254(d), including its requirement that the state court's decision be evaluated according to the precedents of this Court. *See Renico v. Lett*, 559 U.S. —, —, 130 S.Ct. 1855, 1866 [ ] (2010). *It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra*, at 75 [ ].

> *If this standard is difficult to meet, that is because it was meant to be.* As amended by AEDPA, § 2254(d) stops short of imposing a

complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664 [ ] (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia*, 443 U.S. 307, 332 n.5 [ ] (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, *a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.*

*Richter*, 562 U.S. at 102-03 (emphasis added).

### 2. *Ground 4A does not warrant relief.*

The Arizona judiciary neither contravened nor unreasonably applied *Strickland* when it rejected Petitioner's contention that trial counsel rendered ineffective assistance by not moving to sever Counts 1 and 5 (charges predicated upon the drugs seized from Petitioner's residence and person pursuant to a search warrant executed on October 25, 2011) from Counts 6 and 7 (two additional drug-related offenses committed during a buy-bust operation on October 28, 2011). Significantly, Counts 1, 2, and 6 charged Petitioner with possession of dangerous drugs (methamphetamine) for sale (Exhibit B: Indictment), and Petitioner told the police following her first arrest that the ounce of methamphetamine she had secreted inside her vagina was intended not for sale, but rather her own personal use (Exhibit P: R.T. 9/25/12, at 180, 200-01).

Judge Conn denied PCR relief on Ground 4A, based upon the following reasoning:

As to the first alleged deficiency, the Defendant was charged in Counts 1-5 with drug offenses alleged to have occurred on October

25, 2011. The most serious of the charges involved an ounce of methamphetamine found in the Defendant's underwear and just under an ounce of methamphetamine found in the pocket of a woman's jacket found in the Defendant's apartment. The Defendant was charged in Counts 6 and 7 with drug offenses alleged to have occurred on October 28, 2011. The most serious of those charges involved just under ¾ of an ounce of methamphetamine found scattered by the Defendant in a vehicle in which she was a passenger. Based upon the above 3 quantities of drugs the Defendant was charged with 3 separate counts of Possession of Dangerous Drugs for Sale. An element of each offense was the possession for the purpose of sale, so the State had to prove beyond a reasonable doubt that the Defendant possessed the drugs with the intent to sell them. The State was actually unable to prove this element as to Count 2, for which the Defendant was found guilty of the less serious offense of Possession of Dangerous Drugs.

No motion to sever any of the charges was ever filed. No motion was ever filed asking the Court to rule whether evidence of conduct on one of the dates would have been admissible at the trial regarding conduct on the other date if the charges were severed or had not been joined in the first place. Ruling on such requests 5 years ago would seem to have been the preferable way to proceed, although maybe the Court has a better understanding of the relevant facts having sat through the trial and heard all the evidence. It may be that trial counsel never filed either of the above motions because it was obvious to him that they would have been denied.

Rule 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, such evidence may be admissible for other purposes, including proof of motive, intent, preparation, plan and knowledge. The Court is certain that, if it had been asked to rule on the cross-admissibility of evidence committed on occasions 3 days apart when the Defendant's intent to sell drugs that the State would have to prove, it would have ruled that such testimony of each incident would have been admissible as to the other incident.

Rule 13.3(a) [of Arizona Rules of Criminal Procedure] provides that offenses can be joined in an indictment if they are of the same or similar character, if they are based upon the same conduct or are

otherwise connected together in their commission, or if they are alleged to have been part of a common scheme or plan. The Defendant asserts that joinder in this case could have been proper only in the first of the above 3 scenarios, which is set forth in Rule 13.3(a)(1). This has procedural significance because of the rule dealing with severance. The Court believes that these charges were also properly joined under the second and third scenarios as set forth in Rule 13.3(a)(2 and 3). Even assuming for the sake of argument that the charges were joined only pursuant to Rule 13.3(a)(1), Rule 13.4(b) provides that a defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1), unless evidence of the other offense or offenses would be admissible under applicable Rules of Evidence if the offenses were tried separately. Since the Court had indicated that evidence of each offense would be admissible at the trial of the other offense, Rule 13.4(b) would not have required severance.

Rule 13.4(a) provides that severance of offenses should be granted if necessary to promote a fair determination of the guilt or innocence of the defendant of any offense. On the first day the defendant had an ounce of Methamphetamine hidden in her underwear. Three days later she was observed at the scene of a planned "buy/bust" tearing open baggies of Methamphetamine and attempting to scatter their contents, which were found to be about ¾ of an ounce. The Court is certain that trying this case twice, once for each of the two dates, would not have made for a more fair determination of guilt in either case.

A motion to sever would not have been granted for all the above reasons. Failure to file a motion to sever was not ineffective assistance on the part of trial counsel.

(Exhibit MM: Minute Entry on PCR Petition, at 2-4.)

Judge Conn's ruling is the pertinent decision for Section 2254(d) purposes because the Arizona Court of Appeals' memorandum decision granting review, but denying relief, effectively endorsed the aforementioned ruling by stating as follows:

¶ 1 Petitioner Nora Yesenia Sandoval seeks review of the superior court's order denying her petition for post-conviction relief, filed pursuant to Arizona Rule of Criminal Procedure 32.1. This is petitioner's first successive petition.

¶ 2 Absent an abuse of discretion or error of law, this court will not disturb a superior court's ruling on a petition for post-conviction relief. *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012). It is the petitioner's burden to show that the superior court abused its discretion by denying the petition for post-conviction relief. See State v. Poblete, 227 Ariz. 537, ¶ 1 (App. 2011) (petitioner has burden of establishing abuse of discretion on review).

¶ 3 We have reviewed the record in this matter, the superior court's order denying the petition for post-conviction relief, and the petition for review. We find the petitioner has not established an abuse of discretion.

¶ 4 We grant review but deny relief.

(Exhibit OO: Memorandum Decision, 1 CA-CR 16-0763 PRPC, at 2.) *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *Stanley*, 598 F.3d at 618 n.3 ("On habeas review we examine the last reasoned decision from the state courts.") (citing *Mejia*, 534 F.3d at 1042).

