# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Nora Y. Sandoval,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-18-8250-PCT-JJT (JFM)

**Report & Recommendation
on Petition for
Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

**Petition** – Petitioner, a prisoner in the Arizona State Prison in Goodyear, Arizona, commenced the current case by filing her Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 4, 2018 (Doc. 1). Petitioner challenges her Arizona state conviction in Mohave County Superior Court, case number CR 2011-01237, of two counts of possession of dangerous drugs for sale, two counts of possession of dangerous drugs, and three counts of possession of drug paraphernalia, for which the court sentenced her to presumptive prison terms totaling 31.5 years.

Petitioner's Petition asserts the following four grounds for relief:

> In Ground One, Petitioner alleges that the trial court abused its discretion by denying her **motion to suppress** concerning a search for which she contends that probable cause did not exist. In Ground Two, she alleges the court abused its discretion by failing to grant her a continuance to retain **counsel of her choice**. In Ground Three, Petitioner alleges that there was **insufficient evidence** to support a verdict of possession of a dangerous drug, i.e., Clonazepam. In Ground Four, she alleges that she was denied the **effective assistance** of trial counsel.

(Order 10/15/18, Doc. 3 at 2.) Her claim of ineffective assistance in Ground 4 is based on allegations that trial counsel's failed to: (a) move to **sever counts**; (b) object to **prejudicial testimony** and to request an Arizona Rule of Evidence 404(b) instruction; (c) move to

- 1 -

waive Petitioner's **appearance at trial** and for a related jury instruction; and (d) file a **special action** to challenge the denial of new counsel.    (Petition, Doc. 1 at 9.)   These subclaims are addressed herein as Grounds 4A, 4B, 4C, and 4D, respectively.

**Response** - On November 14, 2018, Respondents filed their Answer (Docs.  6, 7).[1] Respondents argue that the exclusionary rule claim in Ground 1 (motion to suppress) is not amenable to habeas relief under *Stone v. Powell*, 428 U.S. 465, 494-95 (1976), and that Petitioner fails to show that the state courts' resolution of the claims in Grounds 2 through 4 are subject to relief under the deferential standards of 28 U.S.C. § 2254(d).

**Reply** - Petitioner filed a Reply on February 28, 2019 (Doc. 12), arguing the merits of her claims in Grounds 2 (counsel of choice) and 4 (ineffective assistance).  With regard to the latter, she asserts that prejudice from the different failings of counsel must be considered cumulatively.

**Consideration** - The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

/ /

/ /

/ /

---

[1] Respondents have failed to comply with the hyperlinked bookmarking requirement under Paragraph N(1) of the Electronic Case Filing Administrative Policies and Procedures Manual:

> In a non-capital habeas corpus action brought under 28 U.S.C. § 2254, the first page of each electronically filed attachment to an answer must contain an index of the included exhibits that is bookmarked and hyperlinked to each exhibit in that attachment; and the number or letter of each electronically filed exhibit attached to an answer must be included in the name of the attachment in which the exhibit is contained.

ECF Admin. Pol. & Proc. Man. ¶ N(1)(c).  Although the lack of such bookmarks greatly hampers the paperless review of the substantial record at every level of the federal courts, because the case has already been ripe for over three months, Respondents have not been required to refile their exhibits.

- 2 -

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.  FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

> Based on information obtained from a confidential informant, police officers obtained a search warrant authorizing a search of Sandoval and her apartment for evidence relating to possession of methamphetamine and drug paraphernalia. The morning the search warrant was to be executed, officers saw Sandoval leave her apartment in a vehicle. They stopped the vehicle and took Sandoval to a booking facility where she was searched. Officers found a plastic bag containing a white crystal substance later determined to be 28.7 grams of methamphetamine hidden in Sandoval's underwear. Upon searching Sandoval's apartment, officers discovered a plastic bag containing 11.25 grams of methamphetamine in the pocket of a woman's jacket, two pills in a plastic baggie, hundreds of unused plastic baggies, a digital scale, and more than a thousand dollars in cash.
>
> Three days later, having just been released from custody, Sandoval made arrangements by telephone to sell methamphetamine to a buyer. Unbeknownst to Sandoval, the buyer was cooperating with law enforcement. When Sandoval appeared at the agreed-upon meeting location, officers found her in possession of 20.6 grams of methamphetamine.

(Exh. HH, Mem. Dec. 3/10/15 at ¶¶ 2-3.)  (Exhibits to the Answer, Doc. 6, are referenced herein as "Exh. ___.")

### B.  PROCEEDINGS AT TRIAL

Petitioner was indicted in a seven count Indictment (Exh. B) on three counts of possession of dangerous drugs for sale (methamphetamine); one count of possession of dangerous drugs (clonazepam); and three counts of possession of drug paraphernalia, a class 6 felony. The first five counts related to events leading up Petitioner's arrest on October 11, 2018, and counts 6 and 7 related to the events on October 28, 2018, after Petitioner's release from the original arrest.  The State alleged that Sandoval had four prior felony convictions for sentence enhancement purposes.  (Exh. E.)  Petitioner was again released from custody pending trial.

Petitioner's retained counsel filed a **Motion to Suppress** (Exh. F) the evidence seized in Petitioner's home, the evidence seized as a result of the traffic stop, statement

during the traffic stop and subsequent investigation, and all statement related to the post-release sales transaction.  The motion was based on the lack of probable cause for the original search warrant, an unreasonable search of Petitioner and the cooperating buyer.  The Court conducted a hearing on the motion at which the investigating officer testified.  (Exh. J, R.T. 8/15/12.)   The motion was denied.  (Exh. K, M.E. 8/15/12.)

The matter was set for trial on September 25, 2012.   On September 10, 2012, counsel moved for a **continuance of trial** based on time needed to finish preparing for trial, which was denied.  Petitioner, who had been confused about scheduling, did not appear, and counsel waived her appearance.  (Exh. L, R.T. 9/10/12; Exh. M, M.E. 9/10/12.)

Subsequently, on September 24, 2012, Petitioner and counsel appeared for a hearing, based on Petitioner having called the judge's chambers indicating an intent to retain new counsel.  Petitioner complained that counsel was more concerned with money than defending her, had improperly given a copy of an interview transcript to another client, and that she was generally dissatisfied with counsel's services.  Counsel expressed concern that his trial preparation was being hindered by Petitioner's preoccupation with her dissatisfaction.  The State opposed a continuance.  The court reasoned that the request seemed to be a veiled attempt to delay a trial with a potential for an extensive sentence, that his experience with Petitioner in prior prosecutions indicated her needs for advice on trial procedure and constitutional rights were limited, and based on the vague dissatisfaction with counsel found no reason to continue trial.  (Exh. N, R.T. 9/24/12; Exh. O, M.E. 9/24/12.)

Petitioner proceeded to trial on September 25, 2012, and was eventually **convicted** as charged.   (Exh. X, Verdicts; Exhs. P through U, RT and M.E. re trial.)

On the last day of trial, before jury instructions and closing arguments, Petitioner absconded, and a bench warrant was issued and a bond forfeiture hearing set.  (Exh. U, M.E. 9/27/12.)  Bond was eventually forfeited.  (Exh. Y, M.E. 12/31/12.)

A year later, Petitioner had been apprehended, and again appeared before the Court, and the matter was set for **sentencing**.  (Exh. Y, M.E. 12/18/13.)  A Presentence Report

- 4 -

(Exh. AA) was prepared.  On March 28, 2014, "[t] he trial court found that Sandoval had two prior historical felony convictions and sentenced her as a repetitive offender to consecutive and concurrent presumptive prison terms totaling 31.5 years."  (Exh. HH, Mem. Dec. 3/10/15; Exh. G, Sentence 3/28/14.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, challenging the denial of the motion to suppress, the denial of a continuance to retain new counsel, insufficient evidence on the Clonazepam charge, and error in failing to redact the recording of Petitioner's interrogation.  (Exh. EE, Opening Brief.)   The Arizona Court of Appeals rejected her claims, and affirmed her convictions and sentences.  (Exh. HH, Mem. Dec. 3/10/15.)

Petitioner did not timely seek reconsideration or review by the Arizona Supreme Court, and on May 29, 2015, the Arizona Court of Appeals issued its Mandate (Exh. II).

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

In the meantime, on April 14, 2016, Petitioner commenced a post-conviction relief proceeding (PCR) by filing her Notice of Post-Conviction Relief with the trial court (Exh. KK).  Counsel filed a Petition for Post-Conviction Relief (Exh. LL) raising four claims of ineffective assistance of counsel based on issues regarding severance, other act evidence, failure to waive Petitioner's appearance at trial, and failure to special action the denial of the motion for new counsel.  The prosecution failed to respond, and on September 6, 2016, the PCR court rejected the claims on the merits.   (Exh. MM, M.E. 9/6/16.)

Petitioner, through counsel, sought review (Exh. NN) by the Arizona Court of Appeals, reasserting the same four claims of ineffective assistance.  That court granted review, but denied relief, summarily finding no abuse of discretion by the trial court.  (Exh. OO, Mem. Dec. 10/18/17.)