Relief on Ground 4A is foreclosed by the Arizona judiciary's determination that any motion to sever counts would have been denied, pursuant to Arizona Rules of Criminal Procedure 13.3(a), 13.4(a), and 13.4(b), because evidence of Petitioner's crimes on each date would have been cross-admissible to prove her intent to sell methamphetamine at separate trials, pursuant to Rule 404(b). This state-law determination is fatal to Ground 4A because: (1) this Court may not second-guess the Arizona judiciary's application of these state evidentiary and

procedural rules;[15] (2) federal courts sitting on federal habeas review have therefore repeatedly declined to second-guess the state judiciary's rulings on severance motions;[16] (3) "[a] lawyer cannot be deficient for failing to raise a

---

[15] *Accord Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (collecting cases recognizing that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations of state law questions."); *Briceno v. Scribner*, 555 F.3d 1069, 1077 (9th Cir. 2009) ("Federal habeas courts do not review questions of state evidentiary law."); *Windham v. Merckle*, 163 F.3d 1092, 1103 (9th Cir. 1998) ("We have no authority to review alleged violations of a state's evidentiary rules in a federal habeas proceeding."); *Langford v. Day*, 110 F.3d 1380, 1388-89 (9th Cir. 1996) ("[A]lleged errors in the application of state law are not cognizable in federal habeas corpus.");*Walters v. McCormick*, 122 F.3d 1172, 1175 (9th Cir. 1997) ("Admission of the testimony of the child victim, K.C., is an evidentiary issue that the Montana trial court addressed under Montana law. We do not review the admission for error."); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("We are not a state supreme court of errors; we do not review questions of state evidence law."); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) (violation of Wash. Super. Ct. Crim. R. 7.1(c) requiring 3-days' notice for witnesses testifying at sentencing hearing was not grounds for habeas relief).

[16] *See Webber v. Scott*, 390 F.3d 1169, 1177 n.5 (10th Cir. 2004) ("To the extent that Webber is arguing that the joinder is improper under state law, such a claim is not a basis for federal habeas relief.") (citing *Fox v. Ward*, 200 F.3d 1286, 1292 (10th Cir. 2002)); *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002) ("Hutchison's severance claim does not warrant habeas relief. Severance is governed by Tennessee state law."); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000) (petitioner's argument that under California law, counts were improperly consolidated "because evidence relevant to one set of counts would not have been admissible at a separate trial on the other set of counts" was not a cognizable federal habeas claim); *Grant v. Hoke*, 921 F.2d 28, 29 (2d Cir. 1990) ("We concur in the district court's view that the state trial court probably ruled incorrectly in denying severance on the basis that a prior denial constituted the law of the case. The Appellate Division affirmed, however, and federal habeas corpus does not provide relief from such rulings.").

meritless claim." *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015);[17] (4) "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).[18]

Moreover, Petitioner cannot demonstrate resulting prejudice because: (1) the State presented overwhelming evidence of Petitioner's guilt, as these drugs were all found on her person, at her residence, or in her immediate presence; and (2) the jury implicitly acquitted Petitioner on Count 2 by convicting her of the lesser-

---

[17] *Accord Jones v. Brown*, 756 F.3d 1000, 1008-09 (7th Cir. 2014) ("If evidence admitted without objection is, in fact, admissible, then 'failing to object to [that] evidence cannot be a professionally "unreasonable" action.' … The same rationale applies to counsel's failure to move to suppress; if the evidence would not have been suppressed, then the failure to move for suppression of that evidence is not professionally unreasonable."); *Juan H. v. Allen*, 408 F.3d 1262, 1273-74 (9th Cir. 2005) ("Any objection to the admission of the videotape on the basis of coercion would properly have been overruled. The California Court of Appeal was not objectively unreasonable in holding that the performance of counsel did not fall below an 'objective standard of reasonableness' on account of not raising this meritless objection.").

[18] *Accord Amador v. Quarterman*, 458 F.3d 397, 411-12 (5th Cir. 2006) (finding no prejudice from trial counsel's failure to object to admission of habeas petitioner's statements because Texas courts in his case found the statements admissible under state law); *Callahan v. Campbell*, 427 F.3d 897, 931-32 (11th Cir. 2005) (Florida Supreme Court's rejection of habeas petitioner's state-law challenges to the admission of his statements demonstrated that counsel's failure to object to their admission neither constituted deficient performance nor resulted in prejudice); *Knight v. Spencer*, 427 F.3d 6, 16 (1st Cir. 2006) ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or nonexistent."); *Hough v. Anderson*, 272 F.3d 878, 898-99 (7th Cir. 2001) ("If evidence admitted without objection was admissible, then the complained-of action fails both prongs of the *Strickland* test: failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted.").

included offense of possession of dangerous drugs.[19]

### 3. *Ground 4B does not warrant relief.*

This IATC claim alleges that trial counsel should have objected to "improper Rule 404(b) evidence," which the State purportedly introduced through Corporal Holdway's testimony that "he had numerous contacts with Petitioner over his 11-year career—he interviewed her and spoke with her many times." (Exhibit LL: PCR Petition, at 11.) To her credit, Petitioner candidly acknowledged in state court that the prosecutor's ostensible reason for eliciting this testimony was to explain why Holdway could recognize her voice over the informant's telephone during the buy/bust operation on October 28, 2011. (*Id.*; Exhibit R: R.T. 9/26/12, at 8-9.) Because the Arizona Court of Appeals essentially adopted the trial court's ruling (Exhibit OO: Memorandum Decision, 1 CA-CR 16-0763 PRPC, at 2), the following excerpt from Judge Conn's minute entry order constitutes the pertinent state-court decision for federal habeas review purposes:

> As to the second alleged deficiency, an officer apparently testified at trial that he had had numerous contacts with the Defendant