Petitioner did not timely seek reconsideration or review by the Arizona Supreme Court, and on December 4, 2017, the Arizona Court of Appeals issued its Mandate (Exh.

PP).

### III.  APPLICATION OF LAW TO FACTS
### A.  GROUND 1 – EXCLUSIONARY RULE

In Ground 1, Petitioner alleges that the trial court abused its discretion by denying her motion to suppress evidence resulting from the search of her, her property and her residence, based on the lack of probable cause.  (Petition, Doc. 1 at 6.)  Respondents argue that the claim in Ground 1 is founded on the exclusionary rule and is not amenable to habeas relief under *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  (Answer, Doc.  6 at 13, *et seq.*)  Petitioner does not address Ground 1 in her Reply.

Indeed, Petitioner's claim is one for enforcement of the "exclusionary rule." Absent the "exclusionary rule," evidence obtained in violation of the Fourth Amendment, *i.e.* because there was not probably cause to conduct a search would be admissible at trial.

> The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a "prudential" doctrine, created by this Court to "compel respect for the constitutional guaranty." Exclusion is "not a personal constitutional right," nor is it designed to "redress the injury" occasioned by an unconstitutional search. The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations.

*Davis v. United States*, 564 U.S. 229, 236–37 (2011).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court recognized that habeas proceedings are so far removed from the offending conduct that any deterrent effect is outweighed by the societal cost of ignoring reliable, trustworthy evidence and the judicial burden of litigating collateral issues.  Thus, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id*. at 494.

The key to the limitation on the exclusionary rule in *Stone* is the provision of an opportunity for full and fair consideration of the exclusionary rule claim.  "The relevant

inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

> In deciding whether the state has afforded the petitioner an opportunity for full and fair litigation, a federal habeas court must determine first whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, there must be a determination whether the presentation of the claim in question was in fact frustrated by a failure of that mechanism. The presentation of a claim is frustrated by a failure in the state procedural mechanism if there has been no "meaningful inquiry by the state courts" into the Fourth Amendment claim, either because the state courts did not carefully and thoroughly address the factual basis of the petitioner's claim or because the state courts did not apply the proper constitutional case law to the facts as developed.

*U.S. ex rel. Bostick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993) (citations omitted).

Here, Petitioner proffers nothing to show that she lacked a full and fair opportunity to litigate her exclusionary rule claim. As noted by Respondents (Answer, Doc. 6 at 16-17), Petitioner was able to litigate her exclusionary rule by: raising it in her motion to suppress (Exh. F); supporting it in an evidentiary hearing (Exh. J); obtaining a ruling from the trial court (Exh. K); raising it on direct appeal (Exh. EE at 15-25); obtaining a ruling from the Arizona Court of Appeals (Exh. HH at ¶¶ 6-12); and by the opportunity to raise it in her foregone motion for reconsideration or petition for review to the Arizona Supreme Court (Exh. II). Petitioner suggests no basis, and there appears no basis, to conclude that the review afforded was not "meaningful" as described in *Bostick*, 3 F.3d at 1027.

Accordingly, Petitioner's Ground 1 is barred from relief under *Stone*, and must be denied.

**B.  STANDARD OF REVIEW ON STATE HABEAS**
**1.  Limited Review of State Decisions**

While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner in custody pursuant to the judgment a State court not every error justifies relief. Thus, most errors which might justify relief on direct appeal, do not justify relief on habeas review if they were harmless. Moreover, as part of

the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), Congress adopted the additional limitations on habeas review of state court decisions set out in 28 U.S.C. § 2254(d) and (e), which "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).

## 2. Applicable Decisions

In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

## 3. No Decision on the Merits

Not all of the statutory limitations on habeas review of state decisions always apply. In particular, the limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court." Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply. *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013). *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

## 4. Errors of Law

Rejection of a state court decision on the merits based on legal error is limited. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam). Rather, to justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"

before relief may be granted.  28 U.S.C. §2254(d)(1).

**Contrary To** - The Supreme Court has instructed that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Lockyer v. Andrade*,  538 U.S. 63, 73 (2003) (internal quotation marks omitted).

**Unreasonable Application** - To show an unreasonable application, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

**State Law** - A state court determination of state law is not subject to review in a federal habeas court.  *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the state court's interpretations of state law").  A federal court may not second-guess the state court's construction of its own state law unless "it appears that its interpretation is an obvious subterfuge to evade consideration of a federal issue." *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).  That does not, however, necessarily preclude the habeas court from considering (in the context of addressing a federal claim) whether the determination that the facts met the state law was erroneous.  *See e.g. Goldyn v. Hayes,* 444 F.3d 1062 (9th Cir. 2006) (although Nevada court was final arbiter of elements of crime, it could not "define an element out of existence, or to ignore the element entirely when upholding a criminal conviction").

**5.  Errors of Fact and Evidentiary Hearings**

**Unreasonable Determination** - Federal courts are further authorized to grant habeas relief in cases where the state-court's merits decision "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  "Moreover, implicit findings of fact are entitled to deference under § 2254(d) to the same extent as explicit findings of fact." *Blankenship v. Hall*, 542 F.3d 1253, 1272 (11th Cir. 2008). *See also Watkins v. Rubenstein*, 802 F.3d 637, 649 (4th Cir. 2015).

**New Evidence** – Further, a state prisoner is not free to attempt to retry his claims in the federal courts by presenting new evidence. "[W]hen we are reviewing state-court decisions under AEDPA…petitioners may introduce new evidence in federal court only for claims that we review de novo." *Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

Even when a claim is reviewed *de novo*, the petitioner may not obtain an evidentiary hearing if he has "failed to develop" the record in the state courts, unless he meets certain stringent showings related to justification for the delay in developing the record, 28 U.S.C. § 2254(e)(2)(A), and that the new evidence will show a lack of evidence to convict, 28 U.S.C. § 2254(e)(2)(B).

Even where an evidentiary hearing is permissible, the petitioner "must meet one of the *Townsend* [*v. Sain*, 372 U.S. 293 (1963)] factors and make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief." *Insyxiengmay v. Morgan*, 403 F.3d 657, 670  (9th Cir. 2004).

**Presumption of Correctness** - Even where the habeas court is reviewing a claim *de novo*, there is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."  This presumption of correctness applies not only to the explicit factual findings by the state court, but to the implicit factual findings as well.  *See Tinsley v. Borg*, 895

F.2d 520, 525 (9th Cir.1990) (implicit factual findings are entitled to a presumption of correctness in appropriate circumstances); *see also Taylor v. Horn*, 504 F.3d 416, 433 (3d Cir.2007) ("Implicit factual findings are presumed correct under § 2254(e)(1) to the same extent as express factual findings.").

### 6. De Novo Review

If there was no merits decision, or if the standards of § 2254(d) are met, then the habeas court reviews a claim *de novo*, applying the law applicable in this circuit. *See Mann v. Ryan*, 828 F.3d 1143, 1155 (9th Cir. 2016).

### 7. Harmless Error

Even under *de novo* review, a petitioner must, in most cases, still show that the claimed error was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

> For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice. Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful. The *Brecht* standard reflects the view that a State is not to be put to the arduous task of retrying a defendant based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error.

*Davis v. Ayala*, 135 S. Ct. 2187, 2197–98 (2015) (citations, quotations and alterations omitted).

However, "[t]he Supreme Court has recognized that 'some constitutional errors require reversal without regard to the evidence in the particular case [because they] necessarily render a trial fundamentally unfair.' This principle applies on habeas review as well as on direct review." *Powell v. Galaza*, 328 F.3d 558, 566 (9th Cir. 2003) (citations omitted). This exception has been applied to a very narrow class of claims such as: complete denial of counsel, biased trial judge, racial discrimination in selection of a grand jury, denial of self-representation at trial, denial of public trial, defective reasonable

doubt instruction, *Neder v. United States*, 527 U.S. 1, 8 (1999), exclusion of jurors based on opposition to death penalty, *Gray v. Mississippi*, 481 U.S. 648, 668 (1987), and a jury instruction that directed a verdict for the state, *Powell*, 328 F.3d at 566.

## C.  GROUND 2 – COUNSEL OF CHOICE
### 1.  Parties Arguments

In Ground 2, Petitioner alleges the court abused its discretion by failing to grant her a continuance to retain counsel of her choice, despite trial counsel's concession that Petitioner was unhappy with counsel and had problems communicating with counsel, and thus would not likely be able to adequately assist him at trial.  (Petition, Doc. 1 at 7.) Respondents argue that Petitioner fails to show that the state court's resolution of Ground 2 can be subject to relief under the deferential standards of 28 U.S.C. § 2254(d).