---

[19] *See United States v. Scott*, 732 F.3d 910, 916 (8th Cir. 2013) ("Second, joining all charges related to the three bank robberies resulted in no appearance of prejudice to Scott. … The acquittals on counts three and four speak for themselves: the jury weighed the evidence as to each count separately, finding some reasonable doubt as to Scott's complicity in the Valley View Bank robbery despite otherwise compelling evidence, including Herdler's eyewitness identification."); *United States v. Cody*, 498 F.3d 582, 588 (6th Cir. 2007) ("The jury's acquittal of Cody on count three of the indictment (aiding and abetting his wife in the commission of the Hurdy Gurdy Video robbery), moreover, is proof that the jury was, in fact, able 'to compartmentalize and distinguish the evidence concerning the different offenses charged.'") (quoting *United States v. Chavis*, 296 F.3d 450, 462 (6th Cir. 2002)); *State v. Stuard*, 176 Ariz. 589, 600, 863 P.2d 881, 892 (1993) (lack of prejudice demonstrated by acquittal on some charges).

during his law enforcement career, including interviewing and speaking with her many times. This was apparently done to lay a foundation for that officer's ability to identify the Defendant's voice. Although counsel assumes that it had to have been clear to the jury that the officer was suggesting he had had numerous contacts with the Defendant in connection with her committing numerous crimes, this assumption is probably based upon his knowledge of the defendant's prior criminal record, something which was not made known to the jury. Although [PCR counsel] ridicules the notion that the Defendant might have been the Defendant's babysitter, there are many ways that citizens can interact with police officers other than by committing crimes, such as being victims of crimes, witnesses to crimes, cited for civil traffic offenses, welfare checks, community outreach programs, and probably many others the Court is not even aware of.

There was no effort to quantify the words "numerous" or "many" or the circumstances under which these contacts, interviews, or conversations had occurred. There appears to have been no argument by the State that these contacts were evidence of prior criminal conduct by the Defendant. Had the Defendant not absconded during the trial, or as Rule 32 counsel would put it, waived her right to be present at trial, she might have testified and been impeached with her multiple prior felony convictions. The Court held a Rule 609 hearing after the presentation of the State's case on the second day of the trial and ordered that the Defendant could be impeached with 2 of her four prior felonies if she testified. It is unknown whether the jury would have found out anyway that at least some of her contacts with law enforcement were attributable to felonies she had committed.

The testimony of the officer regarding the prior contact was fleeting, was not argued to show bad character, and did not in and of itself suggest prior bad acts. The evidence against the Defendant was overwhelming and could not have been based even in part by this testimony. A curative instruction to the jury would probably have resulted in the jury thinking about the testimony more than they would have otherwise. Regardless of whether trial counsel went through the above thought process and analysis in not objecting to the testimony and not requesting a limiting instruction would not have changed the eventual outcome in this case. Failure to object to the testimony or request a limiting instruction was not ineffective representation on the part of trial counsel.

(Exhibit MM: Minute Entry on PCR Petition, at 4-5.)

Judge Conn's rejection of Ground 4B neither contravened nor unreasonably applied *Strickland*. The following facts demonstrate that counsel did not render deficient performance by electing not to object to Corporal Holdway's testimony and thereafter request an other-acts limiting instruction:

- Because police/citizen interactions are not limited to arrests for criminal offenses, the jury would not necessarily infer that Petitioner had committed other crimes from Corporal Holdway's testimony that he recognized Petitioner's voice over the telephone because he had spoken with her "numerous" or "many" times during his 11-year career.[20]

- Petitioner's contention that the jurors must have necessarily assumed that Corporal Holdway's testimony alluded to having previously arrested her is based upon speculation—an improper basis for finding that a constitutional violation occurred.[21]

---

[20] *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from a plethora of less damaging interpretations."); *United States v. Doss*, 630 F.3d 1181, 1195 (9th Cir. 2011) (same); *Hein v. Sullivan*, 601 F.3d 897, 916 (9th Cir. 2010) ("Moreover, [the prosecutor's] statement was ambiguous, and we do not presume that the jury ascribed to it its most damaging meaning."); *Watson v. Anglin*, 560 F.3d 687, 692 (7th Cir. 2009) ("The mere possibility that an instruction could conceivably be misunderstood does not render the instruction, or a conviction based on the instruction, unconstitutional."); *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) (denying habeas relief based on allegedly inflammatory prosecutorial remark where the appellate court "cannot be sure how the jury interpreted the ambiguous arguments of both counsel");

[21] *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) ("But where, as in this case, a federal appellate court, second-guessing a convict's own trial counsel, grants habeas relief on the basis of little more than speculation with slight support, the proper delicate balance between the federal courts and the States is upset to a degree that requires correction."); *Harris v. Rivera*, 454 U.S. 339, 347 n.17 (1981)

(continued ...)

60

- Trial counsel might very well have decided to forego objecting to this testimony and requesting a curative instruction out of the legitimate concern that such actions would have the deleterious effect of drawing the jury's attention to this otherwise fleeting and ambiguous testimony.[22]

_____

( ... continued)

("A silent record is not a sufficient basis for concluding that the state judge has committed constitutional error; the mere possibility of error is not enough to warrant habeas corpus relief.") (quoting *Arizona v. Washington*, 434 U.S. 497, 518 (1978) (White, J., dissenting)); *Bible v. Ryan*, 571 F.3d 860, 871 (9th Cir. 2009) (collecting cases holding that "speculation is not sufficient to establish prejudice" in the ineffective-assistance context); *Scott v. Elo*, 302 F.3d 598, 605 (6th Cir. 2002) (denying relief where the prisoner "offer[ed] nothing more than gross speculation of error in the missing portion of the transcript [in which] [h]e contends the prosecutor might have made some improper comments"); *Evalt v. United States*, 359 F.2d 534, 544 (9th Cir. 1966) ("It is still the law that we do not presume error."); *State v. Youngblood*, 173 Ariz. 502, 506, 844 P.2d 1152, 1156 (1993) ("Speculation is not the stuff out of which constitutional error is made.").