### 2.  Factual Background

In disposing of this claim on direct appeal, the Arizona Court of Appeals found the following facts:

> ¶14    The day before trial began, Sandoval requested a continuance to allow her to retain private counsel. Sandoval stated that her appointed counsel was not representing her well and that he was not communicating with or helping her. When asked what more she wanted her attorney to do, Sandoval stated, "I don't know, like fight a little bit more. I mean I feel that I'm going to lose, if I keep him. I feel that I might get a lot of time; and I would like an attorney that's going to fight for me more, you know." The State opposed the motion, stating it had multiple witnesses subpoenaed and ready to appear, and the prosecutor had cleared her schedule for trial.
>
> ¶15    The trial court noted that Sandoval had presented nothing specific as to why appointed counsel could not continue representing her. In addressing what it believed to be the true reason for the continuance request, the court stated it appeared Sandoval "thought that the day of reckoning would be farther off in the future, and that she's just having a hard time accepting the fact that her trial is starting tomorrow, and if she's found guilty she may be facing some serious consequences."
>
> * * *
>
> ¶18    The trial court here had already granted Sandoval three prior trial continuances. Sandoval did not state when she would be able to hire new counsel or how long it would take for new counsel to prepare for trial. In contrast, not only was the State prepared for trial, but Sandoval's longtime appointed counsel was also ready to try

the case as scheduled. And based on its questioning of Sandoval, the trial court could have reasonably concluded that her continuance request was not made for legitimate reasons, but for purposes of delay.

(Exh. HH, Mem. Dec. 3/10/15 at ¶¶ 14-15.)

### 3. State Court Ruling

The Arizona Court of Appeals rejected this claim, reasoning:

¶16        A criminal defendant has the right to counsel of her choosing under the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona Constitution. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Robinson v. Hotham*, 211 Ariz. 165, 169, ¶ 16, 118 P.3d 1129, 1133 (App. 2005). The right to counsel of choice, though, is "not absolute, but is subject to the requirements of sound judicial administration." *Hein*, 138 Ariz. at 369, 674 P.2d at 1367; *see also Wheat v. United States*, 486 U.S. 153, 159 (1988) (holding right is circumscribed and a defendant has no guarantee she will have top choice of attorney). A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152. Notwithstanding this broad discretion, an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). The wrongful denial of the right to counsel of choice is structural error. *Gonzalez-Lopez*, 548 U.S. at 150. 117

¶17        "Whether an accused's constitutional rights are violated by the denial of a request for a continuance depends on the circumstances present in the particular case." *Hein*, 138 Ariz. at 369, 674 P.2d at 1367. We consider:
whether other continuances were granted; whether the defendant had other competent counsel prepared to try the case; the convenience or inconvenience to the litigants, counsel, witnesses, and the court; the length of the requested delay; the complexity of the case; and whether the requested delay was for legitimate reasons or was merely dilatory.
*Id.*

¶18        …We find no abuse of discretion in denying Sandoval's continuance request.

(Exh. HH, Mem. Dec. 3/10/15 at ¶¶16-18.)

### 4. Applicable Law

**Right to Counsel of Choosing** - The Supreme Court has long held that where the right to counsel exists, "a defendant should be afforded a fair opportunity to secure counsel

- 13 -

of his own choice." *Powell v. State of Alabama*, 287 U.S. 45, 53 (1932). "[T]he right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

That right is not boundless, but is commensurate with its purpose. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. The purpose of the right is not to protect the defendant's relationship with a particular lawyer, but to ensure a fair trial. *Id.* Thus, for example, it is not necessary that a defendant have a "meaningful" relationship with counsel, *Morris v. Slappy*, 461 U.S. 1, 13 (1983), nor are courts precluded from determining "which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Gonzalez-Lopez*, 548 U.S. at 152.

On the other hand, the denial of this right "is not subject to a harmless error analysis." *Gonzalez-Lopez*, 548 U.S. at 152. "We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error." *Gonzalez-Lopez*, 548 U.S. at 150. Thus, it does not require a showing "that substitute counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668, 691–696[ ] (1984)—i.e., that substitute counsel's performance was deficient and the defendant was prejudiced by it." *Id.* at 144. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* at 148.

**Continuances to Obtain Counsel** - This right of counsel of one's choosing routinely bumps up against efforts by trial courts to manage trial calendars. The Supreme Court has addressed the competing concerns:

Trial judges necessarily require a great deal of latitude in scheduling

> trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris,* 461 U.S. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to amount to a constitutional violation. "The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589.

However, courts confronting a defendant's motion for a continuance of trial in order to retain new counsel typically consider factors such as: the timeliness of the request, *see Morris*, 461 U.S. at 13; whether the request is in good faith (as opposed to, for example "a transparent ploy for delay," *id.*); the burdens of a continuance on the prosecution, courts, witnesses, and victims, *id.* at 14.    *See United States v. Burton*, 584 F.2d 485, 490–91 (D.C. Cir. 1978) (relying on *Ungar*, and listing "the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case").

With regard to timeliness, the courts have often found no violation of the right to counsel of one's choosing where the requests for delay to substitute were made shortly before trial. *See Wheat*, 486 U.S. at 157 (two days before); *Miller v. Blacketter*, 525 F.3d

890, 898 (9th Cir. 2008) (same); *Morris*, 461 U.S. at 13 (on third day of trial). "Of course, the late timing of a motion to substitute counsel or to postpone trial does not always preclude relief." *Miller*, 525 F.3d at 898. Rather the reasons for the request should be examined in light of the justification for the delay. *Id.*

**5. Application of Law**

### a. No Remediable Factual Error

Petitioner points to no unreasonable determination of facts by the Arizona Court of Appeals. For example, Petitioner argues that the relevant considerations included: petitioner's mistrust of and dissatisfaction with counsel, that communication had become difficult, the length of the expected delay and impacts on jurors and witnesses, the complexity of the case, and that counsel expected payment for responding to Petitioner's questions. (Reply, Doc. 12 at 4.) The state court identified all but the last. (Exh. HH, Mem. Dec. 3/10/15 at ¶ 16.)

**Payment Demands** - With regard to the latter, Petitioner asserted this fact to the trial court:

> THE COURT:….You've indicated that you think Mr. Rideout is concerned with money more than defending you, and that you feel extorted by your attorney that you have to pay him to answer questions.

(Exh. N, R.T. 9/24/12 at 6.)

If the latter were significant, the failure to include it in the amalgam might have been unreasonable. But, Petitioner fails to explain why it is material to the decision being made. For example, Petitioner fails to explain why it was unreasonable or unexpected for *retained* counsel to expect payment for his services, including providing "answers to questions." Abraham Lincoln is purported to have said "a lawyer's time and advice are his stock in trade."[2] Expecting payment for responding to questions is thus unsurprising.

---

[2] Writing in 1954, Pennsylvania Supreme Court Justice Mussano questioned the attribution to Lincoln and suggested the phrase was instead from a plaque marketed by an Indiana firm for lawyers' offices. *Sterling v. City of Philadelphia,* 378 Pa. 538, 563 n. 4 (1954)

Moreover, new counsel would likely have likely not only have required payment for such answers, but to repeat much of the work already paid for.

Indeed, Petitioner did not even reference the demand for payment in arguing the claim to the state appellate court.   (*See* Exh. EE, Opening Brief at 26; Exh. GG, Reply Brief at 20.)

**Motion to Substitute or Motion to Continue** - Perhaps on the belief that a different standard would apply, Petitioner argues for the first time in her Reply that the trial court wrongly converted a motion for new counsel into a motion to continue the trial date. (Reply, Doc. 12 at 3.)   Petitioner proffers nothing to suggest that a continuance was not the import of her request.   Indeed, Petitioner posed no objection when the trial court summarized her request as follows:

> THE COURT: All right. So, Ms. Sandoval, you're indicating some -- and indicating a couple things. First of all, that you have a problem with Mr. Rideout and that you want an opportunity to hire a new attorney to represent you.
> The obvious problem is, your case is set for trial tomorrow. Witnesses have been subpoenaed, jurors have been summoned; so as far as the court system is concerned, your case is going to trial tomorrow.

(Exh. N, R.T. 9/24/12 at

Nor did she raise any opposition when the trial court explicitly stated his construction of her request.

> THE COURT: And Ms. McCoy, what's your position as far as what I'm treating as the defendant's request for a continuance of the trial date to enable her to hire a different attorney?

(*Id.* at 9.)

Indeed, on direct appeal, Petitioner argued: "The day before trial, Appellant moved for a continuance to allow her to hire private counsel."  (Exh. EE, Opening Brief at 26.) That assertion alone would prevent this habeas court from finding it unreasonable for the appellate court's to fail to find a misconstruction of Petitioner's request.   (*See also* Exh.

(Mussano, J., dissenting).   The truth in the statement is no less pungent, wherever it originated.

GG, Reply Brief at 20 ("Here, the day before trial, Appellant moved for a continuance to allow her to hire private counsel.").

The first time Petitioner ever made any hint that a motion to continue was not made was in her PCR proceeding, as part of her claim that trial counsel was ineffective: "Clearly, a continuance of the trial would be required in order to obtain new counsel and for that person to be prepared, but [trial counsel] did not notice any motion to continue the trial mentioned by Petitioner during those proceedings." (Exh. NN, PFRev at 16.) But even there, Petitioner suggested that she had made a *pro per* request for a continuance, and explicitly conceded that a change of counsel necessitated a continuance. Moreover, Petitioner proceeded to argue the applicability of the standard under *Morris* and other continuance relate authorities.