[22] *See Eze v. Senkowski*, 321 F.3d 110, 131 (2d Cir. 2003) ("It also is possible, however, that there was a strategic explanation for not objecting. The defense may have decided not to draw attention to this matter during direct examination, but instead attack the testimony on cross examination, where Henry acknowledged that there had been no judicial determination of the truth of the allegations in those cases."); *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) ("We find that defense counsel's decision to abstain from objecting to this testimony is reasonable. A competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would."); *Phyle v. Leapley* , 64 F.3d 154,158–59 (8th Cir. 1995) (recognizing that defense counsel's failure to object to a government witness' damaging testimony may constitute a sound tactical decision because objections may reinforce a relatively minor negative point to the jury); *United States v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991) (recognizing that counsel's failure to object may be reasonable because of fear that jury might construe objections as "a sign of desperation and hyper-technicality"); *United States v. Bosch*, 914 F.2d 1239, 1246 (9th Cir. 1990) (upholding as reasonable trial counsel's failure to object because he might have feared emphasizing damaging testimony); *United States v. Payne*, 741 F.2d 887, 891 (7th Cir. 1984) ("A competent trial

(continued ...)

Likewise, Judge Conn's determination that Petitioner suffered no prejudice is supported by the following facts: (1) the State presented overwhelming evidence against Petitioner;[23] (2) Corporal Holdway's reference to his prior encounters with Petitioner was an isolated incident during Petitioner's 3-day trial;[24] (3) the jury implicitly acquitted Petitioner on Count 2 by convicting her of the lesser-included offense of possession of dangerous drugs;[25] and (4) Arizona courts have routinely

---

( ... continued )

attorney might well eschew objecting . . . in order to minimize jury attention to the damaging material.").

[23] *See Murray*, 746 F.3d at 466; *Wood v. Ryan*, 693 F.3d 1103, 1119 (9th Cir. 2012); *Gardner v. Ozmint*, 511 F.3d 420, 431 (4th Cir. 2007); *United States Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998); *United States v. Hubbard*, 929 F.2d 307, 311 (7th Cir. 1991).

[24] *See Brecht v. Abramson*, 509 U.S. 619, 639 (1993) (finding prosecutorial "references to petitioner's post-*Miranda* silence" non-prejudicial because comments were "infrequent" and covered "less than two pages of the 900-page trial transcript"); *United States v. Moore*, 651 F.3d 30, 76 (D.C. Cir. 2011) (prosecution "made no mention" of improper religious references "in opening or closing" and "never urged the jury to credit its witnesses on account of their faith"); *United States v. Rogers*, 556 F.3d 1130, 1141 (10th Cir. 2009) ("Finally, the comment regarding Officer Lindsey's cross was singular and isolated.")*United States v. Blankenship*, 382 F.3d 1110, 1128 (11th Cir. 2004) ("A solitary comment would have to be much more prejudicial to the defendant in some way before we reverse a conviction on that basis."); *Bates v. Lee*, 308 F.3d 411, 423 (4th Cir. 2002) ("Finally, the remarks were not pervasive, comprising of only one and one half pages of the prosecutor's twenty-seven page argument."); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir. 1991) ("Put in proper context, the comments were isolated moments in a 3-day trial.").

[25] *See United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) ("An acquittal by the jury on some counts may be evidence that the trial was not unfair."); *Thompson v. Borg*, 74 F.3d 1571, 1576-77 (9th Cir. 1996) (conviction on lesser-included murder offense demonstrated that "the jury's immune system withstood the 'infection'" of prosecutor's implied personal belief that defendant was guilty of first-degree murder); *United States v. Carter*, 760 F.2d 1568, 1579 n.4

(continued ...)

1   held that the absence of a limiting instruction for other-act evidence does not
2   constitute fundamental error.[26]

3   ### 4. *Ground 4C does not warrant relief*.

4   For the reasons that follow, the Arizona judiciary's rejection of Ground 4C
5   was neither contrary to, nor an unreasonable application of, clearly established
6   federal law, as defined by the holdings of the Supreme Court, because: (1)
7   Petitioner's lawyer had no duty to ask Judge Conn to instruct the jurors that
8   Petitioner—who inexplicably failed to appear for the final day of her trial and
9   remained at large until she was arrested on November 21, 2013, "in California,
10   reportedly when re-entering the United States from Mexico," pursuant to a bench
11   warrant in the instant case and on murder charges in CR 2013-01174—had
12   "waived" her right to attend her trial;[27] and (2) Petitioner suffered no conceivable

13   _____
( ... continued)
14   (11th Cir. 1985) (rationale applied to improperly admitted other-act evidence);
*State v. Werner*, 482 N.W.2d 286, 290-91 (S.D. 1992) ("We reiterate that the other
15   acts testimony could hardly be said to paint Werner as a bad person, since the jury
saw fit to acquit him on two counts.").
16

17   [26] *See State v. Nordstrom*, 200 Ariz. 229, 247, ¶ 51, 25 P.3d 717, 735 (2001)
18   ("A limiting instruction would have been appropriate under Rule 105, which
provides that when evidence is admissible for a limited purpose, the court should
19   so instruct the jury. However, the trial court does not err in failing to give a limiting
20   instruction if trial counsel does not properly request an instruction.") (collecting
cases); *State v. Roscoe*, 184 Ariz. 484, 491, 910 P.2d 635, 642 (1996) ("Roscoe did
21   not request a limiting instruction, and the trial court's failure to *sua sponte* give a
22   limiting instruction is not fundamental error."); *State v. Miles*, 211 Ariz. 475, 483,
¶ 31, 123 P.3d 669, 677 (App. 2005) ("Although evidence of other acts is not
23   allowed to show that a defendant acted in conformity with them, Rule 404(b), Ariz.
24   R. Evid., a trial court is not required, *sua sponte*, to give a limiting instruction on
such evidence.") (collecting cases).
25

26   [27] *See* Exhibit T: R.T. 9/27/12, at 3; Exhibit U: Minute Entry for Trial Day 3,
dated 9/27/12 [R.O.A., Item 48]; Exhibit Y: Bench Warrant and Related
27   Documents [R.O.A., Items 57, 63, 65, 67]; Exhibit AA: Presentence Report, at 3
[R.O.A., Item 75]; Exhibit BB: R.T. 3/28/14, at 4-20 (Petitioner pled guilty in CR
28

(continued ...)

1   prejudice from these alleged deficiencies.