Indeed, even in her Petition to this Court, Petitioner argues that the error was "failing to grant appellant a continuance," and that there was a "request for new counsel and short continuance."

**Length of Delay** – Petitioner argues the request was for a "short continuance." (Petition, Doc. 1 at 7.) However, Petitioner proffers nothing in the record to support that contention. The state court observed: "Sandoval did not state when she would be able to hire new counsel or how long it would take for new counsel to prepare for trial." (Exh. HH, Mem.Dec. 3/10/15 at ¶ 18.) Even if new counsel were immediately available, any reasonable, newly retained attorney could be presumed to want a significant amount of time to prepare for what ultimately was a three day trial with nine witnesses, seven counts, two separate sets of events, and a sentencing exposure of more than 30 years.

**Effect of Delay** – The state court found: "The State opposed the motion, stating it had multiple witnesses subpoenaed and ready to appear, and the prosecutor had cleared her schedule for trial." (Exh. HH, Mem. Dec. 3/10/15 at ¶ 14.) Petitioner does not counter that contention directly, but argues that there was sufficient time before trial to cancel the jury pool and witnesses. (Petition, Doc. 1 at 7.) Petitioner fails to support this contention with anything beyond conjecture.

Certainly the harm for delay can occur before the participants have gathered in or even left for the courthouse. Rather, the participants are routinely required to clear a significant block of their schedules to accommodate a scheduled trial. And at the last moment, that block of time is often hard to fill with comparable matters and becomes all but lost.

**Complexity of the Case** – Petitioner argues the case was not complex. (Petition, Doc. 1 at 7.) However, Petitioner fails to show why this was so.

Similarly, on direct appeal Petitioner summarily argued the "case was not unusually complex," without offering any support for the assertion. (Exh. EE, Open. Brief at 29.) The state responded: "While the instant case was not overly complex, the State's charges still required nine witnesses to testify about three different crime scenes." (Exh. FF, Ans. Brief at 41.)

More importantly, the Arizona Court of Appeals made no finding on the presence or absence of complexity. As discussed hereinafter, Petitioner fails to show why such a finding was required.

**Conclusion** - The undersigned finds no unreasonable determination of the facts.

**b.    No Remediable Error of Law**

Nor does Petitioner point to any error of law. The Arizona Court of Appeals identified the controlling rule, quoting from, *inter alia*, *Gonzalez-Lopez, Wheat,* and *Morris*. (Exh. HH, Mem. Dec. 3/10/15 at ¶ 16.) Petitioner points to no Supreme Court decision reaching a contrary result with materially indistinguishable facts, and the undersigned has found none.

Nor does Petitioner offer anything to show that the state court's ruling on the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. To the contrary, the state court considered a range of relevant factors, including: the delay in the request, *i.e.* the day before trial (Exh. HH Mem. Dec. 3/10/15

at ¶ 14); the purported reasons for the request (and their vagueness) (*id*), the trial court's belief that the request was not in good faith, but simply a ploy to delay trial and the expected sentence (*id.* at ¶ 15, 18); the grant of previous continuances; the lack of preparedness to replace counsel; the delay required for new counsel to prepare; and that the case (including trial counsel) was prepared to proceed, (*id.* at ¶ 18).   Under those circumstances, reasonable jurists could conclude that the denial of the continuance was not "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" *Morris,* 461 U.S. at 11-12.

Petitioner argues the lack of complexity called for a continuance. Petitioner fails to explain why that was so. While it may be a relevant consideration, complexity is not a binary factor, whose presence or absence always counsels for or against permitting delay. In some respects, complexity suggests increased delay and burdens to litigants because new counsel will have to re-trod ground already covered.  This might counsel against a continuance to replace counsel.  In other respects, complexity suggests that disruptions of the attorney-client relationship may be more harmful to the defense, *i.e.* in a simple case, little communication with counsel may be necessary, but in a complex case extensive coordination may be required.   On the other hand, in an extremely complex case the issues may be so far beyond the experience or comprehension of the lay client that counsel must function virtually autonomously.   Thus, the significance of "complexity" depends on a constellation of circumstances.   Petitioner fails to connect the star of a lack of complexity into a picture that calls for a continuance

**6.  Conclusion**

The Arizona Court of Appeals addressed the claim in Ground 2 on the merits. Petitioner fails to show its decision is subject to relief under the deferential standards in 28 U.S.C. § 2254(d).  Accordingly, Ground 2 must be denied.

//

//

## D.  GROUND 3 – INSUFFICIENT EVIDENCE
### 1.  Parties Arguments

In Ground 3, Petitioner argues that there was insufficient evidence to support a verdict of possession of a dangerous drug, *i.e.* Clonazepam.  Petitioner argues that the only evidence to support that the substance found was Clonazepam was the detective's visual identification of the substance, and there was no chemical testing done or pill bottle to identify it.  (Petition, Doc. 1 at 8.)

Respondents argue that reasonable jurists would agree with the Arizona Court of Appeals' conclusion that there was sufficient evidence.  (Answer, Doc. 6 at 40, *et seq.*)

Petitioner does not reply on this Ground.  (*See generally* Reply, Doc. 12.)

### 2.  Factual Background

In disposing of this claim on direct appeal, the Arizona Court of Appeals found the following facts:

> ¶26        Here, a detective who is a supervisor with the Mohave Area General Narcotics Enforcement Team drug task force identified the two pills as clonazepam through use of a website specifically designed to help law enforcement "identify pills and get other information about drugs." The detective testified he regularly used the website and always found it to be accurate in identifying pills. The detective also testified he confirmed the identity of the pills with a pharmacist at Walgreens.

(Exh. HH, Mem. Dec. 3/10/15 at ¶¶ 14-15.)  (*See also* Exh. P, R.T. 9/25/12 at 247-250.)

In addition, as Respondents argue, Arizona Department of Public Safety Criminalist Shayna Smith supported the validity of identifying prescription medication through visual inspection:

> Q.    Okay. Now, do you, within your job, also identify prescription pills?
> A.    Yes.
> Q.    When you identify prescription pills, is that something that you identify routinely by looking at their markings?
> A.    That is part of the identification; yes.
> Q.    Okay. Can you explain how drugs are essentially manufactured, so they can be identified?
> A.    Generally, the manufacturers will put specific markings on the tablets, or pills, or capsules, that are specific to the type of drug

or chemical that is inside.

> Q.    Okay. And so typically, if an item has a certain number, or coloring, or shape, based on those types of identifiers are you able to look at a reference guide and identify what prescription pill that would be?
> A.    Yes.

(Exh. R, R.T. 9/26/12, at 130-31.)  The state court did not reference this testimony.

Although not referenced by the state court, the defense proffered no evidence on the nature of the substance, and at most asked a general question of the prosecution's criminalist about "knockoff" drugs:

> Q.    And are you familiar with pills being – knockoff pills being created in other countries and being sold in the U.S.?
> A.    Yes.
> Q.    And have you done any research on that?
> A.    No.

(Exh. R, R.T. 9/26/12 at 135.)

## 3.  State Court Ruling

The Arizona Court of Appeals rejected this claim, reasoning:

> ¶23    …We review claims of insufficient evidence *de novo*, viewing the evidence in the light most favorable to upholding the verdict.  *State v. Bible*, 175 Ariz. 549,595,858 P.2d 1152, 1198 (1993).
> ¶24    "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). "If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *State v. Herrera*, 174 Ariz. 387, 393, 850 P.2d 100, 106 (1993). "We do not consider if we would reach the same conclusion as the trier-of-fact, but only if there is a complete absence of probative facts to support its conclusion." *State v. Carlisle*, 198 Ariz. 203, 206, ¶ 11, 8 P.3d 391, 394 (App. 2000).
> ¶25    Sandoval argues the evidence was insufficient because identification of the pills was based solely on testimony of a police detective. However, the identity of a controlled or contraband substance may be proven without chemical analysis or forensic expert testimony. *State v. Saez*, 173 Ariz. 624, 630, 845 P.2d 1119, 1125 (App. 1992); *see also State v. Nightwine*, 137 Ariz. 499, 503, 671 P.2d 1289, 1293 (App. 1983) (upholding convictions for cocaine offenses despite absence of chemical analysis*); State v. Ampey*, 125 Ariz. 281, 282, 609 P.2d 96, 97 (App. 1980) (sufficient evidence of marijuana existed based on officer's observation and defendant's admission). Numerous courts have held that the chemical content of a tablet may be identified from its external features and the manufacturer's stamp ("trade dress"), reasoning that "the trade dress

- 22 -

of a pill is akin to looking at a human face." *Jones v. Commonwealth*, 331 S.W.3d 249, 255 (Ky. 2011) (collecting cases); *see also State v. Murphy*, 28 So.3d 496, 498-99 (La. App. 2009) (upholding conviction for possession of clonazepam where no chemical testing was performed and State's witness identified drug through "Just Drug Identification" website); *State v. Carter*, 981 So.2d 734, 744 (La. App. 2008) (upholding identification of hydrocodone pills by chemist and narcotics detective "via visual inspection and comparison with pictures in a book"); *Commonwealth v. Loskovic*, 307 A.2d 357,358 (Pa. Super. 1973) (upholding officer's identification of a drug "by comparing the appearance of the capsule, by color and the manufacturer's markings, with information on dangerous drugs contained in a manual furnished by the State Police").