2       Petitioner attended the first two days of her 3-day trial. (Exhibit Q: Minute

3   Entry for Trial Day 1, dated 9/25/12 [R.O.A., Item 43]; Exhibit S: Minute Entry for

4   Trial Day 2, dated 9/26/12 [R.O.A., Item 47]. After the State rested, Judge Conn

5   held a hearing on the State's motion to impeach Petitioner with her prior felony

6   convictions, pursuant to Arizona Rule of Evidence 609, and ultimately ruled that

7   the State could use two of her four convictions as impeachment material. (Exhibit

8   R: R.T. 9/26/12, at 152-163.) Before trial adjourned that day, Petitioner informed

9   Judge Conn that the defense would present no evidence. (*Id.* at 165.)

10      Petitioner, however, did not appear for the last day of trial. (Exhibit T: R.T.

11  9/27/12, at 3; Exhibit U: Minute Entry for Trial Day 3, dated 9/27/12 [R.O.A., Item

12  48].) Significantly, the available state record contains nothing to indicate that

13  Petitioner ever contacted Judge Conn or her lawyer to inform them that she had

14  decided not to attend trial. (*Id.*) If anything, the record suggests that Petitioner had

15  not communicated with her attorney or anyone else involved in her case before the

16  jury received its final instructions and heard closing argument. Indeed,

17  immediately after the jurors reassembled, Judge Conn's following remarks indicate

18  ignorance of Petitioner's intentions and the reason underlying her absence:

19
20          This is continuation of CR-2011-01237, State versus Nora
            Yesenia Sandoval. Show the presence of Mr. Rideout representing the
21          defendant, and Ms. McCoy representing the state. Show the absence
            of the defendant.
22
23          And ladies and gentlemen, the defendant is not here yet. I'm
            going to give her the benefit of the doubt and assume that she's
24          running late, and I'm going to hope that at some point she is going to
            be here; but I am not willing to just wait indefinitely for that to
25

26  _____
            ( ... continued)
27  2013-01174 to second-degree murder for a stipulated 22-year prison term, to run
    concurrent with the sentences imposed in the instant case).
28

happen. If she gets here late, fine, we will have just gone ahead and
started this trial.

     If, by chance, she doesn't get here by the time this case is given
to you for your deliberations, you should not draw any inferences
from the fact that she is not here. If she doesn't get here today, that is
not evidence of any sort against her. That does not change any of the
law that applies in this case. She is still presumed innocent. The state
still has to prove her guilty beyond a reasonable doubt; and if she
doesn't get here before you retire to deliberate, that fact is not
evidence that you can consider in any way.

(Exhibit T: R.T. 9/27/12, at 3.)

    Petitioner did not appear in the courtroom before the jurors announced their
verdicts. (*Id.* at 3-74.) Following closing arguments, the State requested a bench
warrant. (*Id.* at 62.) That Petitioner had contacted neither defense counsel nor the
court is implicitly demonstrated by Judge Conn's response, "It is ordered, at least
for now, based upon the fact she failed to appear for the remainder of the trial, that
a bench warrant will issue for the arrest of the defendant." (*Id.* at 62-63.)

    After the jury's guilty verdicts, Judge Conn reiterated that he had issued a
bench warrant and scheduled a bond forfeiture hearing—actions that further
demonstrated that Petitioner had not contacted counsel or the court regarding her
absence, but instead had absconded to escape the consequences of guilty verdicts.
(*Id.* at 62-63, Exhibit Y: Bench Warrant and Related Documents [R.O.A., Item
57].)

    On December 31, 2012, Judge Conn ordered the forfeiture of the $25,000
bond Petitioner had posted. (Exhibit Y: Bench Warrant and Related Documents
[R.O.A., Item 63].) Petitioner remained at large for 14 months and avoided arrest
until November 21, 2013, when she tried to reenter the United States from Mexico
in California. (Exhibit AA: Presentence Report, at 3 [R.O.A., Item 75].) On
December 18, 2013, the trial court held an initial appearance on the bench warrant
in this case and an arraignment for conspiracy and first-degree murder charges in

1  CR 2013-01174. (Exhibit Y: Bench Warrant and Related Documents [R.O.A.,

2  Items 65].) The record does not reflect that Petitioner ever denied absconding

3  during her trial in the instant case to avoid the consequences of guilty verdicts.

4  Instead, Petitioner, who pled guilty to second-degree murder in CR 2013-01174

5  moments before Judge Conn sentenced her in this case, elected to make no

6  statements in allocution. (Exhibit BB: R.T. 3/28/14, at 4-20, 34.)

7        In her PCR petition, Petitioner claimed that trial counsel rendered ineffective

8  assistance because he "did not request that her presence be waived [or] request a

9  jury instruction … that Petitioner can waive her right to appear at trial and that her

10 non-appearance cannot be used against her in any way." (Exhibit LL: PCR Petition,

11 at 14.) Petitioner submitted an affidavit that, if anything, indicated that she did not

12 appear on the third day of trial because she anticipated guilty verdicts and being

13 taken into custody:

15        When I was in trial, my attorney told me that on the 3rd day of
16        trial I was going to be taken into custody. I asked him to ask the judge
         if he would give me a chance to turn myself in at sentencing. He told
17        me that the judge wouldn't go for it. Because of that court days that
         [sic] I didn't show up. I told him that was your fault, He said he
18        couldn't ask him.

19 (Exhibit LL: PCR Petition, Affidavit, at 2, ¶ 6.)

20        Denying relief on this claim, Judge Conn explicated the reasons he did not

21 find counsel ineffective:

22        As to the third alleged deficiency, the Defendant was present at
23        the first and second days of the jury trial. She was not present at the
         third and last day. The Court cannot tell from the trial minutes whether
24        it had been advised by the end of the second day that the Defendant
         would or would not testify. Regardless of what the Court would have
25        been told, it seems clear that had the Defendant appeared at the third
26        day and wanted to testify, she would have been allowed to do so. The
         Court has allowed defendants in other cases to change their minds
27        overnight or over the lunch hour and testify despite having initially
28

66

advised the Court that they did not want to testify. *The Defendant at least intimates in her Affidavit that she did not appear for the last day of her trial because she did not want to be taken into custody upon being found guilty, although the Court was able to reach that same conclusion without relying on her Affidavit.*

Rule 19.2 provides that the defendant has the right to be present at every stage of the trial. Rule 14.3(e) requires that defendants be advised at their arraignment that they have the right to be present at all future proceedings, and that proceedings may be held in their absence, and they may be charged with an offense and a warrant issued. A.R.S. § 13-2507(A) makes it a Class 5 felony for a person, who having been required by law to appear in connection with any felony, knowingly fails to appear.