(Exh. HH, Mem. Dec. 3/10/15 at ¶¶124-25.)   After reviewing the evidence from the detective, the state court concluded: "This evidence was more than a 'mere scintilla,' *see State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990), and, viewed in the light most favorable to sustaining the verdict, was sufficient to permit the jury to find beyond a reasonable doubt that the pills at issue were clonazepam."  (*Id.* at ¶ 26.)

### 4.  Applicable Law

**Sufficiency of the Evidence** - The Due Process Clause of the Fourteenth Amendment protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella v. California*, 491 U.S. 263, 265 (1989) (citation omitted).

In evaluating a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**Standard of Review** - The Ninth Circuit has recently summarized the applicable standard for reviewing a state petitioner's claim of insufficient evidence under the deferential standards in 28 U.S.C. § 2254(d):

[The  petitioner]  "faces  a  heavy  burden  when  challenging  the

> sufficiency of the evidence used to obtain a state conviction on federal due process grounds." First, he must meet the burden under *Jackson v. Virginia* of showing that "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, after the passage of the [AEDPA] the standards of Jackson are applied "with an additional layer of deference," requiring the federal court to determine "whether the decision of the [state court] reflected an 'unreasonable application of' Jackson ... to the facts of this case."

*Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217–18 (9th Cir. 2018) (citations omitted) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**Chemical Analysis** - Petitioner complains there was no chemical analysis done. However, Petitioner points to no authority requiring such heightened or specific evidence to prove that a substance is the charged drug. The Arizona Court pointed out that Arizona law did not mandate such evidence, and cited a litany of state cases holding that chemical analysis was not required to provide sufficient evidence to identify a substance.

The Ninth Circuit and a variety of federal circuits concur. "The government need not introduce scientific evidence to prove the identity of a substance so long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt." *United States v. Durham*, 464 F.3d 976, 984 (9th Cir. 2006) (quotations and alterations omitted) (citing *United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir. 1990) and detailing cases).

## 5.  Application of Law

The state court resolved this claim on its merits, and thus relief may be granted only if the state court's decision fails the standards under 28 U.S.C. § 2254(d)(1) (legal error) and (d)(2) (factual error).

### a.   No Remediable Factual Error

Petitioner points to no unreasonable determination of facts by the Arizona Court of Appeals.   The undersigned finds none.  The deficiency, if any, was the omission of the testimony by the criminalist.  But, of course, that would have strengthened the conclusion

reached by the state court, not weakened it, and thus assuming it was unreasonable, it was harmless.

**b.   Remediable Legal Error**

Nor does Petitioner point to any error of law.

**No Evidence Standard Contrary to Established Law** - Although Petitioner argued this claim to the state court under the constitutional standards in *Winship* (Exh. EE, Opening Brief at 31), the state court cited to no federal authorities or constitutional provisions in disposing of the claim.  Instead, the court relied entirely on a line of Arizona cases addressing insufficient evidence claims for the applicable standard.  (Exh. HH, Mem. Dec. 3/10/15 at ¶ 24.)  However, "[f]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell v. Cone*, 543 U.S. 447, 455 (2005).   In particular, the Supreme Court has held that for a state court decision to pass muster under 28 U.S.C. § 2254(d)(1)  "does not require citation of our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Here, the undersigned finds no contradiction between the state standard applied and the federal standard under *Winship* and *Jackson*.  *See Runningeagle v. Ryan*, 686 F.3d 758, 763, n. 1 (9th Cir. 2012) ("the Arizona standard is equivalent to the standard for sufficiency of the evidence federal courts apply on habeas review").   The essence of the rule applied by the state court was a requirement, "viewing the evidence in the light most favorable to upholding the verdict" (Exh. HH, Mem. Dec. 3/10/15 at ¶ 23),  for "proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." (Exh. HH, Mem. Dec. 3/10/15 at ¶ 24.   This is functionally the same as the *Jackson*'s requirement that "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  The state standard includes the

same prosecution favoring view of the evidence, examined through the lens of a reasonable juror, and compares it to a reasonable doubt standard.

However, the state court also applied a standard of a "complete absence of probative facts,"[3]  (Exh. HH, Mem.Dec. 3/10/15 at ¶ 24 (citing *State v. Carlisle*, 198 Ariz. 203, 206, ¶ 11 (App. 2000), *overruled on other grounds by Wright v. Gates*, 243 Ariz. 118, ¶ 11 (2017).   In *Jackson,* the Court explicitly rejected the call for a "no evidence" standard that would be satisfied by a "mere modicum" of evidence, and held instead that the standard was "record evidence [that] could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 320.   Thus, the Arizona Court of Appeals applied a rule that contradicts that holding in *Jackson*, and its decision was contrary to Supreme Court law.   *See Lockyer*, 538 U.S. at 73 (state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases").   *But see Alvarez v. Ryan*, CV 11-98-TUC-FRZ JJM, 2014 WL 1152886, at *8 (D. Ariz. Mar. 21, 2014) (summarily concluding "no substantial evidence" and "complete absence" standards comported with *Jackson*).

But that does not mean Petitioner has established her claim.  Rather, it leaves this Court to consider the claim *de novo*.  *Mann v. Ryan*, 828 F.3d 1143, 1155 (9th Cir. 2016).

### c.   On De Novo Review, Claim Meritless

Nonetheless, Petitioner fails to show that "viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.

As discussed above, there is no requirement for chemical analysis to establish that a substance is the controlled substance.  Rather, circumstantial evidence and other opinion

---

[3] The Supreme Court has long applied a test of "a complete absence of probative facts" in various civil cases.  *See e.g. Lavender v. Kurn*, 327 U.S. 645, 653 (1946).  But, of course, the "beyond a reasonable doubt standard" does not apply in such civil cases, but a "preponderance of the evidence" standard.  *See Addington v. Texas*, 441 U.S. 418, 428 (1979) ("the 'beyond a reasonable doubt' standard historically has been reserved for criminal cases").

evidence can be sufficient. *Durham*, 464 F.3d at 984. *See e.g. id.* (witness's history as a user, including with the defendant, coupled with her consumption of the residue in question); *Toliver v. United States*, 224 F.2d 742, 745 (9th Cir. 1955) (exorbitant price paid; the physical appearance of the substance; history of witness and defendant with use of and transaction in the controlled substance); and *United States v. Traylor*, 656 F.2d 1326, 1334 (9th Cir. 1981) (defendant's description to witness of similar substance as controlled substance, method of smuggling, and enlistment of witness in mixing and packing substance).

Here, the jury was presented with: (a) the testimony of a seasoned officer, following a generally acceptable protocol of visual identification, aided by a trusted reference, and confirmed by a pharmacist, that the substance was Clonazepam; (b) the circumstantial evidence provided by evidence of other illicit drugs and drug dealing by Petitioner; and (c) only by a suggestion that some pills are knockoffs. With such a record, a rational trier of fact could have found beyond a reasonable doubt that the substance was Clonazepam.

### 6. Conclusion

Considered *de novo*, Ground 3 is without merit and must be denied.

### E. GROUND 4 – INEFFECTIVE ASSISTANCE

In Ground 4, Petitioner asserts four separate claims of ineffective assistance of counsel. Each are addressed hereinafter individually.

### 1. Reviewed Decision

Petitioner's claims of ineffective assistance were presented in her PCR proceeding. The Arizona Court of Appeals issued a summary decision. (Exh. OO, Mem. Dec. 10/19/17.) Thus, the last reasoned decision on these claims was that of the PCR court. (Exh. MM, M.E. 9/6/16.) As Respondents agree (Answer, Doc. 6 at 55), this habeas court reviews the last reasoned decision, that of the PCR court. *Robinson*, 360 F.3d at 1055.

## 2.  Applicable Standard on Ineffective Assistance Claims

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

**Deficient Performance** - There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).   The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense."   *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).   Further, tactical decisions with which a defendant disagrees cannot form the

basis for a claim of ineffective assistance of counsel.  *Morris v. California*, 966 F.2d 448, 456 (9ᵗʰ Cir. 1991).  The court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation.   *Id.* at 456-457.

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9ᵗʰ Cir. 2012).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**Prejudice** - To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

### 3.  Cumulative Prejudice

In her Reply, Petitioner offers only generic arguments on ineffective assistance and does not address the particulars of any claim.  (Reply, Doc. 12 at 5, *et seq.*)

Petitioner does argue that this Court must consider the cumulative effect of counsel's misdeeds in finding prejudice.  (*Id.* at 6.)