Rule 9.1, on the other hand, provides that, except as otherwise provided in the Rules, a defendant may waive the right to be present at any proceeding by voluntarily absenting himself from it. It may be difficult to reconcile the suggestion in Rule 9.1 that the Defendant can simply choose not to show up for trial with the fact that if he fails to do so he can be charged with a Class 5 felony and sent to prison for 2.5 years. The cases that discuss Rule 9.1 do not address it so much in terms of a right that the defendant may exercise as they do the right of the judge to proceed with hearings in the absence of a defendant who has exercised that right. In *State v. Mumford*, 136 Ariz. 465 (App. 1982), the Court of Appeals held that although a defendant may waive the right to be present, the trial court need not accept the waiver.

This was not a case where the Defendant sought and was granted permission to waive her right to be present on the last day of trial. It is rather obviously a case where she absconded because she feared the consequences of a guilty verdict. If the Court had been asked to advise the jury that the Defendant had the right to waive her presence on the last day of trial, the Court would have felt compelled to also advise the jury that it had never been asked and it would not have granted that waiver, and that it would be issuing a warrant for her arrest based on her unauthorized absence from trial.

Although the Court did not advise the jury that the Defendant had the right to waive her presence at the last day of the trial, it did advise the jury that her absence was not evidence that could be used

67

against her, that she was still presumed innocent, and that the State still had to prove her guilt beyond a reasonable doubt. The Court went out of its way to not in any way convey to the jury what it suspected were the true reasons for her absence.

Trial counsel could not himself have waived his client's right to be present during trial. He could not have done so without the Court's permission. The Court would not have granted that permission. Rule 32 counsel does not indicate what specific instruction trial counsel should have requested or what legal authority there would have been for the Court to give it. Trial counsel did not provide ineffective assistance by failing to request an instruction regarding her right to waive her presence.

(Exhibit MM: Minute Entry on PCR Petition, at 5-7.) As noted above, the Arizona Court of Appeals adopted this ruling in its memorandum decision granting review, but denying relief. (Exhibit OO: Memorandum Decision, 1 CA-CR 16-0763 PRPC, at 2.)

Petitioner cannot demonstrate deficient performance because: (1) the record does not indicate that Petitioner ever contacted trial counsel to request that he relate her decision to waive her presence on the last day at trial; (2) Petitioner cited no authority to support her argument that the trial court must instruct the jury that an absent defendant has exercised her right not to attend trial; (3) the state-court record overwhelmingly demonstrates that Petitioner had not exercised her right not to absent herself at trial, but rather had absconded to avoid being taken into custody—conduct that subjected her to potential prosecution under A.R.S. § 13-2507(A); (4) even assuming that Petitioner's absence had been the product of a legitimate desire to waive the right to attend trial, Judge Conn indicated that he would have exercised his discretion to reject that allegedly proffered waiver, as defendants have no absolute right to absent themselves at trial;[28] and (5) "an

---

[28] *See State v. Mumford*, 136 Ariz. 465, 467, 666 P.2d 1074, 1076 (App.

(continued ...)

68

1  attorney will not be held to have performed deficiently for failing to perform a

2  futile act, one that would not have gotten his client any relief," *Pickney v.*

3  *Secretary, DOC*, 876 F.3d 1290, 1296 (11th Cir. 2017).[29]

4  ———————————
   ( ... continued)

5  1983) ("A defendant must obtain the permission of the Trial Judge to be absent

6  from a trial. … The orderly administration of a trial requires this. The Trial Judge

7  must have the power at all times to keep the prisoner within the sight of the court,

   the jury, the counsel, and the witnesses. … Therefore, the refusal of the court to

8  grant the motion of the defendant to remain outside the courtroom was not an

9  abuse of discretion or a denial of a statutory or constitutional privilege.") (quoting

   *People v. Winship*, 130 N.E.2d 634, 635 (N.Y. 1955)). *Accord United States v.*

10 *Lumitap*, 111 F.3d 81, 84 (9th Cir. 1997) (collecting cases rejecting the argument

11 that the defendant has a right to affirmatively waive his presence at trial to avoid

   being identified); *United States v. Moore*, 466 .2d 547, 548 (3d Cir. 1972) ("While

12 Rule 43 does permit the court to continue the trial when the defendant absents

13 himself, it does not, concomitantly, vest a right of absence in a defendant."); *Whitt*

   *v. State,* 733 So.2d 463, 474 (Ala. Crim. App. 1998) ("Although it has sometimes

14 been argued that a defendant should have a right to be absent from his trial if he so

15 chooses, the law generally is to the contrary. The ability to waive a constitutional

16 right does not ordinarily carry with it the right to insist upon the opposite of that

   right and thus it does not follow from the fact that the right of presence can be

17 waived or forfeited that a defendant can insist upon a right not to attend his trial.");

18 *Ziebell v. State*, 788 N.E.2d 902, 911 (Ind. 2003) ("[W]hile a defendant has a right

   to be present at all stages of his trial, a defendant does not have a corollary right to

19 be absent where he is otherwise available and his presence is required for a

20 legitimate purpose, such as identification."); *State v. Randle*, 603 N.W.2d 91, 93

   (Iowa 1999) ("The defendant has a duty as well as a right to be present at his trial.

21 He may not absent himself without the permission of the court."); *Durant v.*

22 *Commonwealth*, 546 S.E.2d 216, 218 (Va. App. 2001) ("Appellant first contends

   the trial court erred by refusing to allow him to 'waive' his Sixth Amendment right

23 to be present at trial. He argues that the right to be present includes the converse of

24 that right, his right to be absent. We disagree and hold that appellant has no

   constitutional right to be absent at trial.").