The Ninth Circuit has long held that a finding of *Strickland* prejudice "may either be 'cumulative' or focus on one discrete blunder in itself prejudicial."  *Ewing v. Williams*, 596 F.2d 391, 395–96 (9th Cir. 1979).   *See also Williams v. Filson*, 908 F.3d 546, 570 (9th Cir. 2018) ("*We* have long recognized…that "prejudice resulting from ineffective assistance of counsel must be 'considered collectively, not item by item'") (emphasis added, quoting *Doe v. Ayers*, 782 F.3d 425, 460 n. 62 (9th Cir. 2015)).

However, there is no clearly established Supreme Court law on this issue, and the circuits are split.  "[T]he Supreme Court has not yet rendered cumulative analysis of an attorney's errors to determine Strickland prejudice as clearly established federal law." Ruth A. Moyer, *To Err Is Human; to Cumulate, Judicious: The Need for U.S. Supreme Court*

- 29 -

*Guidance on Whether Federal Habeas Courts Reviewing State Convictions May Cumulatively Assess Strickland Errors*, 61 Drake L. Rev. 447, 475 (2013) (although some of the cases cited appear to address cumulative error from disparate constitutional claims rather than cumulative error from disparate instances of counsel's deficient performance).

> Presently, circuit courts are split over whether federal courts in § 2254 actions may cumulatively assess an attorney's errors in determining whether there is Strickland prejudice. The majority of courts—the First, Second, Third, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits—have answered this question affirmatively.
> A minority of circuits—the Fourth and Eighth—have held that federal courts in § 2254 actions may not cumulatively assess an attorney's errors in determining whether there is Strickland prejudice.

Brian R. Means, *Cumulative Error*, Federal Habeas Manual § 13:4 (May 2019 Update) (citations omitted).   Accordingly, in cases governed by 28 U.S.C. § 2254(d), a habeas court may not look to cumulative prejudice from multiple instances of deficient performance by counsel to reject a state court's decision on the merits of an ineffectiveness claim.

Here, Petitioner's claims of ineffective assistance were resolved "on the merits." Accordingly, this habeas court may not grant relief based on a failure to consider, or error in considering, the cumulative effect of counsel's misdeeds to find prejudice. 28 U.S.C. § 2254(d)(1).

**4.  Standard Applied in State Court**

In disposing of Petitioner's claims of ineffective assistance, the PCR court referenced no federal law, and made no explicit reference to the applicable standard for claims of ineffective assistance.   (*See generally* Exh. MM, M.E. 9/6/16.)  But that is not determinative.

"Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (looking to state court's "reasoning" to find appropriate law applied).

Here, the PCR court's decision focused on the "4 alleged deficiencies," considered

trial counsel's strategic reasons for his actions ("never filed either of the above motions because it was obvious to him that they would be denied", "curative instruction to the jury would probably have resulted in the jury thinking about the testimony more," request for instruction on waiver of appearance would likely have resulted in instruction on absconding, lack of counsel's authority to waive appearance, special action not better use of counsel's time on the day before trial), and the resulting prejudice from any the purported failings ("would not have changed the eventual outcome in this case," instruction that absence not evidence against Petitioner, futility of special action).

It is true that the PCR court did not explicitly enunciate the probabilistic nature of the standard for prejudice under *Strickland*.  However, as discussed hereinafter, on three of the four claims, the PCR court concluded that the proposed actions would have been futile under the applicable law, *i.e.* severance would not have been granted (Ground 4A), the appearance could not have been waived and no ameliorative instruction had been proposed (Ground 4C), and the special action would have been denied (Ground 4D).  In such  instances, a court is not left to making a probabilistic decision such as on the effect of evidence.  As to the fourth, the prejudicial evidence claim in Ground 4B, the PCR court concluded that Petitioner would not have been biased "even in part" by the testimony. (Exh. MM, M.E. 9/6/16 at 4.)   Implicit in that determination is that a partial bias would have been relevant, which is only true if a probabilistic determination is being made.

Thus, it is clear that the PCR court was applying the standards established by *Strickland*.

## F.  GROUND 4A – IAC RE SEVERANCE
### 1.  Parties Arguments

In Ground 4A, Petitioner asserts trial counsel was ineffective for failing to move to sever the counts related to the second set of events (counts 6 and 7).  (Petition, Doc. 1 at 9.)

Respondents argue that reasonable jurists would agree with the PCR court's

conclusion that the motion to sever would have been futile because the evidence from the sets of counts were cross-admissible, and thus counsel was not ineffective.  (Answer, Doc. 6 at 52, *et seq.*)

## 2.  Factual Background

In disposing of this claim, the PCR court summarized the relevant facts as follows:

> As to the first alleged deficiency, the Defendant was charged in Counts 1-5 with drug offenses alleged to have occurred on October 25, 2011. The most serious of the charges involved an ounce of Methamphetamine found in the Defendant's underwear and just under an ounce of Methamphetamine found in the pocket of a woman's jacket found in the Defendant's apartment. The Defendant was charged in Counts 6-7 with drug offenses alleged to have occurred on October 28, 2011. The most serious of those charges involved just under ¾ of an ounce of Methamphetamine found scattered by the Defendant in a vehicle in which she was a passenger. Based on the above 3 quantities of drugs the Defendant was charged with 3 separate counts of Possession of Dangerous Drugs for Sale. An element of each offense was the possession for the purpose of sale, so the State had to prove beyond a reasonable doubt that the Defendant possessed the drugs with the intent to sell them. The State was actually unable to prove this element as to Count 2, for which the Defendant was found guilty of the less serious offense of Possession of Dangerous Drugs.
>
> No motion to sever any of the charges was ever filed. No motion was ever filed asking the Court to rule whether evidence of conduct on one of the dates would have been admissible at the trial regarding conduct on the other date if the charges were to be severed or had not been joined in the first place.

(Exh. MM, M.E. 9/6/16 at 2.)

## 3.  State Court Ruling

In rejecting this claim, the PCR court reasoned that a motion to sever would have been futile because the counts were properly joined, and severance was not required because the evidence from each of the two sets of counts would have been relevant to establishing the requisite intent to sell:

> Ruling on such requests 5 years ago would seem to have been the preferable way to proceed, although maybe the Court has a better understanding of the relevant facts having sat through the trial and heard all the evidence. It may be that trial counsel never filed either of the above motions because it was obvious to him that they would be denied.

Rule 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, such evidence may be admissible for other purposes, including proof of motive, intent, preparation, plan and knowledge. The Court is certain that, if it had been asked to rule on the cross-admissibility of evidence committed on occasions 3 days apart when the Defendant's intent to sell drugs was an element that the State would have to prove, it would have ruled that testimony of each incident would have been admissible as to the other incident.

Rule 13.3(a) provides that offenses can be joined in an indictment if they are of the same or similar character, if they are based on the same conduct or are otherwise connected together in their commission, or if they are alleged to have been part of a common scheme or plan. The Defendant asserts that joinder in this case could have been proper only in the first of the above 3 scenarios, which is set forth in Rule 13.3(a)(1 ). This has procedural significance because of the rule dealing with severance. The Court believes that these charges were also properly joined under the second and third scenarios as set forth in Rule 13.3(a)(2 and 3). Even assuming for the sake of argument that the charges were joined only pursuant to Rule 13.3(a)(1 ), Rule 13.4(b) provides that a defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1 ), unless evidence of the other offense or offenses would be admissible under applicable Rules of Evidence if the offenses were tried separately. Since the Court has indicated that evidence of each offense would be admissible at the trial of the other offense, Rule 13.4(b) would not have required severance.

Rule 13.4(a) provides that severance of offenses should be granted if necessary to promote a fair determination of the guilt or innocence of the defendant of any offense. On the first day the defendant had an ounce of Methamphetamine hidden in her under-Near. Three days later she was observed at the scene of a planned "buy/bust" tearing open baggies of Methamphetamine and attempting to scatter the contents, which were found to be about 3/4 of an ounce. The Court is certain that trying this case twice, once for each of the two dates, would not have made for a more fair determination of guilt in either case.

A motion to sever would not have been granted, for all the above reasons. Failure to file a motion to sever was not ineffective representation on the part of trial counsel.

(Exh. MM, M.E. 9/6/16 at 3-4.)

### 4.  Application of Law

#### a.   No Remediable Factual Error

Petitioner points to no unreasonable determination of facts by the PCR court.  The undersigned finds none.

//

//

- 33 -

**b. No Remediable Legal Error**

Petitioner points to no basis to conclude that the PCR court's ruling was contrary to or an unreasonable application of clearly established Supreme Court law. The undersigned finds none.

It is clear that failure to pursue futile action is never ineffective assistance. *Rupe*, 93 F.3d at 1445.

Petitioner does not suggest any reviewable error in the state court's determination that a motion to sever would have been futile. This federal habeas court is not free to revisit the state court's determinations of state law, *Bains*, 204 F.3d at 971, including:

(1) that evidence of other crimes were admissible under Arizona Rule of Evidence 404(b) to show "proof of motive, intent, preparation, plan and knowledge" (Exh. MM, M.E. 9/6/16 at 2);

(2) the requirements for joinder of counts under Arizona Rules of Criminal Procedure 13.3(a), *i.e.* "if they are of the same or similar character, if they are based on the same conduct or are otherwise connected together in their commission, or if they are alleged to have been part of a common scheme or plan" (*id.* at 3); and

(3) the requirements for a successful motion to sever, *i.e.* that severance would have been justified under Arizona Rules of Criminal Procedure 13.4(a) only if joinder was based on "same or similar character" and severance was "necessary to promote a fair determination of guilt" (*id.* at 3).