25 ___29 *Accord Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996) (Because the

   failure to take a futile action can never be deficient performance, the district court

26 was correct to reject this claim."); *Jenner v. Class*, 79 F.3d 736, 740 (8th Cir. 1996)

27 ("The South Dakota Supreme Court held that Jenner was not entitled to an

28 accomplice instruction because Fenstermaker was not an accomplice under state

(continued ...)

The Arizona judiciary's determination that Petitioner suffered no prejudice is supported by the following facts: (1) the jury is presumed to have followed Judge Conn's explicit instructions that Petitioner's absence was not evidence against her, that she was presumed innocent, and the State still had to prove her guilt beyond a reasonable doubt (Exhibit T: R.T. 9/27/12, at 3);[30] (2) the guilty verdicts were the product of the State's overwhelming evidence, not Petitioner's absence during trial; and (3) the jury's acquittal on Count 2 demonstrates that Petitioner's absence did not prejudice her.

**5. *Ground 4D does not warrant relief.***

By virtue of her inability to establish either deficient performance or resulting prejudice, Petitioner is not entitled to habeas relief on her final IATC claim, which alleges that trial counsel should have filed a petition for special-action review to challenge Judge Conn's denial of her request for a continuance on September 24, 2012, despite the fact this adverse ruling was issued on the very day before her trial commenced. (Exhibit N: R.T. 9/24/12, at 3-10; Exhibit O: Minute Entry re: Motions for New Counsel/Continuance [R.O.A., Item 40]; Exhibit P: R.T. 9/25/12, at 3; Exhibit Q: Minute Entry for Trial Day 1, dated 9/25/12 [R.O.A., Item 43]; Exhibit LL: Petition for Post-Conviction Relief, at 1.)

_____

( ... continued)

law. Given the South Dakota Supreme Court's ruling, there is no basis for ruling that counsel was deficient for not proposing the instruction."); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel."); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

[30] *See Blueford v. Arkansas*, 566 U.S. 599, 606 (2012) ("A jury is presumed to follow its instructions.") (quoting *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)); *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007) (same).

As Respondents detailed in the section addressing Ground 2 above, Petitioner appealed Judge Conn's denial of her continuance motion on direct review, but the Arizona Court of Appeals found neither an abuse of discretion, nor a resulting violation of Petitioner's Sixth Amendment right to counsel of choice. (Exhibit EE: Opening Brief, 1 CA-CR 14-0242, at 3, 25; Exhibit HH: Memorandum Decision, 1 CA-CR 14-0242, at 4-6, ¶¶13-18.) In his minute entry order denying PCR relief, Judge Conn provided the following rationale for the last-reasoned state-court decision on Ground 4D:

> As to the fourth alleged deficiency, the Defendant in this case was represented by appointed counsel. The Court received an e-mail from the Defendant in the morning of Friday, September 21, 2012, the day before trial was to begin, indicating that she wanted to dismiss her attorney and setting forth specific reasons for dissatisfaction with him. She requested a continuance of the trial date, which was Tuesday, September 25, 2012, to allow her to hire her own attorney. The Court was able to schedule a hearing on that request shortly before noon on Monday, September 24, 2012, the day before trial was to begin. Trial counsel indicated that he did not oppose the Defendant's request for a new attorney. The State indicated that they opposed a continuance of the trial date. The Court denied the Defendant's request for a new attorney and denied her request for a continuance of the trial date.
>
> The Defendant asserts that her trial attorney was ineffective for failing to seek review of the Court's ruling by special action. One could query whether this would have been the most productive use of defense counsel's time during the half a day remaining before the jury trial was to begin. In many cases where a claim is made that a petition for special action from a trial judge's decision should have been filed, a judge can only speculate as to what the result of doing so would have been. No such speculation is required in this case. The Court of Appeals in its Memorandum Decision addressed the claim raised on direct appeal that this Court violated her right to counsel of choice by denying her motion to continue trial in order to retain private counsel. The appellate court found no abuse of discretion in denying the Defendant's continuance motion.

To the extent that the Defendant is arguing once again that the Court should have granted her request for a continuance, that issue would seem to be precluded. Rule 32.2(a)(2) provides that a defendant shall be precluded from relief upon any ground finally adjudicated on the merits on appeal. Maybe there is some subtle procedural distinction between arguing that a decision was wrong and arguing that the failure to seek review of that decision by special action was ineffective. It seems obvious that had trial counsel sought special action review, the Court of Appeals would have made the same finding they eventually made on direct appeal. Failure to pursue special action relief was not ineffective representation. The Defendant was not prejudiced because the outcome on that issue would have been the same.

(Exhibit MM: Minute Entry on PCR Petition, at 4-5.) As noted above, the Arizona Court of Appeals adopted this ruling in its memorandum decision granting review, but denying relief. (Exhibit OO: Memorandum Decision, 1 CA-CR 16-0763 PRPC, at 2.)

The Arizona judiciary neither contravened nor unreasonably applied *Strickland* by denying relief on Ground 4D because: (1) the Arizona Court of Appeals subsequently determined that Judge Conn neither abused his discretion nor violated Petitioner's right to retained counsel of choice by denying her eve-of-trial continuance motion; (2) "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial," *Coley*, 706 F.3d at 752;[31] (3) any

---

[31] *Accord Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("In *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000), we held that appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."); *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic."); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) ("Objection to its admission would have been futile, and failure to assert a meritless objection cannot be grounds for a finding of deficient performance."); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.")

(continued ...)

finding of deficient performance would have to turn a blind eye to the fact that Judge Conn's denial of Petitioner's motions at noon on the day before trial left counsel with less than a half-day to draft and file a special-action review with the Arizona Court of Appeals—an endeavor that would likely be a waste of time because special-action review in Arizona is highly discretionary and typically reserved for those matters in which the complaining party has no adequate remedy on appeal;[32] and (4) trial counsel's attention would most profitably be directed to preparing for Petitioner's trial.

...

...

---

( ... continued)

(quoting *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982)).