Petitioner posits no reason, and the undersigned finds none, for concluding that the evidence of successive acts tending to show the possession of methamphetamines for sale would not be relevant to showing intent in the other acts. Petitioner posits no reason, and the undersigned finds none, to conclude that the counts were not only "of the same or similar character," but were also "otherwise connected" and "part of common scheme or plan," (and thus severance was not available). Finally, Petitioner posits no reason, and the undersigned finds none, to reject the state court's conclusion that even if the only basis for

joiner was "same or similar character," severance was not "necessary to promote a fair determination of guilt" because the evidence of the counts was cross-admissible in separate trials. There would have been no benefit to Petitioner from simply having separate trials with the same evidence introduced in each.

Accordingly, this court must conclude that the motion to sever would have been futile, which precludes a finding of ineffective assistance. *Rupe*, 93 F.3d at 1445.

**5. Conclusion**

Ground 4A is without merit, and must be denied.

**G.  GROUND 4B – IAC RE PREJUDICIAL EVIDENCE**
**1.  Parties Arguments**

In Ground 4B, Petitioner argues trial counsel was ineffective in failing to object to prejudicial testimony and to request a Rule 404(b) instruction. (Petition, Doc. 1 at 9.)

The Petition fails to identify the referenced testimony. Respondents construe this claim as referring to the same evidence addressed in the PCR proceedings, "Corporal Holdway's testimony that 'he had numerous contacts with Petitioner over his 11-year career—he interviewed her and spoke with her many times.'" (Answer, Doc. 6 at 58 (quoting Exh. LL, PCR Pet. at 11).)  Petitioner does not object to this construction, and the undersigned adopts it.

Respondents argue that relief is not available under 28 U.S.C. § 2254(d)(1) because the state court's decision was not contrary to nor an unreasonable application of *Strickland*. (Answer, Doc. 6 at 58-63.)

**2.  Factual Background**

In disposing of this claim, the PCR court made the following factual findings:

> As to the second alleged deficiency, an officer apparently testified at trial that he had had numerous contacts with the Defendant during his law enforcement career, including interviewing and speaking with her many times. This was apparently done to lay a foundation for that officer's ability to identify the Defendant's voice. Although counsel assumes that it had to have been clear to the jury

- 35 -

> that the officer was suggesting he had had numerous contacts with the Defendant in connection with her committing numerous crimes, this assumption is probably based upon his knowledge of the defendants [sic] prior criminal record, something which was not made known to the jury. Although he ridicules the notion that the Defendant might have been the officer's babysitter, there are many ways that citizens can interact with police officers other than by committing crimes, such as being victims of crimes, witnesses to crimes, cited for civil traffic offenses, welfare checks, community outreach programs and probably many others that the Court is not even aware of.
>
> There was no effort to quantify the words "numerous" or "many" or the circumstances under which these contacts, interviews or conversations had occurred. There appears to have been no argument by the State that these contacts were evidence of prior criminal conduct by the Defendant. Had the Defendant not absconded during the trial, or as Rule 32 Counsel would put it, waived her right to be present at trial, she might have testified and been impeached with her multiple prior felony convictions. The Court held a Rule 609 hearing after the presentation of the State's case on the second day of the trial and ordered that the Defendant could be impeached with 2 of her four prior felonies if she testified. It is unknown whether the jury would have found out anyway that at least some of her contacts with law enforcement were attributable to felonies she had committed.
>
> The testimony of the officer regarding prior contact was fleeting, was not argued to show bad character, and did not in and of itself suggests prior bad acts.

(Exh. MM, M.E. 9/6/16 at 4.)

### 3.  State Court Ruling

The PCR court rejected this claim, concluding:

> The evidence against the Defendant was overwhelming and could not have been based [sic] even in part by this testimony. A curative instruction to the jury would probably have resulted in the jury thinking about the testimony more than they would have otherwise. Regardless of whether trial counsel went through the above thought process and analysis in not objecting to the testimony and not requesting a limiting instruction under Rule 404(b), objecting and requesting the instruction would not have changed the eventual outcome in this case. Failure to object to the testimony or to request a limiting instruction was not ineffective representation on the part of trial counsel.

(Exh. MM, M.E. 9/6/16 at 4-5.)

### 4.  Application of Law

#### a.   No Remediable Factual Error

Petitioner points to no unreasonable determination of facts by the PCR court.  The

undersigned finds none.

### b.   No Remediable Legal Error

Petitioner points to no basis to conclude that the PCR court's ruling was contrary to or an unreasonable application of clearly established Supreme Court law.    The undersigned finds none.

The PCR court in effect concluded that the trial counsel could have reasonably concluded that an objection and request for an instruction would have resulted in the jury thinking more about the Petitioner's prior contacts with law enforcement than they otherwise could have, and in light of the "fleeting" nature of the objectionable testimony, choosing to forego the objection and instruction was a reasonable tactical choice. Petitioner posits no reason to reject this reasoning.  The undersigned finds none.

Even if the objections or instruction requests would have been successful, failure to pursue them is not *per se* deficient performance.  Good trial counsel will let any number of technical violations of the rules of evidence go without objection. "If counsel reasonably believes that correcting the error will actually cause greater harm to his client, perhaps by creating an unfavorable impression of counsel or the defendant in the eyes of the judge or jury, counsel's failure to object would not constitute deficient performance."  *Gordon v. U.S.,* 518 F.3d 1291, 1300 (11th Cir. 2008).

The PCR court also concluded that the "eventual outcome" of trial would not have changed, because the evidence was overwhelming, the suggestion of other criminal conduct was only "fleeting," and the lack a bias was shown by the acquittal implicit in the conviction on a lesser included offense of simple possession on one of the counts. Petitioner posits no reason to reject this reasoning.  The undersigned finds none. *See e.g. Murray v. Schriro*, 882 F.3d 778, 825 (9th Cir. 2018) (no prejudice in the face of "overwhelming evidence of guilt"); *Hall v. Whitley*, 935 F.2d 164, 166 (9th Cir. 1991) (no prejudicial effect from "isolated moments in a three day trial"); and *Thompson v. Borg*, 74 F.3d 1571, 1576-77 (9th Cir. 1996) (conviction on lesser-included murder offense

demonstrated that "the jury's immune system withstood the 'infection'" of improper material).

## 5.  Conclusion

Ground 4B is without merit, and must be denied.

## H.  GROUND 4C – IAC RE WAIVER OF APPEARANCE
### 1.  Parties Arguments

In Ground 4C, Petitioner argues trial counsel was ineffective in failing to move to waive Petitioner's appearance at trial and for a related jury instruction.  (Petition, Doc. 1 at 9.)

Respondents argue that relief is not available under 28 U.S.C. § 2254(d)(1) because the state court's decision was not contrary to nor an unreasonable application of *Strickland*. (Answer, Doc. 6 at 64-70.)

### 2.  Factual Background

In disposing of this claim, the PCR court made the following factual findings:

> As to the third alleged deficiency, the Defendant was present at the first and second days of the jury trial. She was not present at the third and last day. The Court cannot tell from the trial minutes whether it had been advised by the end of the second day that the Defendant would or would not testify. Regardless of what the Court would have been told, it seems clear that had the Defendant appeared on the third day and wanted to testify, she would have been allowed to do so. The Court has allowed defendants in other cases to change their minds overnight or over the lunch hour and testify despite having initially advised the Court that they did not want to testify. The Defendant at least intimates in her Affidavit that she did not appear for the last day of her trial because she did not want to be taken into custody upon being found guilty, although the Court was able to reach that same conclusion without relying on her Affidavit.
>
> * * *
>
> Although the Court did not advise the jury that the Defendant had the right to waive her presence at the last day of the trial, it did advise the jury that her absence was not evidence that could be used against her, that she was still presumed innocent, and that the State still had to prove her guilt beyond a reasonable doubt. The Court went out of its way to not in any way convey to the jury what it suspected were the true reasons for her absence.

- 38 -

(Exh. MM, M.E. 9/6/16 at 5-6.)