[32] *See Carroll v. Commission on Judicial Conduct*, 215 Ariz. 382, 383, ¶ 4, 160 P.3d 1140, 1141 (2007) ("Our special action review is discretionary."); *Leon v. Marner*, 244 Ariz. 465, 467, ¶ 2, 421 P.3d 664, 666 (App. 2018) ("Special action review is highly discretionary."); *State ex rel. Romley v. Fields*, 201 Ariz. 321, 323, ¶ 4, 35 P.3d 82, 84 (App. 2001) ("Although special action consideration should be reserved for 'extraordinary circumstances,' review is appropriate when no "equally plain, speedy, and adequate remedy by appeal" exists.") (citing Ariz. R. P. Spec. Act. 1(a); A.R.S. § 12–120.21(A)(4) (1992)); *State ex rel. Gonzalez v. Superior Court*, 184 Ariz. 103, 104, 907 P.2d 72, 73 (App. 1995) (special action proper when no adequate remedy).

1  **V. CONCLUSION.**

2       Based on the foregoing authorities and arguments, Respondents respectfully

3  request that the Petition for Writ of Habeas Corpus be denied and dismissed with

4  prejudice.

5       RESPECTFULLY SUBMITTED this 26th day of November 2018.

6

7                             Mark Brnovich
                           Attorney General

8                             Joseph T. Maziarz

9                             Chief Counsel

10

11                             s/ Robert A. Walsh
                           Assistant Attorney General

12                             Attorneys for Respondents

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

CERTIFICATE OF SERVICE

2

3   I hereby certify that on November 26, 2018, I electronically transmitted the
    attached document to the Clerk's Office using the ECF System for filing and
4   served the attached document by mail on the following, who is not a registered
    participant of the ECF System:
5

6   Nora Y. Sandoval #173592
    ASPC Perryville
7   Santa Cruz Unit, D21-07
    P.O. Box 3200
8   Goodyear, AZ  85338
    Petitioner, Pro Se
9

10  s/ Barbara Lindsay

11  7421748

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LIST OF EXHIBITS**

Exhibit A.    Electronic Index to Record, 1 CA-CR 14-0242

Exhibit B.    Felony Indictment [R.O.A., Item 2].

Exhibit C.    State's Sentence-Enhancement Allegations [R.O.A., Items 25-30].

Exhibit D.    Minute Entry Ruling Granting 5th Continuance, filed 5/31/12 [R.O.A., Item 31].

Exhibit E.    Minute Entry Ruling Granting 6th Continuance, filed 7/2/12 [R.O.A., Item 32].

Exhibit F.    Motion to Suppress [R.O.A., Item 33].

Exhibit G.    State's Response to Motion to Suppress [R.O.A., Item 34].

Exhibit H.    Defense 7th Motion to Continue Trial, filed 8/9/12 [R.O.A., Item 36]

Exhibit I.    Minute Entry Ruling Granting Continuance, dated 8/14/12 [R.O.A., Item 37].

Exhibit J.    R.T. 8/15/12 [Hearing on Motion to Suppress].

Exhibit K.    Minute Entry Ruling on Motion to Suppress [R.O.A., Item 38].

Exhibit L.    R.T. 9/10/12 [Final Management Conference].

Exhibit M.    Minute Entry for Final Management Conference, filed 9/11/12 [R.O.A., Item 39].

Exhibit N.    R.T. 9/24/12 [Motions for New Counsel/Continuance].

Exhibit O.    Minute Entry re: Motions for New Counsel/Continuance, filed 9/24/12 [R.O.A., Item 40].

Exhibit P.    R.T. 9/25/12 [Pretrial Hearing & Trial Day 1].

Exhibit Q.    Minute Entry for Trial Day 1, dated 9/25/12 [R.O.A., Item 43].

Exhibit R.    R.T. 9/26/12 [Trial Day 2].

Exhibit S.    Minute Entry for Trial Day 2, dated 9/26/12 [R.O.A., Item 47].

Exhibit T.    R.T. 9/27/12 [Trial Day 3].

Exhibit U.    Minute Entry for Trial Day 3, dated 9/27/12 [R.O.A., Item 48].

Exhibit V.    Final Jury Instructions [R.O.A., Item 44].

Exhibit W.    Exhibit List and Photocopied Trial Exhibits [R.O.A., Items 84-87].

Exhibit X.    Verdict Forms [R.O.A., Items 50-56].

Exhibit Y.    Bench Warrant & Related Documents [R.O.A., Items 57, 63, 65].

Exhibit Z.    Minute Entry re: Hearing on Prior Convictions, 3/28/14 [R.O.A., Item 74].

Exhibit AA.  Presentence Report [R.O.A., Item 75].

Exhibit BB.  R.T. 3/28/14 [Judgment and Sentencing].

Exhibit CC.  Judgment and Sentencing Minute Entry [R.O.A., Item 77].

Exhibit DD.  Notice of Appeal [R.O.A., Item 79].

Exhibit EE.  Opening Brief, 1 CA-CR 14-0242.

Exhibit FF.  Answering Brief, 1 CA-CR 14-0242

Exhibit GG.  Reply Brief, 1 CA-CR 14-0242

Exhibit HH.  Memorandum Decision, 1 CA-CR 14-0242, filed 3/10/15.

Exhibit II.    Order and Mandate, 1 CA-CR 14-0242, filed 5/29/15,

Exhibit JJ.    Mohave County Superior Court Docket for CR 2011-01237

Exhibit KK.  Notice of Post-Conviction Relief, filed 4/9/15.

Exhibit LL.  Petition for Post-Conviction Relief, filed 6/15/16.

Exhibit MM.  Minute Entry Ruling on PCR Petition.

Exhibit NN.  Petition for Review, 1 CA-CR 16-0763 PRPC

Exhibit OO.  Memorandum Decision, 1 CA-CR 16-0763 PRPC, filed 10/19/17.

Exhibit PP.  Order and Mandate, 1 CA-CR 16-0763 PRPC, filed 12/4/17.

Exhibit QQ.  Minute Entries Pertinent to Ground 2 [R.O.A., Items 5, 18-20, 22].