### 3.  State Court Ruling

The PCR court rejected this claim, reasoning:

> Rule 19.2 provides that the defendant has the right to be present at every stage of the trial. Rule 14.3(e) requires that defendants be advised at their arraignment that they have the right to be present at all future proceedings and that proceedings may be held in their absence and they may be charged with an offense and a warrant issued. A.RS. 13-2507(A) makes it a Class 5 felony for a person who, having been required by law to appear in connection with any felony, knowingly fails to appear.
>
> Rule 9.1, on the other hand, provides that, except as otherwise provided in the rules, a defendant may waive the right to be present at any proceeding by voluntarily absenting himself from it. It may be difficult to reconcile the suggestion in Rule 9.1 that the Defendant can simply choose not to show up for trial with the fact that if he fails to do so he can be charged with a Class 5 felony and sent to prison for up to 2.5 years. The cases that discuss Rule 9.1 do not address it so much in terms of a right that the defendant may exercise as they do the right of a judge to proceed with hearings in the absence of a defendant who has exercised that right. In *State v. Mumford*, 136 Ariz. 465 (App. 1982), the Court of Appeals held that, although a defendant may waive the right to be present, the trial court need not accept the waiver.
>
> This was not a case where the Defendant sought and was granted permission to waive her right to be present on the last day of trial. It is rather obviously a case where she absconded because she feared the consequences of a guilty verdict. If the Court had been asked to advise the jury that the Defendant had the right to waive her presence on the last day of the trial, the Court would have felt compelled to also advise the jury that it had never been asked and it would not have granted that waiver and that it would be issuing a warrant for her arrest based on her unauthorized absence from the trial.
>
> * * *
>
> Trial counsel could not himself have waived his client's right to be present at trial. He could not have done so without the Court's permission. The Court would not have granted that permission. Rule 32 counsel does not indicate what specific instruction trial. counsel should have requested or what legal authority there would have been for the Court to give it. Trial counsel did not provide ineffective representation by failing to waive the Defendant's presence or by failing to request an instruction regarding her right to waive her presence.

(Exh. MM, M.E. 9/6/16 at 4-5.)

/ /

/ /

- 39 -

**4. Application of Law**

    **a.    No Remediable Factual Error**

Petitioner points to no unreasonable determination of facts by the PCR court.  The undersigned finds none.

    **b.    No Remediable Legal Error**

Petitioner points to no basis to conclude that the PCR court's ruling was contrary to or an unreasonable application of clearly established Supreme Court law.   The undersigned finds none.

The PCR court concluded that trial counsel had not been authorized by Petitioner to waive Petitioner's presence, and because acceptance of the waiver of appearance was in the discretion of the court.   This federal habeas court is not free to revisit the state court's determinations of state law on this issue.  *Bains*, 204 F.3d at 971.  The PCR court implies that the waiver would have been denied because it would not have been supported by legitimate reasons, but would have been based solely on Petitioner absconding in the middle of trial.   This would have made any request to waive Petitioner's appearance futile, which cannot establish ineffectiveness.  *Rupe*, 93 F.3d at 1445.

With regard to the instruction, the PCR court also relied on the tactical consideration that even if the waiver instruction had been granted, the trial court would have coupled it with an instruction that explained the lack of permission to be absent, and that a warrant had been issued as a result.   Petitioner suggests no reason why this did not provide a reasonable strategic reason to not ask for an instruction.  The undersigned finds none, and thus can find no deficient performance. *Morris*, 966 F.2d at 456.

The PCR concluded that there was no prejudice because the Court had instructed the jury that her absence was not evidence against her. Petitioner proffers no reason why this was not sufficient to dissipate any prejudice from counsel's failure to request a waiver or a different instruction on the waiver. The PCR court observed that the PCR petition did not indicate what specific instruction trial counsel should have requested (or what legal authority there would have been for the Court to give it).  Petitioner still does not do so.

The undersigned finds that Petitioner still fails to show any prejudice from her absconding would have been reduced by a waiver of appearance or additional instructions.

**5.  Conclusion**

Ground 4C is without merit and must be denied.

**I.  GROUND 4D – IAC RE SPECIAL ACTION**
**1.  Parties Arguments**

Finally, Petitioner argues in Ground 4D that counsel was ineffective for failing to file a petition for special action to challenge the denial of new counsel.   (Petition, Doc. 1 at 9.)

Respondents argue that relief is not available under 28 U.S.C. § 2254(d)(1) because the state court's decision was not contrary to nor an unreasonable application of *Strickland*. (Answer, Doc. 6 at 70-73.)

**2.  Factual Background**

In connection with its resolution of the related substantive claim in Ground 2, the Arizona Court of Appeals made various factual findings on direct appeal regarding the request for delay to retain new counsel.  (*See supra* Section III(C)(2).)

More pertinently, in the PCR proceedings, the state court made the following factual findings:

> As to the fourth alleged deficiency, the Defendant in this case was represented by appointed counsel. The Court received an e-mail from the Defendant in the morning of Friday, September 21, 2012, indicating that she wanted to dismiss her attorney and setting forth specific reasons for her dissatisfaction with him. She requested a continuance of the trial date, which was Tuesday, September 25, 2012, to allow her to hire her own attorney. The Court was able to schedule a hearing on that request by the Defendant shortly before noon on Monday, September 24, 2012, the day before the trial was to begin. Trial counsel indicated that he did not oppose the Defendant's request for a new attorney. The State indicated that they opposed a continuance of the trial date. The Court denied the Defendant's request for a new attorney and denied her request for a continuance of the trial date.

(Exh. MM, Mem.Dec. 9/6/16 at 7.)

### 3.  State Court Ruling

In rejecting this claim, the PCR court reasoned:

> The Defendant asserts that her trial attorney was ineffective for failing to seek review of the Court's decision by special action. One could query whether this would have been the most productive use of defense counsel's time during the half a day remaining before the jury trial was to begin. In many cases where a claim is made that a petition for special action from a trial judge's decision should have been filed, a judge can only speculate as to what the result of doing so would have been. No such speculation is required in this case. The Court of Appeals in its Memorandum Decision addressed the claim raised on direct appeal that this Court violated her right to counsel of choice by denying her motion to continue trial in order to retain private counsel. The appellate court found no abuse of discretion in denying the Defendant's continuance request.
>
> * * *
>
> It seems obvious that had trial counsel sought special action review the Court of Appeals would have made the same finding that they eventually made on direct appeal. Failure to pursue special action relief was not ineffective representation. The Defendant was not prejudiced because the outcome on that issue would have been the same.

(Exh. MM, Mem. Dec. 9/6/16 at 7.)

### 4.  Application of Law

#### a.   No Remediable Factual Error

Petitioner points to no unreasonable determination of facts by the PCR court.  The undersigned finds none.

#### b.   No Remediable Legal Error

Petitioner points to no basis to conclude that the PCR court's ruling was contrary to or an unreasonable application of clearly established Supreme Court law.   The undersigned finds none.

The PCR court concluded that trial counsel's failure to pursue a special action was not deficient performance because: (1) trial counsel could have made the strategic determination to spend his final day before trial on trial, rather than a special action; and

- 42 -

(2) the special action would have been futile, as demonstrated by the rejection of the same challenge on direct appeal.   The PCR similarly concluded that no prejudice can be shown because the underlying challenge was rejected on direct appeal.

Petitioner proffers no reason to conclude that counsel could not have made a reasonable tactical decision to prepare for trial rather than pursue a special action on new counsel.    Given the benefit of hindsight (that the challenge would be rejected on direct appeal), it is easy to conclude that counsel made a wise choice.  Of course, in evaluating ineffective assistance claims, the Supreme Court has counseled against evaluating counsel's conduct based on subsequent events.   Thus, at least with regard to determining deficient performance, "[w]hat was reasonable under the circumstances must be evaluated as of the time that the legal services were rendered so as to minimize the distortions of hindsight." *Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002).  Nonetheless, the fact that the Arizona Court of Appeals ultimately rejected the challenge does provide substantial evidence that a conclusion by counsel that such would have been the result would not have been unreasonable.

It is true that if trial counsel was not prescient and maintained an optimistic view of a special action, the choice to prepare for trial rather than seeking to replace himself may have been unreasonable.  It certainly was Petitioner's desire to replace trial counsel, and counsel had openly expressed the effects of the deteriorated relationship.   But Petitioner proffers nothing to show that was in fact counsel's belief.    And under the presumptions afforded under *Strickland*, this Court cannot conclude that the state court acted unreasonably by relying on the lack of evidence of such an actual belief, and ruled on the basis of what "reasonable counsel" could have believed. *See Morris v. California*, 966 F.2d at 456 ("We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable representation.").

Moreover, Petitioner proffers no reason to reject the PCR court's reliance on the appellate court's ruling on the underlying claim to conclude that a special action would have been futile, and thus there was no prejudice.   The undersigned finds no basis to do

so.

## 5. Conclusion

Ground 4D is also without merit and must be denied.


## J. SUMMARY

Ground 1 (exclusionary rule) is barred from habeas relief under *Stone*. Petitioner has failed to show a remediable factual or legal error under 28 U.S.C. § 2254(d) in the state court's rejection of the claims in Grounds 2 (counsel of choice), 4A (ineffectiveness re severance), 4B (ineffectiveness re prejudicial evidence), 4C (ineffectiveness re appearance), and 4D (ineffectiveness re special action), and these grounds must be denied. Reviewed *de novo*, Petitioner's claim in Ground 3 (insufficient evidence) is without merit and must be denied.


## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the

- 44 -

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed October 4, 2018 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

*Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: May 31, 2019

18-8250r RR 19 05 03 on HC.docx

James F. Metcalf
United States Magistrate Judge

- 46 -